ACCEPTED
14-14-01021-CV
FOURTEENTH COURT OF APPEAL
HOUSTON, TEXAS
12/29/2014 10:03:31 PM
CHRISTOPHER PRIN
CLERK

14-14-01021-CV

No. _____-CV

### FIRST OR FOURTEENTH COURT OF APPEALS AT HOUSTON

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
12/29/2014 10:03:31 PM
CHRISTOPHER A. PRINE
Clerk

*In re*

### ROBERT S. HOFFMAN and LAW OFFICE OF ROBERT S. HOFFMAN PLLC,

Petitioners.

Original proceeding from the
61st District Court of Harris County
Trial Court No. 2014-17523

### PETITION FOR WRIT OF MANDAMUS

CUNNINGHAM DARLOW LLP
Tom Alan Cunningham
  State Bar No. 05244700
  tcunningham@
  cunninghamdarlow.com
Debbie C. Darlow
  State Bar No.05186900
  ddarlow@cunninghamdarlow.com
919 Milam, Suite 575
Houston, Texas 77002
(713) 255-5500

THE OLSON FIRM PLLC
Leif A. Olson
  State Bar No. 24032801
  leif@olsonappeals.com
PMB 188
4830 Wilson Road, Suite 300
Humble, Texas 77396
(281) 849-8382

*Petitioners request oral argument*

## Parties and Counsel

**Defendants-petitioners**

Robert S. Hoffman
Law Office of Robert S.
  Hoffman, PLLC

Cunningham Darlow LLP
Tom Alan Cunningham
  State Bar No. 05244700
  tcunningham@
  cunninghamdarlow.com
Debbie C. Darlow
  State Bar No.05186900
  ddarlow@cunninghamdarlow.com
919 Milam, Suite 575
Houston, Texas 77002
(713) 255-5500
*Counsel in trial court and on petition*

The Olson Firm PLLC
Leif A. Olson
  State Bar No. 24032801
  leif@olsonappeals.com
PMB 188
4830 Wilson Road, Suite 300
Humble, Texas 77396
(281) 849-8382
*Counsel on petition*

**Plaintiff-real party in interest**

Rachel Brown

Williamson, Sears & Rusnak
Jimmy Williamson
  State Bar No. 21624100
  jimmy@iimmywilliamson.com
Cyndi M. Rusnak
  State Bar No. 24007964
  cyndi@jimmywilliamson.com

Ross A. Sears II
  State Bar No. 17960011
  ross@searscrawford.com
4310 Yoakum Boulevard
Houston, Texas 77006
(713) 223-3330

**Defendants**

Marshall Davis Brown, Jr.          PAVLAS & BROWN LLP
Jedediah D. Moffett               Marshall Davis Brown, Jr.
Pavlas & Brown, LLP                State Bar No. 03153550
Pavlas, Brown & York LLP           mdbrown@pavlasbrown.com
Jedediah D. Moffett, P.C.         3040 Post Oak Blvd., Suite 1020
                                  Houston, Texas 77056
                                  (713) 222-2500

                                  JEDEDIAH D. MOFFETT, P.C.
                                  Jedediah D. Moffett
                                    State Bar No. 24051069
                                    jdm@moffettpc.com
                                  801 Congress, Suite 400
                                  Houston, Texas 77002
                                  (713) 333-5800

**Respondent**

Judge Al Bennett                  61st District Court
                                  201 Caroline, 9th Floor
                                  Houston, Texas 77002
                                  (713) 368-6070

# Table of Contents

Parties and Counsel........................................................................ii

Index of Authorities .....................................................................vii

Statement of the Case ...................................................................xi

Statement on Oral Argument .......................................................xii

Statement on Jurisdiction.............................................................xii

Glossary........................................................................................xii

Issue Presented ...........................................................................xiii

Introduction...................................................................................1

Facts ..............................................................................................1

    A.  The underlying divorce case. ...................................................1

    B.  This malpractice case.............................................................2

        1.  The claims. ......................................................................2

        2.  The petition.....................................................................3

    C.  This discovery dispute. ..........................................................4

Summary of Argument ....................................................................5

Standard of Review .........................................................................7

Argument: *Absent a showing that Brown is entitled to exemplary damages, ordering discovery of net worth was an abuse of discretion.* .........................8

    A.  The petition's allegations are insufficient.................................8

    B.  Requiring Hoffman to disclose net worth now is premature. ... 11

    C.  The law on exemplary damages has evolved; the Court should chart the impact that evolution has made on net-worth discovery...................................................................13

        1.  The proper standard. ...................................................13

        2.  The current standard. ...................................................14

3. The Court can announce the current standard. ................... 16

D. Requiring Hoffman to wait until appeal to protect his privacy would be inadequate and rob the courts of guidance. ............... 17

Conclusion and Prayer .................................................................. 19

Verification ................................................................................... 20

Certificate of Compliance ............................................................ 20

Certificate of Service ................................................................... 20

## Record Contents

| Document | Tab |
| --- | --- |
| First Amended Petition | 1 |
| Hoffman's disclosures (insurance policy omitted) | 2 |
| Brown's disclosures | 3 |
| Brown's Request for Production No. 52 | 4 |
| Hoffman's Response to Request for Production No. 52 | 5 |
| Brown's motion to compel | 6 |
| Hoffman's response to Brown's motion to compel | 7 |
| Hearing transcript | 8 |
| Proposed order compelling production | 9 |
| Hoffman's motion to bifurcate | 10 |
| Docket-control order | 11 |
| Chart of net-worth discovery standards in other jurisdictions | 12 |

## Index of Authorities

**Cases**

*Al Parker Buick Co. v. Touchy*
788 S.W.2d 129
(Tex. App. – Houston [1st Dist.] 1999) (orig. proceeding) ...9, 10, 14

*Arpin America Moving Systems, LLC, In re*
416 S.W.3d 927 (Tex. App. – Dallas 2013) ...................................... 17

*BMW of North America, Inc. v. Gore*
517 U.S. 559 (1996).......................................................... 15

*Booth, In re*
No. 14-14-00637-CV, 2014 WL 5796726
(Tex. App. – Houston [14th Dist.] Oct. 21, 2014, mand. dismissed)
.................................................................................. 17

*Brewer Leasing, Inc., In re*
255 S.W.3d 708 (Tex. App. – Houston [1st Dist.] 2008) ............... 17

*Carpenter v. Carpenter*
No. 02-11-00266-CV, 2012 WL 2579498
(Tex. App. – Fort Worth July 5, 2012, pet. denied)........................ 9

*Cerberus Capital Management, L.P., In re*
164 S.W.3d 379, 382 (Tex. 2005) .................................................7

*Citizens Supporting Metro Solutions, Inc., In re*
No. 14-07-00190-CV, 2007 WL 4277850
(Tex. App. – Houston [14th Dist.] Oct. 18, 2007)......................... 8

*CSX Corp., In re*
124 S.W.3d 149 (Tex. 2003) .........................................................7

*Earle v. Ratliff*
998 S.W.2d 882 (Tex. 1999).......................................................... 8

*Ernst & Young LLP v. Pacific Mutual Life Ins. Co.*
51 S.W.3d 573 (Tex. 2001) ..........................................................10

*Eurecat US, Inc., In re*
 425 S.W.3d 577 (Tex. App. – Houston [14th Dist.] 2014) ............... 8

*Exxon Shipping Co. v. Baker*
 554 U.S. 471 (2008) .................................................................. 16

*Garth, In re*
 214 S.W.3d 190 (Tex. App. – Beaumont 2007) .............................. 17

*Hodge v. Northern Trust Bank of Texas, N.A.*
 54 S.W.3d 518 (Tex. App. – Eastland 2001, pet. denied) ............... 8

*House of Yahweh, In re*
 266 S.W.3d 668 (Tex. App. – Eastland 2008)..........................16, 17

*Huie v. DeShazo*
 922 S.W.2d 920 (Tex. 1996) (orig. proceeding) ..............................7

*Islamorada Fish Co. Texas, L.L.C., In re*
 319 S.W.3d 908 (Tex. App. – Dallas 2010) .................................... 11

*Jacobs, In re*
 300 S.W.3d 35
 (Tex. App. – Houston [14th Dist.] 2009, mand. dismissed) ...passim

*Jacobs, In re*
 No. 09-0942 (Tex., dismissed Aug. 13, 2010) ......................... 18, 19

*Jerry's Chevrolet-Buick, Inc., In re*
 977 S.W.2d 565 (Tex. 1998) ...................................................15, 18

*Kim, In re*
 No. 05-14-01344-CV, 2014 WL 6556269
 (Tex. App. – Dallas Oct. 23, 2014) ............................................. 17

*Kimball Hill Homes Texas, Inc., In re*
 969 S.W.2d 522 (Tex. App. – Houston [14th Dist.] 1998) .............. 9

*Lunsford v. Morris*
 746 S.W.2d 471 (Tex. 1988) (orig. proceeding)..................... 7, 13, 17

*Maresca v. Marks*
　　362 S.W.2d 299 (Tex. 1962) (orig. proceeding) .............................10

*Prudential Insurance Co. of America, In re*
　　148 S.W.3d 124 (Tex. 2004).................................................................7

*Reece, In re*
　　341 S.W.3d 360 (Tex. 2011) .................................................................7

*Sears, Roebuck & Co. v. Ramirez*
　　824 S.W.2d 558 (Tex. 1992) (orig. proceeding) .............................14

*State Farm Mutual Auto Ins. Co. v. Campbell*
　　538 U.S. 408 (2003) ............................................................................15

*Team Rocket, L.P., In re*
　　256 S.W.3d 257 (Tex. 2008).................................................................18

*Tilton v. Marshall*
　　925 S.W.2d 672 (Tex. 1996) (orig. proceeding) .............................10

*Tony Gullo Motors I, L.P. v. Chapa*
　　212 S.W.3d 299 (Tex. 2006) ...............................................................16

*Transportation Ins. Co. v. Moriel*
　　879 S.W.2d 10 (Tex. 1994)...................................................................14

*Van Waters & Rogers, Inc., In re*
　　145 S.W.3d 203 (Tex. 2004).................................................................17

*Walker v. Packer*
　　827 S.W.2d 833 (Tex. 1992) (orig. proceeding) .........................7, 18

*Wal-Mart Stores, Inc. v. Alexander*
　　868 S.W.2d 322 (Tex. 1993).................................................................17

*Weekley Homes, L.P., In re*
　　295 S.W.3d 309 (Tex. 2009) ...............................................................11

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 41.001....................................10

TEX. CIV. PRAC. & REM. CODE § 41.003..................... 4, 9, 14, 15

Tex. Civ. Prac. & Rem. Code § 41.008 .................................. 14

Tex. Civ. Prac. & Rem. Code § 41.009 ........................... 11, 14

Tex. Civ. Prac. & Rem. Code § 41.011 ........................... 11, 15

Tex. Govt. Code § 22.201 .........................................xii

Tex. Govt. Code § 22.221 .........................................xii

Tex. Govt. Code § 24.163 .........................................xii

**Rules**

Tex. Const. art. V, § 6(a)................................................xii

Tex. R. Civ. P. 192, cmt. 1............................................. 8

Tex. R. Civ. P. 192.4 ................................................. 11

**Other authorities**

McLoughlin, James
   *Necessity of Determination or Showing of Liability for Punitive
   Damages Before Discovery or Reception of Evidence of Defendant's
   Wealth*
   32 A.L.R.4th 432 (2014)............................................ 13

## Statement of the Case

| | |
|---|---|
| Nature of the case | Discovery dispute in a legal-malpractice case. |
| Trial court | 61st District Court, Harris County<br>Judge Al Bennett |
| Trial court proceedings | Brown sued the lawyers, including Hoffman, who represented her in her divorce case. Her petition alleged no facts that would support a finding of exemplary damages.[1] Nor did she establish a prima facie case that she was entitled to those damages.<br><br>Brown requested that Hoffman produce documents showing his net worth.[2] Hoffman objected.[3] Brown moved to compel.[4] |
| Trial court disposition | The trial court overruled Hoffman's objections and ordered him to produce documents showing his net worth.[5] |
| Relief sought | The Court should direct the trial court to vacate its order compelling production. |

---

[1] Tab 1, First Amended Petition.

[2] Tab 4, Brown's Request for Production No. 52.

[3] Tab 5, Hoffman's Response to Request for Production No. 52.

[4] Tab 6, Brown's motion to compel.

[5] Tab 8, transcript, at 13:19–15:16.

## Statement on Oral Argument

This petition concerns an issue, discovery of a party's net worth, that has been evolving steadily over the last several years. Oral argument would give the Court the opportunity to explore with counsel the current state and direction of the law and the reasons why the trial court's order compelling production was an abuse of its discretion on these specific facts.

## Statement on Jurisdiction

The Court has jurisdiction to issue a writ of mandamus to a district court that sits in a county within the Court's district. TEX. CONST. art. V, § 6(a); TEX. GOVT. CODE §§ 22.201(b), (o); 22.221(b); 24.163.

## Glossary

| | |
|---|---|
| Hoffman | Relators Robert S. Hoffman and Law Office of Robert S. Hoffman, P.L.L.C. |
| Tab *x* | Mandamus record at Tab *x* |

## Issue Presented

A plaintiff demanded documents showing a defendant's net worth. Her petition alleged no specific facts that would support a finding of exemplary damages, and the trial court had not determined that she had made a prima facie showing that she could recover them. Did the trial court abuse its discretion in ordering the defendant to furnish that private information?

## Introduction

A person's net worth  is an intensely personal matter. Texas's court rules and jurisprudence make that sensitive information confidential; litigants cannot uncover it except in circumstances that are tightly bounded. Here, the plaintiff justified her request for that information based on two sentences tucked into a 27-page petition:

- "Defendants' breach was done with the requisite state of mind for which an imposition of exemplary damages is authorized."[6]

- "Plaintiff … is entitled to damages which include … Punitive damages for gross negligence and breach of fiduciary duty[.]"[7]

Can these two scraps of text justify an order that a lawyer expose his net worth to a former client? No, they cannot. The trial court's decision to the contrary was an abuse of discretion. The Court should mandate that the order be vacated.

## Facts

### A. The underlying divorce case.

Rachel Brown's divorce from Dr. Michael Brown was, to understate, a matter of some notoriety. Brown's dispute with her husband

---

[6]   Tab 1, First Amended Petition, at ¶ 23.

[7]   Tab 1 at ¶ 79D.

spread like mold in a Houston summer. From it emerged two bank-ruptcies, other "related litigation," an imprisonment, a media frenzy, and an ex-wife — and that's limiting it to what Brown mentions in her petition in this case.[8]

Robert S. Hoffman and his law firm, the Law Office of Robert S. Hoffman, P.L.L.C., were among the lawyers who represented Brown in this miasma. Not surprisingly, that representation required a lot of time, and thus a lot of fees. A court-appointed special master reviewed and approved all of those fees; the divorce court reviewed them, ap-proved them, and, in several orders, directed them paid. Brown's hus-band (and, later, his bankruptcy estate) reviewed them and paid them.[9]

## B. This malpractice case.

### 1. The claims.

Brown now challenges all of that. Though she has fractured the claim, she sues Hoffman and her other divorce counsel for legal mal-practice. Her primary argument is that the fees, though considered, approved, and awarded by now-final court orders, were excessive.[10]

---

[8]    Tab 1 at ¶ 18.a, h, l, y, z (legal actions); b (prison); i, k (media); gg (ex-wife).

[9]    Tab 2, Hoffman's disclosures, at p. 3; Tab 3, Brown's disclosures, at, *e.g.*, Q.3, ¶¶ 35, 44, 98–119, 187–189, 204.

[10]   Tab 1 at ¶ 18(e), (n)–(t), (bb)–(dd), (ff), (hh)–(ii).

Hoffman believes that Brown's claims are barred as a matter of law by, among other things, claim and issue preclusion, collateral estoppel, the law of the case, the compulsory-counterclaim rule, and limitations.[11] He plans to seek summary judgment on those bases. With her underlying claims eliminated, Brown would have no right to recover exemplary damages and, thus, no need for net-worth discovery.

## 2. The petition.

Brown's petition is 27 pages long. Many of those pages allege that Hoffman acted "below the standard of care" for a lawyer.[12] Not one of them alleges facts that would support a gross-negligence finding; the only negligence they suggest is ordinary. Brown claims gross negligence, and thus exemplary damages, solely through her statement that Hoffman acted with the "requisite state of mind[.]"[13] Nowhere in her 27 pages of pleading does she explain that opaque statement — what those actions were or how they demonstrated anything.

---

[11] Hoffman hasn't yet amended his answer to assert these defenses.

[12] Tab 1 at pp. 4–8.

[13] Tab 1 at ¶ 23.

## C. This discovery dispute.

Brown requested "a copy of all documents showing the net worth of Defendants, individually and Defendants' law firm."[14] Hoffman objected. Among other reasons:

- The information was irrelevant;

- The request was premature;

- Brown's petition didn't support a right to recover exemplary damages;

- There was no evidence of fraud, malice, or gross negligence;[15]

- The information was confidential, sensitive, and private, and producing it would be unduly prejudicial; and

- Equity weighed against production.[16]

Brown moved to compel on two bases: the information was relevant and it was improper to delay net-worth discovery until after the first phase of a bifurcated trial.[17] Hoffman's response repeated his objections and pointed the trial court to Justice Sullivan's concurring opinion in *In re Jacobs*, which traced net-worth discovery from its first

---

[14] Tab 4 at p. 6.

[15] *See* TEX. CIV. PRAC. & REM. CODE § 41.003.

[16] Tab 5.

[17] Tab 6 at p. 2.

permitted use in 1988 through the contemporary present of 2009 and urged that net-worth requests be examined anew in light of twenty years of intervening jurisprudence.[18]

After a hearing, the trial court ordered Hoffman to turn over documents related to his net worth by January 15.[19] Hoffman now petitions for a writ of mandamus directing that the trial court's order be vacated.

## Summary of Argument

Demanding information on a person's net worth "provides an opportunity for 'needless abuse and harassment;'" compelling a person to disclose that information can be done only when it is relevant and through the least intrusive methods. *Jacobs*, 300 S.W.3d at 46. The amount of a person's wealth is private and sensitive. The intrusion into Hoffman's privacy that the trial court ordered is both untimely and unnecessary.

That order was an abuse of discretion. Mandamus is appropriate for three reasons.

---

[18]  Tab 7 at ¶ 5, citing 300 S.W.3d 35, 47–52 (Tex. App. – Houston [14th Dist.] 2009, mand. dismissed) (Sullivan, J., concurring).

[19]  Tab 8, transcript, at 13:19–15:16. *See also* Tab 9, proposed order. The trial court hasn't yet signed a written order.

*First*, a person's net worth is discoverable only if a petition alleges facts sufficient to show an entitlement to exemplary damages. Brown's allegation, that Hoffman had the "requisite state of mind," doesn't. Without a factual basis for her claim, Hoffman's net worth is irrelevant. Compelling Hoffman to disclose that information was an abuse of discretion.

*Second*, even if Brown's allegations weren't insufficient, the discovery is premature. In a bifurcated trial like this one, net worth is admissible only in the second trial phase. If Brown never gets to that phase, Hoffman's net worth will never be relevant, and irrelevant information isn't discoverable. Delaying production of net-worth information until that phase becomes a realistic possibility would properly balance the parties' interests. Ordering production before that point isn't the least intrusive method of obtaining that information. It was an abuse of discretion.

*Third*, Texas is out of step with her sister states. Twenty-five years ago, Texas left the dwindling minority of states that barred net-worth discovery. Now, Texas is in the dwindling minority of states that requires nothing more than allegations to justify this invasion of privacy. As Justice Sullivan recognized when he concurred in *Jacobs*, and as the Supreme Court recognized when it granted review in that case, the contours of net-worth discovery in Texas are still fuzzy. A review of Texas's law, rules, and experience counsel that Texas jurisprudence

has moved to join that of her sister states. The Court should recognize and announce that development.

The Court should mandate that the trial court vacate its order.

## Standard of Review

Mandamus is appropriate when a trial court abuses its discretion and a remedy through appeal would be inadequate. *In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004). A trial court can abuse its discretion in two ways. It can make a decision so arbitrary and unreasonable that it is a clear and prejudicial error, and it can analyze or apply the law incorrectly. *In re Cerberus Capital Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005), citing *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). An order permitting discovery that exceeds the limits of the Texas Rules of Civil Procedure is just such an abuse of discretion. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003).

The trial court has no discretion to get the law wrong, even if the law is unsettled. *Huie v. DeShazo*, 922 S.W.2d 920, 927–29 (Tex. 1996) (orig. proceeding), *see also Lunsford v. Morris*, 746 S.W.2d 471 (Tex. 1988) (orig. proceeding).

**Argument:**

***Absent a showing that Brown is entitled to exemplary damages, ordering discovery of net worth was an abuse of discretion.***

## A. The petition's allegations are insufficient.

The scope of discovery is "confined by the subject matter of the case[.]" TEX. R. CIV. P. 192, cmt. 1. This is "axiomatic;" the "live pleadings regarding the pending claims" set the bounds of discovery. *In re Eurecat US, Inc.*, 425 S.W.3d 577, 585 (Tex. App. – Houston [14th Dist.] 2014) (McCally, J., dissenting), citing *In re Citizens Supporting Metro Solutions, Inc.*, No. 14-07-00190-CV, 2007 WL 4277850 at *3 (Tex. App. – Houston [14th Dist.] Oct. 18, 2007). Net-worth discovery is thus proper only if a live petition properly alleges a claim for exemplary damages. *See Jacobs*, 300 S.W.3d at 43–44.

Texas requires only notice pleadings, but mere recitations are insufficient. Slapping the name of a claim onto a petition doesn't mean that the plaintiff has actually brought that claim. It is the allegations, not the names given to the cause of action, that control. Slapping "DTPA" onto negligence allegations doesn't permit a recovery under the DTPA; slapping "breach of contract" onto allegations of conversion doesn't avoid summary judgment on the shorter statute of limitations. *Earle v. Ratliff*, 998 S.W.2d 882, 892–93 (Tex. 1999) (DTPA); *Hodge v. N. Trust Bank of Tex., N.A.*, 54 S.W.3d 518, 522–23 (Tex. App. – Eastland 2001, pet. denied) (conversion). Similarly, slapping the word

"fraud" onto a claim concerning construction defects doesn't turn it into a tort claim that can avoid mandatory arbitration of construction-defect claims, nor does it save a plaintiff from summary judgment on limitations when his cause of action is for conversion. *In re Kimball Hill Homes Tex., Inc.*, 969 S.W.2d 522, 526 (Tex. App. – Houston [14th Dist.] 1998) (construction defect); *Carpenter v. Carpenter*, No. 02-11-00266-CV, 2012 WL 2579498 at *4–5 (Tex. App. – Fort Worth July 5, 2012, pet. denied) (conversion).

Brown is a word-slapper. She slapped "exemplary damages" into her petition, but she didn't "allege facts showing [Hoffman] liable for punitive damages." *Al Parker Buick Co. v. Touchy*, 788 S.W.2d 129, 130–31 (Tex. App. – Houston [1st Dist.] 1999) (orig. proceeding). She had to go beyond her liability allegations and make "express allegations of willfulness, malice, or gross negligence[.]" *Jacobs*, 300 S.W.3d at 43. She didn't. Her only exemplary-damages allegation is that Hoffman acted with the "state of mind for which … exemplary damages [are] authorized." Tab 1 at ¶ 23.

This is triply empty. First, it doesn't even accuse Hoffman himself of that culpability; Brown states it generally about all seven defendants. Second, it doesn't actually accuse Hoffman of a state of mind necessary to create exemplary liability — of gross negligence, fraud, or malice. *See* Tex. Civ. Prac. & Rem. Code § 41.003(a). Third, it alleges no facts that would show that Hoffman acted with the neces-

9

sary attitude. She alleges no specific intent to hurt someone, no extreme risk, no actual awareness of that risk, no conscious disregard, no falsities, and no knowingly wrongful activity, and she alleges no fact that would permit an inference of those. *Id.* at §§ 41.001(7), (11) (elements of gross negligence and malice); *Ernst & Young LLP v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (elements of fraud). Without those express allegations, Brown doesn't "allege a basis for the assessment of punitive damages" and can't recover them; Hoffman's "net worth is not a 'relevant matter,'" and net-worth discovery "has no probative value" and must be denied. *Al Parker Buick*, 788 S.W.2d at 131.

The wealth a person holds, and the ends to which he directs it, are matters whose privacy is of constitutional importance. *Maresca v. Marks*, 362 S.W.2d 299, 301 (Tex. 1962) (orig. proceeding); *Tilton v. Marshall*, 925 S.W.2d 672, 683 (Tex. 1996) (orig. proceeding). Once Hoffman must yield his information to Brown, the violation of his privacy is complete; its intimacy can't be recaptured. The potential for abusing this information is great. Permitting it to be compelled on allegations as flimsy as Brown's will tempt those who seek improper leverage in a lawsuit and furnish another weapon to those who use the legal system for improper ends. Mandamus is proper to correct the trial court's error in compelling production of this private information

when Brown isn't entitled to it. *See In re Islamorada Fish Co. Tex., L.L.C.*, 319 S.W.3d 908, 912 (Tex. App. – Dallas 2010).

## B. Requiring Hoffman to disclose net worth now is premature.

A trial court has discretion to manage its docket, including the "sequence, timing and scope of discovery to minimize burden, maximize efficiency, and protect privacy rights." *Jacobs*, 300 S.W.3d at 52 (Sullivan, J. concurring). The trial court's docket-control order, Tab 11, sets this case's schedule. "[T]rial courts should be mindful of protecting sensitive information and utilize the least intrusive means necessary to facilitate discovery." *Jacobs*, 300 S.W.3d at 46, citing *In re Weekly Homes, L.P.*, 295 S.W.3d 309, 321 (Tex. 2009). That includes ensuring the correct timing, as well as scope, of discovery. That is especially true where, as here, bifurcation reserves certain issues for later — and possibly, depending on the case, for never. TEX. CIV. PRAC. & REM. CODE §§ 41.009, 41.011(b); Tab 10, motion to bifurcate.

A court should reject discovery if its benefit outweighs the burden of producing it. TEX. R. CIV. P. 192.4(b). That balance won't tilt toward Brown until the trial court decides Hoffman's motion for summary judgment. It is only then that Brown will have a need for Hoffman's net-worth information because it is only then that she will know whether there is even the possibility that exemplary-damages claims will be tried.

11

All of the legal fees paid to Hoffman in the divorce case — the fees about which Brown complains — were first reviewed by her husband and his counsel, reviewed and found "reasonable and necessary" by a special master, and then approved and ordered paid by the divorce court. That Hoffman received payment only after that gantlet suggests that there will be insufficient evidence as a matter of law that Hoffman knew, disregarded the possibility, or intended that his acts were wrongful. This in turn suggests that there will be no right to exemplary damages, and no right to information on Hoffman's wealth.

Brown should not be allowed to traipse through Hoffman's private and sensitive financial information when that information will likely never be at issue. Even if the issue were to remain live after summary judgment, the docket-control order, Tab 11, gives Brown enough time to explore Hoffman's net worth before trial. The trial court can protect Hoffman's privacy until breaching it is necessary; it had a duty to do so. Its order that Hoffman expose that information at this stage of the case represents a failure to analyze and apply the law properly. It is an abuse of discretion, and it should be vacated.

## C. The law on exemplary damages has evolved; the Court should chart the impact that evolution has made on net-worth discovery.

### 1. The proper standard.

The proper balance between disclosure and privacy is struck by requiring a prima-facie showing of entitlement to punitive damages before net-worth discovery is allowed. That position would shield a party's sensitive, private information on his wealth until the plaintiff crosses the speedbump of a prima-facie case. This shields privacy until unclothing that information is appropriate to the case — that is, until a showing that the benefits to the proponent outweigh the detriment to the opponent. This position would also align Texas with most of her sister states.[20] However, the Supreme Court's most recent word is that net worth can be discovered when pleadings are appropriate, so that step is reserved for that court. *Jacobs*, 300 S.W.3d at 41–42; *Lunsford*, 746 S.W.2d at 473.

---

[20] Texas is in the minority of jurisdictions permitting net-worth discovery without an evidentiary showing. Other states require a prima facie showing of gross negligence, or more, before permitting net-worth discovery. *See* Tab 12, listing authorities from other jurisdictions. *See also* James McLoughlin, Annotation, *Necessity of Determination or Showing of Liability for Punitive Damages Before Discovery or Reception of Evidence of Defendant's Wealth*, 32 A.L.R.4th 432 (2014) (analyzing requirements from other jurisdictions).

## 2. The current standard.

But this Court can recognize how Texas jurisprudence has evolved in the twenty-five years since that announcement. And the evolution, in both statute and common law, demonstrates that the constraints on net-worth discovery can be made sharper:

- Texas courts concluded that, unlike other discovery, which can be used to uncover potential claims, net-worth discovery is proper only if the plaintiff has sufficiently alleged an entitlement to exemplary damages, *Al Parker Buick*, 788 S.W.2d at 131;

- The Supreme Court admonished that private financial documents aren't discoverable if their net-worth evidence can be obtained elsewhere and expressed its reluctance to allow "uncontrolled" net-worth discovery, *Sears, Roebuck & Co. v. Ramirez*, 824 S.W.2d 558, 559 (Tex. 1992) (orig. proceeding);

- The Supreme Court concluded that gross negligence requires a specific mental state and should be found only "in the most exceptional cases," *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 18, 21–22 (Tex. 1994);

- The Legislature heightened the evidentiary requirement for exemplary damages to the clear-and-convincing standard, mandated that defendants be allowed to sever the liability and exemplary-damages phases of a trial, and capped the amount of exemplary damages, Tex. Civ. Prac. & Rem. Code §§ 41.003(a)–(b), 41.009, 41.008;

14

- The Legislature made net worth one of only six factors applicable in an exemplary-damages calculation, Tex. Civ. Prac. & Rem. Code § 41.011(a);

- Two justices of the Supreme Court (including the current Chief Justice) stated that they agreed with a requirement that plaintiffs make a prima-facie showing of entitlement to recover exemplary damages and noted that that court "had yet to address when and on what basis" disclosure of net-worth information should be allowed, *In re Jerry's Chevrolet-Buick, Inc.*, 977 S.W.2d 565, 565–66 (Tex. 1998) (Gonzalez, J., joined by Hecht, J., dissenting from denial of petition);

- The United States Supreme Court recognized that the Constitution limits the amount of exemplary damages that a court can award, *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580–82 (1996), and held that "few awards exceeding a single-digit ratio between punitive and compensatory damages" would withstand a due-process challenge and that a 4:1 ratio "might be close to the line of constitutional impropriety," *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003);

- The Legislature required unanimous findings on both liability for, and the amount of, those damages, Tex. Civ. Prac. & Rem. Code § 41.003(d);

- The Supreme Court concluded that a 4.3:1 ratio in a consumer-fraud case was unconstitutional, in part because "[p]ushing exemplary damages to the absolute constitutional limit in a case like this leaves no room for greater punishment in cases involving death, grievous physical injury, financial ruin, or actions that endanger a large segment of the public,"

15

*Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006);

- The Supreme Court agreed with the U.S. Supreme Court that the reprehensibility of the defendant's conduct, not the defendant's net worth, was the most important factor in determining the propriety of exemplary damages, *id.* at 307–08;

- Texas courts concluded that discovery seeking past net worth instead of current net worth was improper, *In re House of Yahweh*, 266 S.W.3d 668, 673 (Tex. App. – Eastland 2008);

- The United States Supreme Court concluded that the limit for exemplary damages under maritime law was an amount equal to the compensatory damages, *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 512–14 (2008); and

- Texas courts concluded that proper net-worth discovery was limited to questions regarding (a) the party's current net worth and (b) the facts and methods used to calculate that number, *Jacobs*, 300 S.W.3d at 46.

### 3. The Court can announce the current standard.

Courts have left some blazes identifying the limits of permissible net-worth discovery, but those blazes have yet to be mapped as a trail. A plaintiff's ability to recover exemplary damages has narrowed, but none have yet charted the narrows — finding them not at trail's end, leading to the jury, but at the trailhead, leading to discovery. The Court's synthesis of these markers doesn't create new law; it assembles multiple data into a single guide that will help better protect the

privacy and seclusion that deviations from the trail would otherwise invade.

These battles over net-worth discovery are frequent.[21] A single guide delineating the standard that has emerged since *Lunsford* will help standardize trial- and appellate-court rulings. It will lessen the roulette that defendants must play when a plaintiff demands to extract information about their finances. The Court should analyze the relative benefits and burdens that net-worth discovery creates, incorporate that analysis into an explication of the governing law, and apply that explanation to this dispute and grant the petition for mandamus.

## D. Requiring Hoffman to wait until appeal to protect his privacy would be inadequate and rob the courts of guidance.

Hoffman's privacy and the confidentiality of his finances can't be adequately protected by an appeal. "An appeal is inadequate when parties are in danger of permanently losing substantial rights." *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 211 (Tex. 2004). The compelled

---

[21] *See, e.g., In re Booth*, No. 14-14-00637-CV, 2014 WL 5796726 (Tex. App. – Houston [14th Dist.] Oct. 21, 2014, mand. dismissed); *In re Kim*, No. 05-14-01344-CV, 2014 WL 6556269 (Tex. App. – Dallas Oct. 23, 2014); *In re Arpin Am. Moving Sys., LLC*, 416 S.W.3d 927, 929 (Tex. App. – Dallas 2013); *Jacobs*, 300 S.W.3d at 47–52; *House of Yahweh*, 266 S.W.3d at 674; *In re Brewer Leasing, Inc.*, 255 S.W.3d 708, 713 (Tex. App. – Houston [1st Dist.] 2008); *In re Garth*, 214 S.W.3d 190, 194 (Tex. App. – Beaumont 2007); *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 331 (Tex. 1993) (Gonzalez, J. concurring).

production of privileged or confidential information cannot be corrected by an ordinary appeal because the privilege will have long been pierced and the information, once disclosed, stripped of confidentiality. *Walker,* 827 S.W.2d at 843.

By the time an appeal could correct the trial court's order, Hoffman's privacy rights will have been vitiated. At a minimum, Brown and her counsel will know Hoffman's net worth — even though they should not. No appeal can put that genie back in the bottle. Mandamus is the only way to protect Hoffman's privacy.

Moreover, mandamus review "allow[s] the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments." *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008). Justices Gonzalez and Hecht recognized the need for guidance sixteen years ago. *Jerry's Chevrolet-Buick*, 977 S.W.2d at 565–66. Justice Sullivan recognized in 2009 that Texas litigants who seek or must answer net-worth discovery "are entitled to greater clarity and predictability." *Jacobs*, 300 S.W.3d at 52. The Supreme Court recognized the same thing when it set argument in *Jacobs* in 2010. *In re Jacobs*, No. 09-0942, Order Setting Oral Argument (Tex. June 18, 2010).

The Supreme Court dismissed *Jacobs* as moot when that case's plaintiffs withdrew their net-worth discovery requests and stipulated that they wouldn't ask for the information again. *Id.*, Motion to Dis-

18

miss at 2–3 (Tex.) (filed July 9, 2010); *id.*, Order Dismissing Case (Tex. Aug. 13, 2010). In doing so, they suffocated the chance that an opinion in that case would bring clarity. This case enables the Court to furnish the guidance that is now four more years overdue.

## Conclusion and Prayer

Relators Robert S. Hoffman and the Law Office of Robert S. Hoffman P.L.L.C. pray that the Court issue a writ of mandamus directing the trial court to vacate its order compelling production of net-worth information; award them the costs they incur before the Court; and grant all other relief to which they may be entitled.

Respectfully submitted,

THE OLSON FIRM PLLC

/s/ Leif A. Olson
Leif A. Olson
  State Bar No. 24032801
  leif@olsonappeals.com
PMB 188
4830 Wilson Road, Suite 300
Humble, Texas 77396

CUNNINGHAM DARLOW LLP
Tom Alan Cunningham
  State Bar No. 05244700
  tcunningham@
  cunninghamdarlow.com
Debbie C. Darlow
  State Bar No.05186900

19

ddarlow@cunninghamdarlow.com

919 Milam, Suite 575

Houston, Texas 77002

**Counsel for petitioners**

## Verification

I certify in accordance with Texas Rule of Appellate Procedure 52.3(j) that I have reviewed this petition and have concluded that every factual statement made in it is supported by competent evidence included in the record.

/s/ Leif A. Olson

## Certificate of Compliance

I certify that this brief was prepared with Microsoft Word 2013, and that, according to that program's word-count function, the sections covered by Texas Rule of Appellate Procedure 9.4(i)(1) contain 3,995 words.

/s/ Leif A. Olson

## Certificate of Service

I certify that on December 29, 2014, in accordance with Texas Rule of Appellate Procedure 9.5(b), I served by electronic filing a copy of this petition and the mandamus record upon:

Jimmy Williamson
Cyndi M. Rusnak
Ross A. Sears II
WILLIAMSON, SEARS & RUSNAK
4310 Yoakum Boulevard
Houston, Texas 77006
(713) 223-3330

/s/ Leif A. Olson

No. _____-CV

# First or Fourteenth Court of Appeals at Houston

*In re*

## Robert S. Hoffman and Law Office of Robert S. Hoffman PLLC,

Petitioners.

Original proceeding from the
61st District Court of Harris County
Trial Court No. 2014-17523

## Mandamus Record

Cunningham Darlow LLP
Tom Alan Cunningham
  State Bar No. 05244700
  tcunningham@
  cunninghamdarlow.com
Debbie C. Darlow
  State Bar No.05186900
  ddarlow@cunninghamdarlow.com
919 Milam, Suite 575
Houston, Texas 77002
(713) 255-5500

The Olson Firm PLLC
Leif A. Olson
  State Bar No. 24032801
  leif@olsonappeals.com
PMB 188
4830 Wilson Road, Suite 300
Humble, Texas 77396
(281) 849-8382

*Petitioners request oral argument*

# Record Contents

Document                                                                    Tab

First Amended Petition ........................................................................ 1

Hoffman's disclosures (insurance policy omitted) .............................. 2

Brown's disclosures .......................................................................... 3

Brown's Request for Production No. 52 ............................................ 4

Hoffman's Response to Request for Production No. 52 ...................... 5

Brown's motion to compel ................................................................ 6

Hoffman's response to Brown's motion to compel ............................ 7

Hearing transcript ............................................................................ 8

Proposed order compelling production .............................................. 9

Hoffman's motion to bifurcate ....................................................... 10

Docket-control order....................................................................... 11

Chart of net-worth discovery standards in other jurisdictions ........... 12

**Tab 1**
First Amended Petition

CAUSE NO. 2014-17523

| | | |
|---|---|---|
| R. BROWN | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | HARRIS COUNTY, T E X A S |
| | § | |
| M. D. BROWN, JR., | § | |
| INDIVIDUALLY, ET AL | § | 61ST JUDICIAL   DISTRICT |

## PLAINTIFF'S FIRST AMENDED PETITION, INCLUDING APPLICATION FOR TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff, **R. BROWN**, (hereinafter sometimes referred to as "R. Brown"), complaining of **M. D. BROWN, JR., INDIVIDUALLY, also referred to as "D. BROWN"**, **PAVLAS BROWN & YORK, L.L.P., PAVLAS & BROWN, L.L.P., JEDEDIAH D. MOFFET, INDIVIDUALLY, JEDEDIAH D. MOFFET, P.C., ROBERT S. HOFFMAN, INDIVIDUALLY,** and **LAW OFFICE OF ROBERT S. HOFFMAN, P.L.L.C.** hereinafter sometimes referred to collectively as Defendants, and for cause of action would respectfully show unto the Court and Jury as follows:

**I.**
**DISCOVERY CONTROL PLAN**

1.     Pursuant to the provisions of Texas Rule of Civil Procedure 190.4, Plaintiff proposes to conduct discovery according to Discovery Control Plan Level 3, and therefore requests this Court to enter a scheduling order which includes a discovery deadline date.

## II.
## JURISDICTION AND VENUE

2. This case is brought under Texas state law. The amount in controversy exceeds the minimum jurisdictional limits of this Court. This court has subject matter jurisdiction over this cause. This is a cause of action that is brought under Texas state law as a result of the negligence and breach of fiduciary duty of the defendants. All of the causes of action asserted herein are asserted under Texas state law and the duty that is imposed upon persons practicing law within the State of Texas and giving legal advice, counsel and assistance to clients. This is a cause of action brought by Plaintiff against her attorneys for breach of their professional obligations under state law. Venue is appropriate because the Defendants work and/or reside in Harris County, Texas, and part or all of the actions complained of took place in Harris County.

## III.
## PARTIES

3. Plaintiff is a resident citizen of Harris County, Texas.

4. Defendant, **M. D. BROWN, JR.,** has appeared and answered herein.

5. Defendant, **PAVLAS BROWN & YORK, L.L.P.,** has appeared and answered herein.

6. Defendant, **PAVLAS & BROWN, L.L.P.,** has appeared and answered herein.

7. Defendant, **JEDEDIAH D. MOFFETT** has appeared and answered herein.

8. Defendant, **JEDEDIAH D. MOFFETT, P.C.,** has appeared and answered herein.

9. Defendant, **ROBERT S. HOFFMAN** has appeared and answered herein.

10. Defendant, **LAW OFFICE OF ROBERT S. HOFFMAN, P.L.L.C.,** has appeared and answered herein.

11.     Defendants were attorneys practicing law within the State of Texas at all relevant times herein.    From approximately August 2010 to present, Defendants had an attorney/client relationship with Plaintiff.  Defendants had an attorney/client relationship with Plaintiff that dealt with, among other things, handling her divorce (her husband is now deceased), and all matters concerning her rights and interests, and subsequent and concurrent litigation.  Such divorce was filed on or around January 7, 2011, as Cause No. 2011-01272 in the 246th Judicial District Court of Harris County, Texas (hereinafter sometimes referred to as the "divorce").  During the time Defendants represented Plaintiff in the divorce, Defendants were Plaintiff's attorneys and counselors in a multitude of other matters.

12.     During the time complained of, Defendants were practicing law within the State of Texas and were held to the duty of any reasonable practitioner of law within the State of Texas. Namely, during this period of time, Defendants had an attorney/client Relationship with Plaintiff and owed her a fiduciary duty at all times during this point in time.  In connection with that, Defendants owed her a duty of candor, loyalty, trust, fidelity and full disclosure.  The duty is one that is imposed by the special relationship of trust and confidence.  As such, Plaintiff entrusted Defendants with her legal matters, including specifically, legal matters relating to her divorce.

13.     At no time during this period of time did Defendants deny that they had a fiduciary duty to Plaintiff.  At no time during this time period did Defendants take the position that they did not have an attorney/client relationship with Plaintiff.  At no time did Defendants take the position that they were not assisting or were unable to assist on any of the litigation matters or render advice regarding the underlying divorce on behalf of Plaintiff.  To the contrary, during this period of time,

Defendants represented to Plaintiff that they were qualified, that they had an attorney/client relationship with Plaintiff, that they were content and happy to work upon Plaintiff's legal matters, that they were able to do so, and that they had an ongoing attorney/client relationship with Plaintiff in the underlying divorce. As such, Defendants had an ongoing duty as attorneys to Plaintiff and also had an ongoing duty as a fiduciary to Plaintiff.

14. Defendants failed to act in the best interests of Plaintiff.

15. As a result of Defendants' actions, Plaintiff incurred damages, including unnecessary legal fees and a gross diminishing of the community estate.

## V.
## CAUSES OF ACTION

16. Plaintiff fully incorporates the above by reference.

### A. Legal Malpractice

17. Defendants, as Plaintiff's attorneys, owed Plaintiff a legal duty. This duty was established by the attorney-client contract representation of Plaintiff. Defendants' breached that duty. Defendants' breach proximately caused Plaintiff's actual damages.

### B. Negligence

18. The Defendants' acts constituted a departure from that which an attorney of ordinary prudence would do under the same or similar circumstances. As such, the Defendants are liable for negligence. In particular, however, Plaintiff would show that Defendants were negligent and/or breached their fiduciary duty in connection with one or more of the following particulars:

a) Defendants put themselves in a position where they were a priority creditor in bankruptcy, whereas Plaintiff is an unsecured creditor;

Page 4 of 27

b) Defendants agreed to release the husband from jail for the payment of a relatively minor sum, when that was probably the best opportunity to negotiate a settlement, or at least recover some benefit for Plaintiff, rather than Defendants;

c) Defendants did not relay settlement opportunities received from the opposing side to Plaintiff and did not ever encourage Plaintiff to settle, even after it was clear or should have been clear that the community estate was running out of money;

d) Defendants had a conflict of interest by representing a previous ex-wife at the same time Defendants were representing Plaintiff without making full disclosure;

e) Defendants had a conflict of interest in seeking their own attorney's fees before seeking recovery for Plaintiff;

f) Defendants failed to inform the trial court with specificity that the husband was committing "fraud on the community" and failed to request/obtain relief from the court;

g) Defendants failed to plead and pursue subsequent and concurrent litigation (*e.g.,* Cause No. 4:13-003365), properly under the Fraudulent Transfers Act;

h) Defendants failed to seek remedies with zeal from the divorce and bankruptcy courts to stop the husband's dissipation of assets of the community estate, or obtain adequate remedy for their client;

i) Defendants failed to keep Plaintiff's information private and confidential and provided information to the press that was not helpful to Plaintiff and, caused damage to Plaintiff;

j) Defendants engaged in public and private conduct such as calling opposing counsel disparaging names; this was unbecoming to the profession and damaging to Plaintiff's interests;

k) Defendants made multiple statements to the media without the consent of Plaintiff regarding the status of various legal matters, her private life, and even regarding opposing counsel, which were self-serving and did nothing to further the interests of Plaintiff;

l) Defendants failed to exercise reasonable and ordinary care to protect Plaintiff's interests in the divorce, the husband's bankruptcy, and concurrent and subsequent related litigation;

m) Defendants failed to maintain adequate communication with Plaintiff;

n) Defendants engaged in a course of action to prolong litigation and increase billable time;

o) Defendants overcharged Plaintiff for their services and ran up unnecessary fees;

p) Defendants never sent Plaintiff billing statements;

q) Defendants' fees were exorbitantly large, compared to any recovery made by Plaintiff;

r) Defendants never considered the conflict of interest between their interests and the client's interest;

s) Defendants failed to oppose or object to the excessive fees billed by Amicus attorney, Master in Chancery, experts or any other person or entity;

t) Defendants overbilled, double billed, and excessively billed Plaintiff;

u) Defendants never attended mediation and refused to engage in meaningful settlement discussions;

v) Defendants failed to Pursue Settlement Opportunities;

w) Defendants failed to provide proper disclosures to their client;

x) Defendants disclosed confidential information to third parties without authorization from their client;

y) Defendants provided inadequate representation to their client on issues brought into the bankruptcy court and failed to preserve and defend their client's rights in that venue;

z) Defendants agreed to the CRO agreement in the bankruptcy court and failed to object to the CRO agreement in Florida;

aa) Defendants filed a claim in the bankruptcy court in their own names, when such claim belonged to their client;

bb) Defendants failed to advise their client regarding the billings against the community estate by third parties and opposing counsel, resulting in overburdening of the community estate;

cc) Defendants failed to reign in or curtail the exorbitant fees being charged by third parties, specifically including expert witnesses;

dd) Defendants incurred exorbitant, unreasonable, security costs in connection with the divorce, and incurred exorbitant, extraneous unrelated security costs, all of which was billed at their client's expense;

ee) Defendants gave improper, unreasonable, and unrealistic tax advice and failed to provide proper disclosures and recommendations regarding tax consequences to their client;

ff) Defendants charged all of their attorney's fees in connection with the defense of a lawsuit by Michael Brown related to intellectual property rights to their client;

gg) Defendants undertook representation of Darlina Barone on matters involving her ex-husband, Michael Brown, which directly impacted the community estate of Michael Brown and Rachel Brown, while simultaneously representing Rachel Brown in her divorce from Michael Brown, and failed to adequately disclose the conflict resulting from the simultaneous representation to Rachel Brown;

hh) Defendants' placed their own interests ahead of their client's interest; and

ii) Defendants engaged in multiple and repeated acts of unnecessary billing and overbilling.

19.     Each of the above and foregoing acts constituted negligence and fell below the standard of care for attorneys in Texas and were a proximate cause of the damage to Plaintiff.

## C. Disgorgement

20.     Attorneys' fees paid to Defendants exceeded reasonable and customary fees.

21.     Defendants' interest was to make money for themselves, and they placed their interests ahead of Plaintiff's. All fees should be disgorged.

## D. Breach of Fiduciary Duty

22.     Defendants' errors and omissions, as set forth herein, also breached their fiduciary duty. Defendants are therefore liable for breach of fiduciary duty. Defendants, by placing their own interests ahead of the Client, ran up excessive and unnecessary legal fees that were unconscionable, put their financial interest ahead of their client, and as such should be reduced or forfeited pursuant to the applicable law.

23.     A fiduciary relationship existed between Plaintiff and Defendants. Defendants owed a duty of loyalty and utmost good faith to Plaintiff. Defendants breached their fiduciary duty to Plaintiff by the acts and omissions alleged herein. Plaintiff was injured by Defendants' breach and Defendants' benefited from their breach of duty. Defendants' breach was done with the requisite state of mind for which an imposition of exemplary damages is authorized.

## E. *Respondeat Superior,* Agency and Restatement (Second) of Torts

24.     Further, Plaintiff would show that Defendant, M. D. Brown, Jr., (also known as D. Brown), was at the time of the occurrence made the basis of this lawsuit an agent, servant,

representative, or employee of Defendants, Pavlas Brown & York, L.L.P. and Pavlas & Brown, L.L.P. At all times related to the instant lawsuit, Defendant, M. D. Brown's, acts and/or omissions were in the course and scope of his employment and/or agency. Accordingly, Plaintiff has sued Defendants, Pavlas Brown & York, L.L.P. and Pavlas & Brown, L.L.P., for all damages caused by the negligence of Defendant, M. D. Brown, Jr., under the doctrine of *respondeat superior*.

25.     Additionally, Defendants, Pavlas Brown & York, L.L.P. and Pavlas & Brown, L.L.P., are liable for the damages caused by the negligence of the individual Defendant under the agency doctrines of apparent authority, ostensible agency, and agency by estoppel. Alternatively, Defendants, Pavlas Brown & York, L.L.P. and Pavlas & Brown, L.L.P., are liable for the damages caused by the negligence of the Defendant, M. D. Brown, Jr., under Section 429 of the Restatement (Second) of Torts.

26.     Further, Plaintiff would show that Defendant, Jedediah D. Moffett, was at the time of the occurrence made the basis of this lawsuit an agent, servant, representative, or employee of Jedediah D. Moffett, P.C.. At all times related to the instant lawsuit, Defendant, Jedediah D. Moffett's acts and/or omissions were in the course and scope of his employment and/or agency. Accordingly, Plaintiff has sued Defendant Jedediah D. Moffett, P.C., for all damages caused by the negligence of its employee, Defendant, Jedediah D. Moffett under the doctrine of *respondeat superior*.

27.     Additionally, Defendant, Jedediah D. Moffett, P.C., is liable for the damages caused by the negligence of the individual Defendant under the agency doctrines of apparent authority, ostensible agency, and agency by estoppel. Alternatively, Defendant, Jedediah D. Moffett, P.C., is liable for the damages caused by the negligence of the Defendant, Jedediah D. Moffett under Section 429 of the Restatement (Second) of Torts.

28. Further, Plaintiff would show that Defendant, Robert S. Hoffman, was at the time of the occurrence made the basis of this lawsuit an agent, servant, representative, or employee of The Law Office of Robert S. Hoffman, P.L.L.C.. At all times related to the instant lawsuit, Defendant, Robert S. Hoffman's acts and/or omissions were in the course and scope of his employment and/or agency. Accordingly, Plaintiff has sued Defendant The Law Office of Robert S. Hoffman, P.L.L.C., for all damages caused by the negligence of its employee, Defendant, Robert S. Hoffman, under the doctrine of *respondeat superior*.

29. Additionally, Defendant, The Law Office of Robert S. Hoffman, P.L.L.C. is liable for the damages caused by the negligence of the individual Defendant under the agency doctrines of apparent authority, ostensible agency, and agency by estoppel. Alternatively, Defendant, The Law Office of Robert S. Hoffman, P.L.L.C., is liable for the damages caused by the negligence of the Defendant, Robert S. Hoffman under Section 429 of the Restatement (Second) of Torts.

30. Furthermore, to the extent that Defendants Pavlas Brown & York, LLP, Pavlas & Brown, LLP, Jedediah D. Moffett, P.C., and The Law Office of Robert S. Hoffman, P.L.L.C. knowingly participated in the breach of fiduciary duty by M.D. Brown, Jr., Jedediah D. Moffett and Robert S. Hoffman, they become a joint tortfeasor with the fiduciary and are liable as such.

### F. Conspiracy to Breach Fiduciary Duty

31. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein. To prove conspiracy, Plaintiff must establish the object of the combination was to accomplish (1) an unlawful purpose or (2) a lawful purpose by unlawful means. The Plaintiff must show that at least one of the named defendants was liable for an underlying tort. The basis of a conspiracy claim is the damage resulting from the commission of the tort, not the conspiracy itself.

Plaintiff, Rachel Brown asserts claims for conspiracy to breach fiduciary duty as to all Defendants. All Defendants conspired to commit all of the above described acts and omissions.

### G. Additional Causes of Action

32.    Defendants were in all probability negligent in other respects in addition to the above and foregoing and Plaintiff reserves the right to amend her pleading to conform to the evidence and to plead more specifically acts or omissions in the future as they become known.

33.    Each and all of the foregoing acts and omissions were a violation of the standards of care applicable to attorneys, were negligence, and were a proximate cause of the damages sustained by Plaintiff and of the damages set forth below.

34.    COMES NOW Rachel Brown, (hereinafter referred to as "Rachel[1]") filing this Application for Temporary Restraining Order, Temporary Injunction and Permanent Injunction, and would show the Court the following:

### VI.
### APPLICATION FOR TEMPORARY INJUNCTION AND PERMANENT INJUNCTION

35.    COMES NOW Rachel Brown[2], (hereinafter referred to as "Rachel[3]") filing this Application for Temporary Restraining Order, Temporary Injunction and Permanent Injunction, and would show the Court the following:

> Sec. 65.011. GROUNDS GENERALLY. A writ of injunction may be granted if:
> (1)  the applicant is entitled to the relief demanded and all or part of the relief requires the restraint of some act prejudicial to the applicant;
> (2)  a party performs or is about to perform or is procuring or allowing the performance of an act relating to the subject of pending litigation, in violation of the rights of the applicant, and the act would tend to render the judgment in that litigation ineffectual;

---

[1] The names are confusing. Rachel Brown was married to, and filed divorce proceeding, against Dr. Michael Brown, now deceased (sometimes referred to, for clarity, as the "Husband". One of her attorneys, Marshall Davis Brown, Jr. shares the same last name (although no relation). So, reference names have been chosen to avoid confusion.

(3) the applicant is entitled to a writ of injunction under the principles of equity and the statutes of this state relating to injunctions;

(4) a cloud would be placed on the title of real property being sold under an execution against a party having no interest in the real property subject to execution at the time of sale, irrespective of any remedy at law; or

(5) irreparable injury to real or personal property is threatened, irrespective of any remedy at law.

Texas Civ. Prac. & Rem Code § 65.011.

A temporary injunction's purpose is to preserve the *status quo* of the litigation's subject matter pending a trial on the merits. *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex.1993); *Electronic Data Sys. Corp. v. Powell*, 508 S.W.2d 137, 139 (Tex.Civ.App.-Dallas 1974, no writ)...To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Walling*, 863 S.W.2d at 57; *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex.1968).

*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

36.     To be entitled to a temporary injunction pending trial on the merits, the petitioner must demonstrate: (i) a cause of action against the respondent; (ii) a probable right to relief; and (iii) a probable, imminent and irreparable injury in the interim. *Mabrey v. Sandstream,* 124 S.W.3d 302, 309 (Tex.App. – Fort Worth 2003, no pet.). Plaintiff has reason to believe that if, while the case is pending, Defendants are allowed access to the funds, Defendants will disburse same, and Plaintiff will lose forever the ability to capture said funds. The damages sought in this case could potentially exceed $10 million, if the jury and/or court allow for total fee forfeiture, and none of the defendants have the financial wherewithal to satisfy such a judgment. In fact, two of the three defendants have no E&O coverage. Thus, Plaintiff will be irreparably harmed because of Defendants' conduct, for which Plaintiff will have no adequate remedy at law. Plaintiff therefore requests that this Court enter a temporary injunction against Defendants, their agents, representatives, servants, attorneys, and all persons acting in concert with Defendants, prohibiting

them from having any contact with or control over the disputed funds, and that the funds are immediately deposited into the registry of this Court. At the conclusion of this case, Plaintiff requests the Court to enter an order releasing the funds from the registry of the court to her.

37. The purpose of a preliminary injunction is to preserve the *status quo* pending a final decision on the merits of the case. *See, Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *Nikolouzos v. St. Luke's Episcopal Hosp.*, 162 S.W.3d 678, 683 (Tex.App. – Houston [14th Dist.] 2005, no pet.); *see also Pierce v. State*, 184 S.W.3d 303, 306-7 (holding that an asset freeze that prevented the defendant from continuing to make unauthorized charges on customers' credit cards preserved the *status quo.*). The *status quo* is the "last, actual, peaceable, non-contested status that preceded the pending controversy." *State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975); *see Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 419 (Tex.App.-Houston [14th Dist.] 2007, no pet.); *see also Houston Compressed Steel Corp. v. State*, 456 S.W.2d 768, 773 (Tex. Civ. App.--Houston [1st Dist.] 1970, no writ); *Rattikin Title Co. v. Grievance Committee*, 272 S.W.2d 948 (Tex. Civ. App.-- Forth Worth 1954, no writ).

38. The movant must show a probable right to final relief after trial. A party seeking a temporary injunction must not only plea a cause of action justifying injunctive relief; it must also prove a probable right to the relief sought. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). This does not mean proof that would result in a victory at final trial, but something more than a *prima facie case*. *See Tri-Star Petroleum Co. v. Tipperary Corp.*, 101 S.W.3d 583 (Tex.App. – El Paso 2003, no writ) (trial court's issuance of a temporary injunction was affirmed because the trial court could have rationally determined that the evidence supported the movant's claims). The probable right of recovery element encompasses the wrongful conduct. *Inex. Indus., Inc. v. Alpar Res., Inc.*, 717 S.W.2d 685, 687-88 (Tex. App. - Amarillo 1986, no writ). There is

enough evidence, if taken as true, to show a reasonable likelihood of success on at least some of the claims. *See Sands v. Estate of Buys*, 160 S.W.3d 684, 687 (Tex.App.-Fort Worth 2005, no pet.) (temporary injunction applicant " need not establish that it will finally prevail" at trial, but it must provide "some evidence" that " tends to support" its cause of action).

39.     To be adequate, a remedy must provide the applicant complete, final and equal relief. *Frequent Flyer Depot, Inc. v. Am. Inc.,* 281 S.W.3d 215, 229 (Tex. App. – Fort Worth, 2009, pet. denied); *Henderson v. KRTS, Inc.*, 822 S.W.2d 769, 773 (Tex. App. - Houston [1st Dist.] 1992, no writ); *Miller v. K & M P'ship*, 770 S.W.2d 84, 87 (Tex. App. - Houston [1st Dist.] 1989, no writ); *Ferguson v. Herring*, 49 Tex. 126 (1878).

40.     A remedy may also be inadequate if the party to be restrained is incapable of responding in damages due to insolvency. *SRS Prods. Co. v. LG Eng'g Co., Ltd.,* 994 S.W.2d 380, 386 (Tex.App. – Houston [14th Dist.] 1999, no pet). It is permissible to freeze assets when the defendant is insolvent or likely to be insolvent at the time a judgment is rendered. *See e.g., Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 289, (1940) (party seeking injunction to preserve assets or their proceeds that are subject to a pled equitable remedy such as rescission, constructive trust, or restitution); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (party seeking injunction to enjoin assets that form basis of underlying suit, i.e., right to the asset is basis of suit); *Khaledi v. H.K. Global Trading, Ltd.*, 126 S.W.3d 273, 278-79 (Tex.App.-San Antonio 2003, no pet.) (party seeking injunction has security interest in asset sought to be enjoined); *Nowak v. Los Patios Investors, Ltd.,* 898 S.W.2d 9, 11 (Tex.App. – San Antonio 1995, no writ) (citing *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 45 (1st Cir.1986) (party seeking injunction to enjoin assets specifically set aside for purpose of satisfying potential judgment in underlying suit)).

41. "The general rule at equity is that before injunctive relief can be obtained, it must appear that there does not exist an adequate remedy at law. This limitation, however, has no application where the right to relief is predicated on a statutory ground other than on the general principles of equity." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 210 (Tex. 2002)(quoting *Republic Insurance Co. v. ●'Donnell Motor Co.*, 289 S.W. 1064, 1066 (Tex.Civ.App. – Dallas 1926, no writ).

42. Injunctions are equitable remedies, and a trial court will weigh the respective conveniences and hardships of the parties and balance the equities. *See Indian Beach Prop. Owner's Ass'n v. Linden*, 222 S.W.3d 682, 690 (Tex.App. – Houston [1st Dist.] 2007, no pet.); *Surko Enters., Inc. v. Borg-Warner Acceptance Corp.*, 782 S.W.2d 223, 225-26 (Tex.App.- Houston [1st Dist.] 1989, no writ).

43. Federal applicants for injunctive relief include somewhat different standards, such as: (i) that the threatened injury outweighs any damage that might result from the injunction; and (ii) that the injunction will not disserve the public interest. *Affiliated Prof. Home Health Care Agency v. Shalala,* 164 F.3d 282, 285-86 (5th Cir. 1999); *Harris County, Tex. v. CarMax Auto Superstores, Inc.,* 177 F.3d 306, 312 (5th Cir. 1999).

44. Marshall Davis Brown, Jr., Pavlas Brown, L.L.P., Robert S. Hoffman, Law Offices of Robert S. Hoffman, P.L.L.C., Jedediah D. Moffett, and Jedediah D. Moffett, P.C., (the "Attorney Defendants") are defendants this action. Rachel brought this action against the Attorney Defendants for breach of fiduciary duty, negligence, and disgorgement.

45. The Texas Disciplinary Rules have a rule specifically dealing with the safe keeping of property when property or funds are in dispute. Rule 1.14(c) of the Texas Disciplinary Rules, provides as follows:

When in the course of representation a lawyer is in possession of funds or other property in which both the lawyer **and another person claim interests**, the property **shall** be kept separate by the lawyer until there is an accounting and severance of their interest...**If a dispute arises** concerning their respective interests, the portion in dispute **shall** be kept separate by the lawyer until the dispute is resolved, and the undisputed portion shall be distributed appropriately. (emphasis added).

46.     Here the entire $1.8 million, and more, is in dispute, and more than one party "claims an interest" to these funds.  In addition, any amounts that are going to Marshall Davis Brown as a result of his conflict of interest, for simultaneously representing Darlina Barone, is also disputed.

47.     Therefore, it is mandatory that these monies be set aside.

### FUNDS IN DISPUTE

48.     There is an agreement (either entered into, or about to be entered into) by and between Ronald J. Sommers, in his capacity as the Chapter 7 Trustee for the bankruptcy estate of Michael Glyn Brown (the "Trustee"); Nathan Sommers Jacobs, P.C., Markowitz, Ringel, Trusty, & Hartog, Gray Reed & McGraw, P.C., Carr, Riggs & Ingram, and The Claro Group (collectively, the "Professionals"); and Rachel Brown, Marshall Davis Brown, Jr., Pavlas Brown, L.L.P., Robert S. Hoffman, Law Offices of Robert S. Hoffman, P.L.L.C., Jedediah D. Moffett, Jedediah D. Moffett, P.C., StewartMcLean Consultants, L.L.C., Darlina Barone, Joseph Indelicato, Jr., and Claudia Canales (collectively, the "DSO Attorney Claimants"), with the understanding that there will likely be sufficient funds in the bankruptcy estate of Michael Glyn Brown to pay the allowed fees and expenses of the Professionals and the allowed DSO priority claims of the DSO Attorney Claimants in full.  This compromise would allow the bankruptcy Trustee to make payments to Marshall Davis Brown, Jr., Pavlas Brown, L.L.P., Robert S. Hoffman, Law Offices of Robert S. Hoffman, P.L.L.C., Jedediah D. Moffett, and Jedediah D. Moffett, P.C., in the amount of their DSO "claim", which is approximately $1,834,000.00.

49. Plaintiff specifically and respectfully requests that this Court preserve the status quo by ordering that the $1,834,000.00 be placed in trust or deposited into the registry of the court, pending resolution of this dispute over those very fees.

## VII.
## REQUEST FOR TEMPORARY INJUNCTION

50. To obtain a writ for temporary injunction, the applicant does not need to show that it will win at trial[4]. Rather, it is merely required to plead and prove by competent evidence of two elements: (1) a probable right on final trial to the relief he seeks, and (2) probable injury in the interim. *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968); *Transport Co. of Texas v. Robertson Transports*, 216 S.W.2d 549, 552 (Tex. 1953). If the applicant pleads and proves a "probable right of recovery" and "probable injury" in the interim, the court has broad discretion to determine whether to issue the writ, and the trial court's order will be reversed only on a showing of a clear abuse of discretion. *Texas Foundries, Inc. v. Int'l Moulders & Foundry Workers' Union*, 248 S.W.2d 460, 462 (Tex. 1952). Both elements are present here.

51. Rachel is entitled to injunctive relief on statutory and equitable grounds. See TEX. BUS. & COM. CODE § 65.011(2) (statutory right to injunctive relief to preserve subject matter of the suit); TEX. CIV. PRAC. & REM. CODE § 65.011(3) (statutory right to injunctive relief under the principles of equity and the laws of Texas relating to injunctions); TEX. CIV. PRAC. & REM. CODE § 65.011(5) (statutory right to injunctive relief when irreparable injury to personal or real property is threatened).

52. A temporary injunction order serves to preserve the status quo until the trial. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (the purpose of a temporary injunction is to preserve the status quo pending a trial on the merits). Therefore, the question before the trial court

---

[4] This case is presently set for trial in early 2015. Please see the Docket Control Order (DCO) attached hereto.

at the temporary injunction hearing is whether the applicant is entitled to an order to preserve the status quo pending trial on the merits. *Id.*

53. Here, the status quo is that no party has possession of these monies. If such funds are released by the bankruptcy court, then there are competing claims to such funds. Unilateral disbursement and distribution would change the status quo. So, to preserve the status quo, such monies should be held in escrow, or in the registry of the court, until proper ownership is established by final judgment.

54. The probable right of recovery element encompasses the wrongful conduct. *Inex. Indus., Inc. v. Alpar Res., Inc.,* 717 S.W.2d 685, 687-88 (Tex. App. - Amarillo 1986, no writ). The wrongful conduct at issue in this application is clear. Instead, Defendants had negotiated for themselves a position where they would be a priority creditor in the bankruptcy court, while the Plaintiff was an unsecured creditor. Defendants never discussed this matter with Plaintiff, nor put her on notice that their position would be enhanced in the event of bankruptcy. Rather, Defendants continuously assured Plaintiff that bankruptcy was in her best interest, that a bankruptcy would be beneficial to her, and that excellent results would occur from bankruptcy. Therefore, to the extent that Defendants now seek recovery from the bankruptcy court, on their own and independent from Plaintiff, any such claim should belong to Plaintiff. Defendants should not benefit from such conduct.

55. In light of the foregoing, Rachel is substantially likely to prevail in preliminarily and permanently enjoining MDB from accepting more monies in attorneys' fees from Rachel.

56. Rachel is not required to prove that there is no adequate remedy at law, because she is statutorily entitled to injunctive relief according to the Texas Civil Practices and Remedies Code § 65.011(2). See *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 210 (Tex. 2002).

57.     The balance of hardships strongly favors Rachel.   Temporarily enjoining the disbursement of funds would amount to a short delay.   Since the effect of the injunctive relief Rachel seeks will preserve all parties' rights until they are decided at trial, no party would be damaged by such relief, and any bond requirement should be minimized.

58.     It is the adequacy of the remedy, rather than the existence of a remedy, that establishes the right to injunctive relief.  In other words, the legal remedy must be as practical and efficient to the ends of justice as the equitable remedy. *Irving Bank & Trust Co. v. Second Land Corp.*, 544 S.W.2d 684, 688 (Tex. Civ. App. - Dallas 1976, writ ref'd n.r.e.).  For a legal remedy to be adequate, it must therefore give the applicable complete, final, and equal relief. *Miller v. K & M P'ship*, 770 S.W.2d 84, 87 (Tex. App. - Houston [1st Dist.] 1989, no writ); *Henderson v. KRTS, Inc.*, 822 S.W.2d 769, 773 (Tex. App. - Houston [1st Dist.] 1992, no writ).

59.     Allowing MDB to receive, distribute, deposit, spend or otherwise exercise dominion and control over monies coming from the bankruptcy court, allegedly based on his "right" to recover them from Rachel, would result in harm to Rachel.  The case is not set for trial until early 2015.  Thus, absent relief from the Court, Rachel will be irreparably harmed.

60.     Rachel requests that the Court dispense with issuance of a bond since the funds will still be available in their entirety, or, alternatively, that the bond be minimal,, and that MDB and his agents, employees, representatives, and others acting on his behalf, at his request, or under his authority, or in concert with him, including without limitation employees of MDB, be temporarily restrained immediately, and, after notice and hearing, be enjoined, pending further order from this Court, from accepting money from the Trustee under the compromise term sheet or otherwise. Rachel also requests that Trustee be ordered to deposit any such monies into a mutually agreeable escrow account, or, alternatively, into the registry of this Court or to the registry of the United

States Bankruptcy Court for the Southern District of Texas, all monies to be paid to MDB until the resolution of the State Court Action.

61. There is no demonstrable harm that would come from depositing the funds into the registry of the court. Should Rachel not prevail in the State Court Action, then MDB will still have the monies to do with as they see fit. On the other hand, the threat of harm is imminent in that if the monies are disbursed, it will be lost forever.

62. Rachel asks the court to set Rachel's application for temporary injunction for a hearing and, after the hearing, issue a temporary injunction against the MDB and his agents, employees, representatives, and others acting on his behalf, at his request, or under his authority, or in concert with him, including without limitation, all employees of MDB.

63. Preliminary and permanent injunctive relief against MDB and his agents, employees, representatives, and others acting on his behalf, at his request, or under his authority, or in concert with him, including without limitation employees of MDB, to prevent the disbursement of funds to Brown and, orders Brown to cooperate in ensuing that only funds distributed from the bankruptcy be escrowed as outlined above. Rachel also requests the immediate deposit of any funds due MDB from the bankruptcy estate into a mutually agreeable escrow account, or, alternatively, into the registry of the court.

64. Further, to the extent that Defendants have any monies to which they are making a claim, from the husband's bankruptcy case, such money should be placed in escrow, and the ownership of such monies is contested. In particular, Plaintiff would show that Defendants, by their conduct, have placed Plaintiff in a position of being an unsecured creditor in the bankruptcy matter. Even after the bankruptcy matter was filed, Defendants did nothing to take Plaintiff's case to mediation, or to otherwise pursue settlement opportunities. This is in spite of the fact that the

bankruptcy estate, and the actions of the bankruptcy court, was decimating the value of the community estate rapidly.

65.     Instead, Defendants had negotiated for themselves a position where they would be a priority creditor in the bankruptcy court, while the Plaintiff was an unsecured creditor. Defendants never discussed this matter with Plaintiff, nor put her on notice that their position would be enhanced in the event of bankruptcy.   Rather, Defendants continuously assured Plaintiff that bankruptcy was in her best interest, that a bankruptcy would be beneficial to her, and that excellence results would occur from bankruptcy.   Therefore, to the extent that Defendants now seek recovery from the bankruptcy court, on their own and independent from Plaintiff, any such claim should belong to Plaintiff.

66.     Plaintiff, therefore, asks that any such monies be subject to garnishment, attachment or sequestration.  In addition, an injunction should be issued to prohibit Defendants from accessing any such monies.  To the extent that any such monies are approved and/or paid, such monies should be paid directly to Plaintiff.  Alternatively, such monies should be placed in escrow.  Clearly, under the Texas Rules of Disciplinary Procedure, the ownership of such monies belongs to Plaintiff, or, alternatively, at a minimum, the ownership of such monies is contested and therefore disbursement cannot occur.

67.     Under all of the above scenarios, disbursement of such monies cannot be to Defendants.  Plaintiff would request any such monies be awarded to her directly or barring that, any such monies be held in escrow by a neutral third party, or appropriate entity as designated by the court, until the trial of this case, or ownership of such monies can be established.

68.     To the extent that this petition therefore is construed to be a request for a temporary injunction preventing Defendants from receiving such money, and prohibiting Defendants from

disbursing any such monies, or distributing such monies, or claiming ownership to such monies, then this petition is an application for a temporary injunction and an application for a permanent injunction with respect to such matters.

## A. Temporary Injunction

69.     Plaintiff is entitled to injunctive relief on statutory and equitable grounds. *See* Tex. Civ. Prac. & Rem. Code § 65.011(3) (statutory right to injunctive relief under the principles of equity and the laws of Texas relating to injunctions); Tex. Civ. Prac. & Rem. Code § 65.011(5) (statutory right to injunctive relief when irreparable injury to personal or real property is threatened). A temporary restraining order serves to provide emergency relief and to preserve the *status quo* until a hearing may be had on a temporary injunction. *Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex. 1993) (the purpose of a temporary injunction is to preserve the *status quo* pending a trial on the merits). Therefore, the only question before the trial court at the temporary injunction hearing is whether the applicant is entitled to an order to preserve the status quo pending trial on the merits. *Id.*

70.     Plaintiff is not required to prove that there is no adequate remedy at law, because she is statutorily entitled to injunctive relief according to the Texas Civil Practices and Remedies Code § 65.011. *See Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 210 (Tex. 2002). The balance of hardships strongly favors Plaintiff. Since the effect of the injunctive relief Plaintiff seeks will preserve all parties' rights until they are decided at trial, no party would be damaged by such relief, and only bond requirement should be minimized.

71.     Plaintiff will alert Defendants as to her plan to seek the requested temporary restraining order, and will endeavor to give adequate notice to each so that they can appear in

Court. Plaintiff requests, however, that if Defendants are unable to attend the hearing on Plaintiff's request for a temporary restraining order that the Court proceed as if this were an *ex parte* request.

72.     Plaintiff asks the court to set Plaintiff's application for temporary injunction for a hearing and, after the hearing, issue a temporary injunction against Defendants.

### B. Request for Permanent Injunction

73.     Plaintiff asks the court to set her application for permanent injunction for a full trial on the merits and, after the trial, issue a permanent injunction against Defendants.

## VIII.
## STATUTE OF LIMITATIONS

74.     Plaintiff would show and incorporate all of the facts that are discussed and set forth herein.

75.     Plaintiff would show that there are no applicable bars to her case based upon any statute of limitations. First, Plaintiff would show that the statute of limitations has not run on any causes of action asserted herein. Plaintiff also hereby pleads the Discovery Rule and/or the Fraudulent Concealment Rule. Plaintiff has two (2) years from the period of time that she discovered the Defendants negligent acts to bring suit and this suit is timely. Plaintiff would also plead the benefit of any tolling statute of limitations, including any tolling of statute of limitations regarding the time period during which any Defendants were out of the State of Texas.

76.     In addition, Plaintiff would show that any statute of limitations would be tolled and/or would not run during the period of time that Defendants had an attorney/client relationship that was ongoing with Plaintiff, and/or during the time that the transaction/lawsuit was pending, which was at least December 2013. Furthermore, such attorney/client relationship was in connection with their representation of the Plaintiff in the underlying divorce and bankruptcy matters.

77. Furthermore, Plaintiff would show that many of the allegations referred to herein as acts of malpractice on the part of the Defendants, occurred within two (2) years of the date of filing of the lawsuit and, therefore, are not barred by the statute of limitations. Further, Plaintiff would also plead the effect of any tolling statute regarding amended or supplemental pleadings arising out of the transaction or occurrence as relating back to the date of the original filing. Plaintiff would ask the Court to take judicial notice of the date the original filing in this case took place and also judicial notice of the date that any amendments to the petition are filed.

78. Additionally, Plaintiff hereby pleads the *Hughes* rule, as cited by the Texas Supreme Court in *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154 (Tex. 1991). Under the *Hughes* doctrine, the statute of limitations is tolled until Plaintiff has exhausted all appeals in the underlying matter. Until then, the cause of action does not accrue. Plaintiff therefore hereby asserts each of these rules and exceptions to the tolling of the statute of limitations to support her timely filing of the Plaintiff's Original Petition in this matter.

## IX.
## DAMAGES

79. Plaintiff, R. Brown, is entitled to damages which include the following:

A. Forfeiture of all attorneys' fees in Cause No. 2011-01272 in the 246th Judicial District Court of Harris County, Texas for breach of fiduciary duty;

B. Damages for loss of value in the community estates of Plaintiff as a result of the actions of the Defendants; and

C. Attorney's fees incurred in prosecuting the underlying matters, the bankruptcy matter, and this suit;

D. Punitive damages for gross negligence and breach of fiduciary duty;

E. All other relief, whether general or special, whether in law or in equity, to which Plaintiff is justly entitled.

80. Further, Plaintiff asks a Jury to award money damages in this case in an amount that is commensurate with her fair and just damages. Plaintiff believes those damages to be in excess of the minimal jurisdictional limits of this court.

## X.
## PREJUDGMENT AND POST-JUDGMENT INTEREST

81. Plaintiff further pleads for prejudgment and post-judgment interest.

## XI.
## JURY DEMAND

82. Plaintiff demands a trial by jury.

## XII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays:

(1) That Defendants be cited to appear and answer herein;

(2) That a temporary and permanent injunction be entered and all money placed in the registry of the court or into a designated trust account pending the outcome of this matter;

(3) That upon a trial of the merits of this cause, that Plaintiff have and recover a judgment against these Defendants, jointly and/or severally, awarding all damages, general and special, requested and prayed for herein;

(4) Forfeiture of all attorney's fees in all underlying matters, including Cause No. 2011-01272 in the 246th Judicial District Court of Harris County, Texas;

(5) All damages and loss of value in the Community Estate as a result of the actions of the Defendants;

(6)     Attorney's fees incurred in the prosecution of this suit;

(7)     That the judgment bear interest as allowed by law for prejudgment and post-judgment interest;

(8)     That all costs of Court be taxed against the Defendants; and

(9)     For such other and further relief, both at law and in equity, to which the Plaintiff is entitled.

Respectfully submitted,

**WILLIAMSON & RUSNAK**

*/S/ Jimmy Williamson*
JIMMY WILLIAMSON
jimmy@jimmywilliamson.com
State Bar No. 21624100
CYNDI M. RUSNAK
cyndi@jimmywilliamson.com
State Bar No. 24007964
4310 Yoakum Boulevard
Houston, Texas 77006
Telephone: (713) 223-3330
Facsimile: (713) 223-0001

**ROSS A. SEARS, II, P.C.**

By:     */s/ Ross A. Sears, II*
Ross A. Sears, II
State Bar No. 17960011
4310 Yoakum Blvd.
Houston, Texas 77006
Telephone (713) 223-3333
Facsimile (713) 223-3331

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2014, I forwarded a copy of this instrument to all counsel of record by either email, facsimile, certified mail, return receipt requested and/or hand delivery to:

**Defendant, M.D. Brown, Jr., Individually**
by and through his attorney of record,
Jedediah D. Moffett
Jedediah D. Moffett, P.C.
801 Congress, Suite 400
Houston, Texas 77002

**Defendant, Pavlas, Brown & York, L.L.P**
by and through its attorney of record,
Jedediah D. Moffett
Jedediah D. Moffett, P.C.
801 Congress, Suite 400
Houston, Texas 77002

**Defendant, Jedediah D. Moffett**
by and through his attorney of record,
Marshall Davis Brown, Jr.
Pavlas & Brown, L.L.P.
3040 Post Oak Boulevard, Suite 120
Houston, Texas 77056

**Defendant, Pavlas & Brown, L.L.P.**
by and through its attorney of record,
Jedediah D. Moffett
Jedediah D. Moffett, P.C.
801 Congress, Suite 400
Houston, Texas 77002

**Defendant, Jedediah D. Moffett, P.C.**
by and through its attorney of record,
Marshall Davis Brown, Jr.
Pavlas & Brown, L.L.P.
3040 Post Oak Boulevard, Suite 120
Houston, Texas 77056

**Defendants, Robert S. Hoffman,**
**Individually**
**and Law Office of Robert S. Hoffman, P.**
**L.L.C.**
by and through their attorney of record,
Tom Alan Cunningham
Debbie C. Darlow
919 Milam, Suite 575
Houston, Texas 77002

*/s/ Ross A. Sears, II*
Ross A. Sears, II

**Tab 2**

Hoffman's disclosures (insurance policy omitted)

## NO. 2014-17523

| | | |
|---|---|---|
| R. BROWN, | § | IN THE DISTRICT COURT OF |
| | § | |
| **Plaintiff** | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| M. D. BROWN, JR., ET AL. | § | |
| | § | |
| **Defendants.** | § | 270th JUDICIAL DISTRICT |

### HOFFMAN'S RESPONSE TO PLAINTIFF'S
### REQUEST FOR DISCLOSURES

TO:   Plaintiff and her attorney, Jimmy Williamson, Williamson & Rusnak, 4310 Yoakum Boulevard, Houston, Texas 77006

Pursuant to TRCP Rules 194.2 and 194.3, Robert S. Hoffman and the Law Office of

Robert S. Hoffman, P.L.L.C. (Hoffman), respond to Plaintiff's Request for Disclosures.

Respectfully submitted,

**CUNNINGHAM DARLOW LLP**

By:_____
      Tom Alan Cunningham
      tcunningham@cunninghamdarlow.com
      State Bar No. 05244700
      Debbie C. Darlow
      ddarlow@cunninghamdarlow.com
      State Bar No. 05186900
      919 Milam Street, Suite 575
      Houston, Texas  77002
      Telephone:  (713) 255-5500
      Telecopier:  (713) 255-5555

**ATTORNEYS FOR DEFENDANTS,**
**ROBERT S. HOFFMAN and**
**THE LAW OFFICE OF ROBERT S. HOFFMAN,**
**P.L.L.C.**

## CERTIFICATE OF SERVICE

Pursuant to Rule 21a(a)(2) of the Texas Rules of Civil Procedure, a true and correct copy of the foregoing has been served upon the parties and counsel listed below by email, on this 16th day of June, 2014.

Jimmy Williamson
jimmy@jimmywilliamson.com
Williamson & Rusnak
4310 Yoakum Boulevard
Houston, Texas 77006

Marshall Davis Brown, Jr.
mdbrown@pavlasbrown.com
Pavlas & Brown, L.L.P.
3040 Post Oak Boulevard, Suite 1020
Houston, Texas 77056

Jedediah D. Moffett
jdm@moffettpc.com
Jedediah D. Moffett, P.C.
801 Congress, Suite 400
Houston, Texas 77002

_____
Tom Alan Cunningham

## RESPONSES TO DISCLOSURES

**(a)    the correct names of the parties to the lawsuit;**

Plaintiff:

        Rachel Brown

Defendants:

        Marshall Davis Brown, Jr.
        Pavlas & Brown, L.L.P.
        Pavlas, Brown & York, L.L.P.
        Jedediah D. Moffett
        Jedediah D. Moffett, P.C.
        Robert S. Hoffman
        The Law Office of Robert S. Hoffman, P.L.L.C.

**(b)    the name, address, and telephone number of any potential party;**

David L. Grange
President and CEO
Osprey Global Solutions, L.L.C.
8209-A Market Street, No. 294
Wilmington, North Carolina 28411
(855) 741-5168
Connection:   (1) Chief Restructuring Officer for all business entities owned and/or controlled by Michael Glyn Brown; appointed on March 14, 2013 by Judge Robert A. Mark, Southern District of Florida (Miami), Bankruptcy Case 13-11484-RAM; (2) Defendant in Case No. 13-23170-CIV, Michael Glyn Brown v. David L. Grange, in the Southern District of Florida (federal).

**(c)    the legal theories and, in general, the factual bases of the responding party's claims or defenses (the responding party need not marshal all evidence that may be offered at trial);**

Hoffman refers to and incorporates its pleadings as part of this disclosure.

The Plaintiff's claims are meritless.  Hoffman has not breached any legal duties owed to the Plaintiff.  At all relevant times, Hoffman's professional services were performed according to the applicable standard of care. The Plaintiff's claims regarding attorney's fees and expenses, among others, have already been considered, adjudicated, and disposed of by court order and may not be raised again in this case.  Plaintiff has suffered no damages.  Alternatively, to the extent Plaintiff has suffered any damage in connection with her divorce, such damage was caused by third persons over whom Hoffman has had no control, including but not limited to Michael Glyn Brown and David L. Grange.

3

**(d)** **the amount and any method of calculating economic damages;**

Plaintiff has suffered no damages.

**(e)** **the name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case;**

Rachel Brown
c/o Jimmy Williamson
Williamson & Rusnak
4310 Yoakum Boulevard
Houston, Texas 77006
713-223-3330
Connection: Plaintiff.

Marshall Davis Brown, Jr.
Pavlas & Brown, LLP
3040 Post Oak Blvd., Suite 1020
Houston, Texas 77056
(713) 222-2500
Connection: Defendant.

Robert S. Hoffman
Law Office of Robert S. Hoffman, P.L.L.C.
6575 West Loop South, Suite 496
Bellaire, Texas 77401
(713) 333-8353
Connection: Defendant.

Jedediah D. Moffett
Law Office of Jedediah D. Moffett, P.C.
801 Congress, Suite 400
Houston, Texas 77002
(713) 333-5800
Connection: Defendant.

William B. Stewart, Jr., CPA/ABV/CFF, CFE, CVA
Stewart McClean Consultants LLC
7887 San Felipe Street, Suite 122
Houston, Texas 77063
(713) 974-2928
Connection: Financial, business valuation, accounting, tracing, and tax expert for Rachel Brown in Brown divorce suit No. 2011-01272 in 309th Judicial District Court, Harris County, Texas.

Elizabeth H. Hurst, MBA, ASA
Stewart McClean Consultants LLC
7887 San Felipe Street, Suite 122
Houston, Texas 77063
(713) 974-2928
Connection: Business valuation, financial and accounting expert for Rachel Brown in Brown divorce suit No. 2011-01272 in 309th Judicial District Court, Harris County, Texas

Joseph Indelicato, Jr.
Joseph Indelicato, Jr., P.C.
3355 W. Alabama, Suite 950
Houston, Texas 77098
(713) 952-2949
Connection: Master In Chancery in Brown divorce suit No. 2011-01272 in 309th Judicial District Court, Harris County, Texas.

Claudia Canales
Law Office of Claudia Canales P.C.
2112 Grand Blvd.
Pearland, Texas 77581
(281) 412-7722
Connection: Amicus Attorney in Brown divorce suit No. 2011-01272 in 309th Judicial District Court, Harris County, Texas.

John F. Nichols, Sr.
Nichols Law, P.L.L.C.
5020 Montrose Blvd., Suite 400
Houston, Texas 77006
(713) 654-0708
Connection: Most recent former lead attorney for Michael Glyn Brown in (1) Brown divorce suit No. 2011-01272 in 309th Judicial District Court, Harris County, Texas; (2) Barone modification suit No. 2006-25428 in 247th Judicial District Court of Harris County, Texas; and (3) Barrett Litigation No. 2012-07519 in 333rd Judicial District Court of Harris County, Texas.

Sandy S. Mercer
Mercer Law
3319 Marian Lane
Rosenberg, Texas 77471
(713) 866-4804
Connection: Formerly with Nichols Law, P.L.L.C. Former co-counsel for Michael Glyn Brown in (1) Brown divorce suit No. 2011-01272 in 309th Judicial District Court, Harris County, Texas; and (2) Barone modification suit No. 2006-25428 in 247th Judicial District Court of Harris County, Texas.

Darryl W. Malone
5020 Montrose Blvd., Suite 400
Houston, Texas 77006
(713) 224-6500
Connection:  (1) Most recent former lead attorney for all Third Party Respondent business entities (Superior Vehicle Leasing Co., Inc.; Brown Medical Center, Inc. d/b/a Surgeons Management, Inc.; Texas Hand Therapy Center, Inc. d/b/a The Hand Center; Castlemane, Inc.; Lionheart Company, Inc.; MG Brown International, LLC; MG Brown Investment Group, LLC; Prorentals, Inc.; BHCF, LLC) in Brown divorce suit No. 2011-01272 in 309th Judicial District Court, Harris County, Texas; and (2) most recent former lead counsel for Brown Medical Center, Inc. and BHCF in Barret litigation, No. 2012-07519 in 333rd Judicial District Court, Harris County, Texas; and (3) most recent former lead counsel for Derivative Third Party Defendants (ASC) in Barret litigation, No. 2012-07519 in 333rd Judicial District Court, Harris County, Texas.

David L. Grange
President and CEO
Osprey Global Solutions, L.L.C.
8209-A Market Street, No. 294
Wilmington, North Carolina 28411
(855) 741-5168
Connection:  (1) Chief Restructuring Officer for all business entities owned and/or controlled by Michael Glyn Brown; appointed on March 14, 2013 by Judge Robert A. Mark, Southern District of Florida (Miami), Bankruptcy Case 13-11484-RAM; (2) Defendant in Case No. 13-23170-CIV, Michael Glyn Brown v. David L. Grange, in the Southern District of Florida (federal).

Mary-Olga Lovett
GreenbergTraurig, L.L.P.
1000 Louisiana, Suite 1700
Houston, Texas 77002
(713) 374-3500
Connection:  Variously, former lead attorney for (1) Michael Glyn Brown in Brown divorce suit No. 2011-01272 in 309th Judicial District Court, Harris County, Texas; (2) for BHCF in 309th Judicial District Court, Harris County, Texas; (3) for Michael Glyn Brown in Barone modification suit No. 2006-25428 in 247th Judicial District Court of Harris County, Texas; (4) for MGB's petition for mandamus in No. 14-12-00641-CV, 14th Court of Appeals, Houston, Tex.; (5) for MGB's Pet Mandamus in No. 12-0670, Supreme Court, Tx.; and for (6) Brown Medical Center, Inc. and BHCF in Barret litigation, No. 2012-07519 in 333rd Judicial District Court, Harris County, Texas.

Robert C. Kuehm
Robert C. Kuehm PC
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 861-6166

Connection: (1) Former lead attorney, and subsequently co-counsel, for Michael Glyn Brown in Brown divorce suit No. 2011-01272 in 309th Judicial District Court, Harris County, Texas; and (2) former lead attorney, and subsequently co-counsel, for Michael Glyn Brown in Barone modification suit No. 2006-25428 in 247th Judicial District Court of Harris County, Texas.

Jeanne C. McDowell
603 Avondale St.
Houston, Texas 77006
(713) 655-9595
Connection: Former Co-counsel for (1) Michael Glyn Brown in Brown divorce suit No. 2011-01272 in 309th Judicial District Court, Harris County, Texas; (2) for Michael Glyn Brown in Barone modification suit No. 2006-25428 in 247th Judicial District Court of Harris County, Texas; and (3) for MGB's petition for mandamus in No. 14-12-00641-CV, 14th Court of Appeals, Houston, Texas.

Philip H. Hilder
Hilder & Associates, P.C.
819 Lovett Blvd.
Houston, Texas 77006
(713) 655-0111
Connection: (1) Former lead attorney, and subsequently, co-counsel, for all Third Party Respondent business entities (Superior Vehicle Leasing Co., Inc.; Brown Medical Center, Inc. d/b/a Surgeons Management, Inc.; Texas Hand Therapy Center, Inc. d/b/a The Hand Center; Castlemane, Inc.; Lionheart Company, Inc.; MG Brown International, LLC; MG Brown Investment Group, LLC; Prorentals, Inc.; BHCF, LLC) in Brown divorce suit No. 2011-01272 in 309th Judicial District Court, Harris County, Texas; and (2) former co-counsel for Brown Medical Center, Inc. and BHCF in Barret litigation, No. 2012-07519 in 333rd Judicial District Court, Harris County, Texas

Michael R. DeBruin
Ike Vanden Eykel
KoonsFuller, P.C.
1717 McKinney Ave., Suite 1500
Dallas, Texas 75202
(214) 871-2727
Connection: Former lead counsel for (1) Michael Glyn Brown in Brown divorce suit No. 2011-01272 in 309th Judicial District Court, Harris County, Texas; and (2) for Michael Glyn Brown in Barone modification suit No. 2006-25428 in 247th Judicial District Court of Harris County, Texas.

Katherine Scardino
3730 Kirby Drive, Suite 1120
Houston, Texas 77098
(713) 520-5223

Connection: (1) Former lead counsel for Michael Glyn Brown in Brown divorce suit No. 2011-01272 in 309th Judicial District Court, Harris County, Texas; (2) former lead counsel for Michael Glyn Brown in Barone modification suit No. 2006-25428 in 247th Judicial District Court of Harris County, Texas; and (3) co-counsel in State v. Michael G. Brown, No. 1275269, in the 263rd Judicial District Court of Harris County, Texas.

Dick DeGuerin
DeGuerin & Dickson
1018 Preston Ave., 7th Floor
Houston, Texas 77002
(713) 223-5959
Connection: (1) Former co-counsel for Michael Glyn Brown in Brown divorce suit No. 2011-01272 in 309th Judicial District Court, Harris County, Texas; (2) former co-counsel for Michael Glyn Brown in Barone modification suit No. 2006-25428 in 247th Judicial District Court of Harris County, Texas; and (3) lead counsel in State v. Michael G. Brown, No. 1275269, in the 263rd Judicial District Court of Harris County, Texas.

Mark Tate
Tate Law Group
2 East Bryan Street, Suite 600
Savannah, Georgia 31401
(912) 234-3030
Connection: (1) Lead attorney for Defendant, Michael G. Brown, in Chris Stevens v. Michael Glyn Brown, No. 100255/12, Supreme Court of NY, County of N.Y. (tort suit); (2) lead attorney for ProMed, LLC/M.G.B v. Pavlas Brown, Rachel Brown et al, in Case No. 6:12-CV-00089-MSH, U.S. District Court, Eastern Dist. Texas (Tyler); and (3) MGB's attorney to handle various personal and corporate matters.

Robert J. Hantman
Hantman & Associates
1515 Broadway, 11th Floor
New York, New York 10036
(212) 684-3033; (917) 693-7444
407 Lincoln Road, PH SE
Miami Beach, Florida 33139
(305) 534-4757
Connection: Personal attorney for Michael Glyn Brown on various litigation and personal matters: (1) Chris Stevens v. Michael Glyn Brown, No. 100255/12, Supreme Court of NY, County of N.Y. (tort suit); (2) Brown divorce suit No. 2011-01272 in 309th Judicial District Court, Harris County, Texas; (3) Brown Bankruptcy No. 13-11484-RAM, Southern District of Florida (Miami); (4) Criminal case No. 13-mj-2009-WCT, USA v. Michael G. Brown, U.S. District Ct. Southern District of Florida (Miami); various personal matters.

Steve Chance, Attorney
Steve Chance Attorney at Law, PC

119 N. Commercial St., Suite 275
Bellingham, Washington 98225
(360) 676-9700
Connection:  Attorney for M. G. Brown personal and business matters, including Florida matters (Promed and MGBrownCo).

Geoffrey S. Aaronson
Aaronson Schantz, P.A.
Miami Tower, 27th Floor
100 SE 2nd Street
Miami, Florida 33131
(786) 594-3000
Connection:  Lead attorney for Michael Glyn Brown for bankruptcy cases.

Michael Sims
Overwatch Security Group
12818 Highway 105 West, Suite 2-G
Conroe, Texas 77304
(281) 797-5373
Connection:  Security services for Rachel Brown and children.

Ray von Proctor
1502 Barraud Court
Katy, Texas 77449
c/o Ellen Sprovach
Rosenberg & Sprovach
3518 Travis, Suite 200
Houston, Texas 77002
(713) 960-8300
Connection:  Former Chief of Staff to Michael G. Brown for all Brown owned and/or controlled business entities; also handled M. G. Brown personal matters.

Charles "Chuck" Cave
1314 St. Andrew Road
Kingwood, Texas 77339
c/o Joseph M. Grant
The Grant Law Firm
94 A Drew Street
Houston, Texas 77006
(713) 880-3331
Connection:  Former Chief Financial Officer for Brown Medical Center, Inc. and other Brown owned and/or controlled business entities; also handled MG Brown personal financial transactions and sources of funds.

Manny Guyot
c/o Paul Simon

Simon Herbert McClelland & Stiles, LLP
3411 Richmond Ave., Suite 400
Houston, Texas 77046
(713) 987-7100
Connection: Former CEO of Instratek and Brown Medical Center, Inc.; business models, bank accounts, expenditures.

Patrick M. Levantino
Levantino & Company
2201 West Davis
Conroe, Texas 77304
(936) 441-6212
Connection: CPA for MGB personally and for business entities; arranger of funds and loans for MGB; personal intermediary for MGB in divorce case regarding settlement offer; personal friend of MGB.

Steven Levy
Levantino & Company
2201 West Davis
Conroe, Texas 77304
(936) 441-6212
Connection: Prepared all tax returns for MGB personally and for all Brown owned and/or controlled business entities.

Mynde Eisen
Law Office of Mynde Eisen, P.C.
9800 Pagewood, Suite 3202
P. O. Box 630749
Houston, Texas 77263
(713) 266-2955
Connection: Bankruptcy counsel to Rachel Brown.

Miryam Mitchell.
Law Office of Robert S. Hoffman, P.L.L.C.
6575 West Loop South, Suite 496
Bellaire, Texas 77401
(713) 333-8353
Connection: Associate in Mr. Hoffman's law office.

Johnie Paterson
Walker & Patterson, P.C.
4815 Dacoma Street
Houston, Texas 77092
(713) 956-5577
Connection: Counsel for Rachel Brown.

Preston T. Towber
Towber Law Firm PLLC
6750 West Loop South, Suite 920
Bellaire, Texas 77401
(832) 485-3555
Connection: Counsel for Defendants in bankruptcy proceedings.

In addition to the foregoing, Hoffman adopts and incorporates the persons designated as witnesses or persons with knowledge of relevant facts by any other party.

**(f)** **for any testifying expert:**

    **(1) the expert's name, address, and telephone number;**
    **(2) the subject matter on which the expert will testify;**
    **(3) the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;**
    **(4) if the expert is retained by, employed by, or otherwise subject to the control of the responding party:**

        **(A) all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and**
        **(B) the expert's current resume and bibliography;**

Hoffman has not designated its experts at this time. Designation of testifying experts will take place according to the Docket Control Order.

**(g)** **any indemnity and insuring agreements described in Rule 192.3(f);**

Attached.

**(h)** **any settlement agreements described in Rule 192.3(g);**

None.

**(i)** **any witness statements described in Rule 192.3(h);**

None.

**(j)** **in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills;**

Not applicable to Hoffman.

**(k)** **in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills obtained by responding party by virtue of an authorization furnished by the requesting party;**

Not applicable to Hoffman.

**(l)** **the name, address, and telephone number of any person who may be designated as a responsible third party.**

None known at this time.

Hoffman reserves the right to supplement, alter, change and/or amend each of the foregoing disclosure responses as the case progresses.

**Tab 3**
Brown's disclosures

## CAUSE NO. 2014-17523

| | | |
|---|---|---|
| R. BROWN | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | HARRIS COUNTY, T E X A S |
| | § | |
| M. D. BROWN, JR., | § | |
| INDIVIDUALLY, ET AL | § | 61st  JUDICIAL  DISTRICT |

## PLAINTIFF'S SECOND AMENDED RESPONSE TO REQUESTS
## FOR DISCLOSURE PURSUANT TO RULE 194.2

TO:   Defendants, Robert S. Hoffman and the Law Office of Robert S. Hoffman, P.L.L.C., by and through their attorney of record, Tom Cunningham, 919 Milam, Suite 575, Houston, Texas, 77002.

Defendants, Jedediah D. Moffett, *pro se,* and Jedediah D. Moffett, P.C. 801 Congress, Suite 400, Houston, Texas, 77002.

Defendants, M.D. Brown, Jr., *pro se*, Pavlas & Brown L.L.P., and Pavlas, Brown & York, L.L.P., 3040 Post Oak Blvd, Suite 1020, Houston, Texas, 77056.

COMES NOW R. Brown, Plaintiff, in the above entitled and numbered cause and files the

attached Second Amended Responses to Defendants' Request for Disclosures.

By attorney,

**WILLIAMSON & RUSNAK**

_____
JIMMY WILLIAMSON
SBN: 21624100
CYNDI M. RUSNAK
SBN: 24007064
4310 Yoakum Boulevard
Houston, Texas 77006
713/223-3330
713/223-0001 Facsimile
jimmy@jimmywilliamson.com
cyndi@jimmywilliamson.com

1

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded, pursuant to Rule 21 and 21(a) of the Tex. R. Civ. P. on the 3rd day of July, 2014, to the following:

Marshall Davis Brown, Jr.     mdbrown@pavlasbrown.com
3040 Post Oak Blvd, Ste. 1020
Houston, Texas 77056

Tom Cunningham           tcunningham@cunninghamdarlow.com
919 Milam, Suite 575
Houston, Texas 77002

Jedediah D. Moffett        jdm@moffettpc.com
801 Congress, Ste. 400
Houston, Texas 77002


JIMMY WILLIAMSON

2

**PLAINTIFF'S SECOND AMENDED RESPONSE TO REQUESTS**
**FOR DISCLOSURE PURSUANT TO RULE 194.2**

1. The correct names of the parties to this lawsuit.

**RESPONSE:**

| | |
|---|---|
| Plaintiff - | R. Brown |
| Defendant - | Robert S. Hoffman |
| Defendant - | The Law Office of Robert S. Hoffman |
| Defendant - | M.D. Brown, Jr. |
| Defendant - | Pavlas Brown & York, L.L.P. |
| Defendant - | Pavlas & Brown, L.L.P. |
| Defendant - | Jedediah D. Moffett |
| Defendant - | Jedediah D. Moffett, P.C. |

2. The name, address, and telephone number of any potential parties.

**RESPONSE:**

Plaintiff is not aware of any other potential parties at the present time, other than lawyers and experts retained and/or employed by the Defendants.

3. The legal theories and, in general, the factual basis of your claims.

**RESPONSE:**

1. While in the course and scope of providing legal services, the Lawyer Defendants' actions, errors and omissions, as set forth herein, indicate multiple examples of negligent conduct as well as breaches of fiduciary duties to Plaintiff. The items listed below are a non-exhaustive itemization of multiple acts of negligence and breach of fiduciary duty. Defendants, in addition to the multiple acts of negligence also clearly placed their own interests ahead of the Client, ran up excessive and unnecessary legal fees that were unconscionable and as such should be reduced or forfeited pursuant to the applicable law. Defendants owed a duty of loyalty and utmost good faith to Plaintiff. Plaintiff was injured by Defendants' breach and Defendants' benefited from their breach of duty. Defendants' breach was done with the requisite state of mind for which an imposition of exemplary damages is authorized. These failures will be addressed in the following categories:

   a. General;

   b. Failure to Pursue Settlement Opportunities;

   c. Lack of Proper Disclosures to Client;

   d. Unauthorized Disclosures to Third Parties;

3

e. Bankruptcy Proceedings;

f. The Appointment of Mr. Grange in the Bankruptcy Proceedings;

g. DSO Funds & the Bankruptcy Proceedings;

h. Billing by Third Parties & Overburdening the Community Estate;

i. Expert Witnesses;

j. Unnecessary Security Costs;

k. IRS Issues;

l. External Litigation;

m. Conflict of Interest with Darlina Barone;

n. Examples of Placing the Lawyer Defendants' Interest Before their Client's Interest;

o. Unnecessary Billing, Overbilling, Incorrect Billing, and Disgorgement;

p. Breach of Contract; and

q. Joint Action

**General**

2. Defendants, as Plaintiff, Rachel Brown's ("Rachel") attorneys, owed Rachel a legal duty. This duty was established by the attorney-client contract with Rachel. Defendants' breached that duty. Defendants' breach proximately caused Plaintiff's actual damages. The Defendants' acts constituted a departure from that which an attorney of ordinary prudence would do under the same or similar circumstances. As such, the Defendants are liable for negligence. The items listed below are a non-exhaustive itemization of multiple acts of negligence;

3. Attorneys' fees paid to Defendants exceeded reasonable and customary fees. Defendants' interest was to make money for themselves, and they placed their interests ahead of Rachel's. All fees should be disgorged;

4. While in the course and scope of providing legal services, the Lawyer Defendants, did not deny that they had a fiduciary duty to Plaintiff. At no time during this time period did Defendants take the position that they did not have an attorney/client relationship with Plaintiff. At no time did Defendants take the position that they were not assisting or were unable to assist on any of the litigation matters or render advice regarding the underlying divorce on behalf of Plaintiff. To the contrary, during this period of time, Defendants represented to Plaintiff that they were qualified, that they had an attorney/client relationship with Plaintiff, that they were content and happy to work upon Plaintiff's legal matters, that they were able to do so, and that they had an ongoing attorney/client relationship with Plaintiff in the underlying divorce. As such, Defendants had an ongoing duty as attorneys to Plaintiff and also had an ongoing duty as a fiduciary to Plaintiff. Defendants failed to act in the best interests of Plaintiff. As a result of Defendants' actions, Plaintiff incurred damages, including unnecessary legal fees and a gross diminishing of the community estate;

5. While in the course and scope of providing legal services, the Lawyer Defendants at all times related to the instant lawsuit, were in the course and scope of their employment and/or agency to their respective law firms. Accordingly, Rachel has sued the Law Firm Defendants for

4

all damages caused by the negligence, errors and omissions of the Lawyer Defendants, under the doctrine of *respondeat superior*. Additionally, the Law Firm Defendants, are liable for the damages caused by the negligence of the individual Lawyer Defendants under the agency doctrines of apparent authority, ostensible agency, and agency by estoppel. Alternatively, Law Firm Defendants are liable for the damages caused by the negligence of the Lawyer Defendants under Section 429 of the Restatement (Second) of Torts;

6. While in the course and scope of providing legal services, the Lawyer Defendants were attorneys practicing law within the State of Texas at all relevant times herein.

7. The Lawyer Defendants, each individually, on behalf of themselves and their respective law firms, executed contracts of employment with Rachel. From approximately August 2010 to present, Defendants had an attorney/client relationship with Plaintiff. Defendants had an attorney/client relationship with Plaintiff that dealt with, among other things, handling her divorce (her husband is now deceased), and all matters concerning her rights and interests, and subsequent and concurrent litigation. Such divorce was filed on or around January 7, 2011, as Cause No. 2011-01272 in the 246th Judicial District Court of Harris County, Texas (hereinafter sometimes referred to as the "Divorce"). During the time Defendants represented Plaintiff in the divorce, Defendants were Plaintiff's attorneys and counselors in a multitude of other matters.

8. During the time complained of, Defendants were practicing law within the State of Texas and were held to the duty of any reasonable practitioner of law within the State of Texas. Namely, during this period of time, Defendants had an attorney/client Relationship with Rachel and owed her a fiduciary duty at all times during this point in time. In connection with that, Defendants owed Rachel a duty of candor, loyalty, trust, fidelity and full disclosure. The duty is one that is imposed by the special relationship of trust and confidence. As such, Rachel entrusted Defendants with her legal matters, including specifically, legal matters relating to her divorce;

9. While in the course and scope of providing legal services to Rachel, the Lawyer Defendants repeatedly failed in their duty to Rachel, examples include, but are not limited to: providing incorrect tax advice; allowing exorbitant billing against the community estate by third parties; running up exorbitant bills of their own, knowing that such bills would be at a minimum mirrored by opposing counsel; not managing expert witness fees; encouraging and incurring unnecessary security costs; charging for external litigation without an agreement, including for their own defense in that litigation; not disclosing conflicts of interest in representing other parties or in business relationships; mishandling the challenges and opportunities presented in the divorce *vis-a-vis* the bankruptcy; making unauthorized disclosures of Rachel's confidential information to third parties; failing to make proper disclosures to Rachel regarding the status of her case; failing to pursue reasonable settlement; and engaging in unreasonable, unnecessary and incorrect billing practices. Examples of such failures are detailed below;

10. In addition, please see Plaintiff's current pleadings, all depositions and discovery responses in this case;

11. Plaintiff reserves the right to supplement this disclosure pursuant to the Texas Rules of Civil Procedure;

**Failure to Pursue Settlement Opportunities**

12. While in the course and scope of providing legal services, the Lawyer Defendants never disclosed that given the waste that was occurring on behalf of Michael Brown, such monies would

5

be lost forever to the community estate, and that any victory, in any court, of a judgment after such assets were widely dissipated, spent and squandered, would be of no value to Rachel, and therefore settlement was not only necessary, but absolutely essential in the present circumstances in which they found themselves;

13. While in the course and scope of providing legal services, the Lawyer Defendants failed to recommend to Rachel that she mediate the divorce proceedings with Michael Brown;

14. While in the course and scope of providing legal services, the Lawyer Defendants refused to engage, or adequately engage, in settlement discussions with the opposing side;

15. While in the course and scope of providing legal services, the Lawyer Defendants refused to engage, or adequately engage, in settlement discussions, even after it was well known that tremendous amounts of waste was occurring;

16. While in the course and scope of providing legal services, the Lawyer Defendants conditioned any discussion of settlement upon payment of their past due attorneys' fees, thereby subordinating the interest of the client to their own financial interests, and negligently causing further depletion of the estate and damage to Rachel's claims;

17. While in the course and scope of providing legal services, the Lawyer Defendants made several representations to Rachel that she would be "the richest woman in Texas," would "own the business," would get a tremendous amount of money, and should reject settlement offers that did not involve vast sums of money – accordingly, the Lawyer Defendants counseled Rachel to reject any effort in settlement and they themselves refused to engage in settlement discussions;

18. While in the course and scope of providing legal services, the Lawyer Defendants never disclosed that given the waste that was occurring on behalf of Michael Brown, such monies would be lost forever to the community estate, and that any victory, in any court, of a judgment after such assets were widely dissipated, spent and squandered, would be of no value to Rachel, and therefore settlement was not only necessary, but absolutely essential in the present circumstances in which they found themselves;

19. While in the course and scope of providing legal services, the Lawyer Defendants also negligently failed to inform Rachel that Mr. Grange's actions were "decreasing" **not** "increasing" the estate, further supporting the need for settlement;

20. This includes the fact, that on multiple occasions, the Lawyer Defendants refused to entertain settlement offers from Michael Brown's attorneys to resolve the case, not only did the Defendants refuse to accept any offer they were given, and recommended to Rachel that she did not accept any offer that were given, the Defendants, refused to discuss, or entertain, settlement offers, or to discuss, or genuinely discuss, the issue of settlement;

21. While in the course and scope of providing legal services, the Lawyer Defendants recommended to Rachel that she refuse settlement offers, that she refuse to entertain settlement discussions, and that she refuse to discuss settlement;

22. While in the course and scope of providing legal services, the Lawyer Defendants failed to take into account that the value of the business that was being proposed by them (well in excess of $100 million) was, at worst, fictitious, and, at best, merely an optimistic estimate – upon coming up with such an inflated value, the Lawyer Defendants were encouraging their client to forego money that would provide ease and comfort for her and her children for the remainder of her life

6

the Lawyer Defendants did this without any consideration of the economic risk to which she was subjecting herself — for example, Rachel was not in a position to turn down millions of dollars in settlement for she had no other financial resources available to her to amass such a great amount of money;

23. While in the course and scope of providing legal services, the Lawyer Defendants in effect wanted Rachel to gamble upon a larger recovery than for the recovery that would have guaranteed her a lifetime of comfort, and instead advised her to gamble for a much larger sum — the only realistic objective would be to prolong the imposition of tremendous attorneys' fees, including the attorneys' fees charged by the Lawyer Defendants to Racehl, as well as the attorneys' fees charged by Michael Brown's attorneys, both of which were a substantial burden to the estate;

24. While in the course and scope of providing legal services, the Lawyer Defendants failed to take advantage of settlement overtures, settlement opportunities, settlement discussions, and settlement offers that would have provided a lifetime of security for Rachel;

25. While in the course and scope of providing legal services, the Lawyer Defendants failed to take advantage of the opportunity, after multiple sanctions orders, to negotiate any agreement for Rachel other than payment of attorneys' fees and failed to take advantage of any negotiating leverage that might be had as a result of such sanctions, and failed to negotiate a benefit for their client but negotiated solely to obtain a benefit for themselves;

26. While in the course and scope of providing legal services, the Lawyer Defendants failed to have a discussion with Rachel concerning the fact that the necessity of settlement was paramount given the wide dissipation and dissemination of the community estate property by her husband, Michael Brown, and given the failure of the trial court to appoint a receiver;

27. While in the course and scope of providing legal services, the Lawyer Defendants failed to disclose to Rachel that other creditors to the business assets of Michael Brown existed, and those claims totaled tens of millions of dollars, if not more, and that the existence of those claims, if successful, would completely dissipate and wipe out the community estate, if she did not achieve a timely disposition of this matter;

28. While in the course and scope of providing legal services, the Lawyer Defendants failed to, during periods of negotiation (for example, negotiations to bring current past-due fees) failed to negotiate one single benefit for Rachel other than payment of legal fees, and failed to negotiate for her the ownership of any piece of personalty. Examples include:

a. Failure to obtain Rachel the title to even one vehicle, in spite of the fact that over 50 to 60 vehicles were owned by the parties at the beginning of the proceedings;

b. Failure to provide Rachel title to any legal property of any type or nature;

c. Failure to obtain an agreement that Rachel owned her jewelry, furs, coats and personalty independent of any right of Michael Brown; and

d. Failure to find that Rachel owned any personalty, including any furnishings in the house, or other items;

**Lack of Proper Disclosures to Client**

29. While in the course and scope of providing legal services, the Lawyer Defendants failed to keep Rachel properly notified about the status of her case, failed to make proper disclosures of

7

material developments, and failed to advise her about the impact certain courses of actions might have upon her legal rights and the value of the community estate;

30. While in the course and scope of providing legal services, the Lawyer Defendants failed to advise Rachel that it would be necessary to mediate her case and/or settle her case as quickly as possible, to prevent dissipation of the community estate to third parties through the wrongful, criminal acts by her husband, Michael Brown;

31. While in the course and scope of providing legal services, the Lawyer Defendants failed to advise Rachel that the failure of the family trial court to appoint a receiver to oversee the administration of the community estate, would result in Michael Brown's continued widespread and unbelievable dissemination of community assets in a way such that they could not be returned to or captured by, Rachel;

32. While in the course and scope of providing legal services, the Lawyer Defendants failed in general to keep Rachel involved or informed on many significant issues;

33. While in the course and scope of providing legal services, the Lawyer Defendants, for example, never informed Rachel in writing of the risks outlined in all of these disclosures, including, by way of example, the IRS problems, the billing problems with third parties, the expert witness problems, the limitations on expert witness testimony, the fact that Michael Brown had little realistic chance of obtaining custody of the children, and other matters;

34. At all levels, while in the course and scope of providing legal services, the Lawyer Defendants failed to keep Rachel informed of significant developments in her case;

35. For example, while in the course and scope of providing legal services, the Lawyer Defendants did not forward any of the Master in Chancery billings to Rachel, or inform Rachel that there was excessive billing or an increase in hourly rate, thereby further depleting the estate;

36. While in the course and scope of providing legal services, the Lawyer Defendants did not forward any of Claudia Canales' (the *ad litem*) billings to Rachel, or inform Rachel that there was excessive billing or an increase in hourly rate, thereby further depleting the estate;

37. While in the course and scope of providing legal services, the Lawyer Defendants did not forward to Rachel any of the billings regarding opposing counsel, or inform Rachel that there was excessive billing or an increase in hourly rate, thereby further depleting the estate;

38. While in the course and scope of providing legal services, the Lawyer Defendants did not forward any of their own billings to Rachel, or inform Rachel that there was excessive billing or an increase in hourly rate, thereby further depleting the estate;

39. All of this was a failure to keep Rachel informed of significant developments in her case, which, given the fact the Lawyer Defendants generally billed millions of dollars, is ridiculous;

40. The Lawyer Defendants failed in their fiduciary duty to explain to Rachel that many of the actions being taken were being taken solely in order to benefit the attorneys, and were not being used for leverage to obtain benefits for her;

41. While in the course and scope of providing legal services, the Lawyer Defendants did not explain to Rachel the realistic consequence of the divorce court refusing to appoint a receiver and leaving Michael Brown in charge of the major assets of the community estate;

8

42. While in the course and scope of providing legal services, the Lawyer Defendants failed to explain to Rachel that she should not want to try to "take over the business," and should not want to "acquire control of the business," because Rachel had no experience in how to run a hand surgery business, is not a medical doctor, is not a media consultant, and has no experience in running a business generating millions of dollars a year;

43. While in the course and scope of providing legal services, the Lawyer Defendants failed to explain to Rachel that she needed assets that would provide her financial security, and not contingent, speculative assets of unknown value such as a closely held business associated with a criminal, mentally unstable person such as Michael Brown;

44. While in the course and scope of providing legal services, the Lawyer Defendants never disclosed that, by not providing Rachel copies of the legal invoices for which she was being charged, and by providing these legal invoices to the Master of the Family Law Court, that he was creating a system whereby they could argue that Rachel was barred from contesting the amount of those invoices, or seeking a refund of those amounts as being more than reasonable and necessary such risk and consequence, as has now been argued by the Defendants to be applicable, was never explained to Rachel, nor disclosed to her in the course and scope of her representation;

**Unauthorized Disclosures to Third Parties**

45. While in the course and scope of providing legal services, the Lawyer Defendants engaged in conduct whereby they disclosed Rachel's confidential information to third parties, including the press, without Rachel's informed consent for such disclosures;

46. While in the course and scope of providing legal services, the Lawyer Defendants engaged in public unprofessional behavior and conduct without regard for the impact such conduct would have upon Rachel and without Rachel's authorization;

47. While in the course and scope of providing legal services, the Lawyer Defendants failed to inform Rachel that Marshall Davis Brown, had referred to the opposing counsel publicly as a "c " and that upon being confronted with the evidence that he had done so, replied that "I didn't say it to her, I only said it to her male co-counsel" the Lawyer Defendants failed to disclose to Rachel the detrimental effect that would have on her reputation, her media status, her standing within the community, the effect it would have upon her children, and the effect it would have upon the Divorce court's willingness to expedite and hear the resolution of her suit;

48. While in the course and scope of providing legal services, the Lawyer Defendants failed to inform Marshall Davis Brown, or Rachel, that profanely defamatory remarks directed to the gender of opposing counsel, would be detrimental to their client and would not work in their client's best interest;

49. While in the course and scope of providing legal services, the Lawyer Defendants had unauthorized discussions with the press regarding information that was confidential to Rachel (please note that confidential information under Rule 1.05 of the Texas Disciplinary Rules, includes both privileged and unprivileged information);

50. While in the course and scope of providing legal services, the Lawyer Defendants repeatedly made unauthorized disclosures to the media without Rachel's consent and many times without her knowledge;

9

51. While in the course and scope of providing legal services, the Lawyer Defendants referred to opposing counsel as a "c _ ," "flat chested," and made other sexually, and gender derogatory, remarks;

52. While in the course and scope of providing legal services, the Lawyer Defendants never sought Rachel's permission to make such inflammatory remarks;

53. While in the course and scope of providing legal services, the Lawyer Defendants were not advancing Rachel's cause when they made such inflammatory remarks;

54. While in the course and scope of providing legal services, the Lawyer Defendants, upon being challenged for such conduct, did not deny or apologize, but instead took a sexist, derogatory, and backwards position claiming that they did not say it to the female attorney's "face;"

55. While in the course and scope of providing legal services, the Lawyer Defendants billed Rachel for the time spent in defending themselves against a motion for sanctions based upon their inflammatory remarks;

56. While in the course and scope of providing legal services, the Lawyer Defendants accused Michael Brown in court of hiring a hit man to kill Rachel;

57. While in the course and scope of providing legal services, the Lawyer Defendants referred to Michael Brown as a "piece of s _ _ _" in open court;

58. While in the course and scope of providing legal services, the Lawyer Defendants upon being challenged by Michael Brown's counsel that such conduct would harm the community estate, and would harm the business interest of both Michael Brown and Rachel, the Lawyer Defendants continued to engage in this conduct;

59. Even after Michael Brown died, Defendant Marshall Davis Brown contacted media to give statements about Michael Brown's death, without the permission of his client to do so;

60. While in the course and scope of providing legal services, the Lawyer Defendants never tried to coordinate with Rachel the type of statement that should be given to the press, and whether statements should be given to the press, and what statements, if any, should be given to the press;

**Bankruptcy Proceedings**

61. While in the course and scope of providing legal services, the Lawyer Defendants provided inadequate representation on issues brought into the bankruptcy court and failed to properly preserve and defend Rachel's rights in that venue;

62. While in the course and scope of providing legal services, the Lawyer Defendants failed to explain to Rachel the fact that serious third party expenditures, including the expenditure of attorneys' fees on both sides, in the millions of dollars, could impact Michael Brown's decision to take bankruptcy;

63. While in the course and scope of providing legal services, the Lawyer Defendants failed to anticipate the effect that these billings could cause Michael Brown to undertake desperate measures (either personally or otherwise), to avoid continuing monthly liabilities or charges;

64. While in the course and scope of providing legal services, the Lawyer Defendants never disclosed that bankruptcy proceedings on the part of Michael Brown would be disastrous in that it would give the bankruptcy court control of all community assets, and power to sell those assets,

and power in terms of the sales/use/disposition of those assets, and that Rachel, as a member of the community, would be an unsecured creditor;

65. While in the course and scope of providing legal services, the Lawyer Defendants failed to realize that the filing of bankruptcy by Michael Brown in Florida in early 2013 was a disastrous event in terms of protecting the rights of Rachel;

66. While in the course and scope of providing legal services, the Lawyer Defendants failed to explain to Rachel that, upon filing the Chapter 11 proceeding in Florida, the court might convert a Chapter 11 bankruptcy proceeding to a Chapter 7 bankruptcy proceeding, in effect subordinating all of her rights;

67. While in the course and scope of providing legal services, the unreasonable attitude of the Lawyer Defendants regarding discussions of interim solutions, or obtaining interim relief, continued even after the Florida bankruptcy was filed;

68. This course of action on the part of the Lawyer Defendants continued even after the Texas bankruptcy was filed;

69. While in the course and scope of providing legal services, the Lawyer Defendants failed to realize that once the bankruptcy court was in control of the community estate, that Rachel's rights in the community estate were severely and unbelievably diminished;

70. While in the course and scope of providing legal services, the Lawyer Defendants failed to inform Rachel that the filing of the bankruptcy in Florida was a disastrous event, and that she should try to attempt all efforts at resolution as quickly as possible;

71. When the Texas bankruptcy was then filed, the Lawyer Defendants failed to realize that this seriously diminished the amount of the estate;

72. While in the course and scope of providing legal services, the Lawyer Defendants failed to tell Rachel the implications of the Florida bankruptcy, the Grange appointment, and the Texas bankruptcy;

**The Appointment of Mr. Grange in the Bankruptcy Proceedings**

73. While in the course and scope of providing legal services, the Lawyer Defendants agreed to the CRO agreement in the bankruptcy court, which set up the process whereby Mr. Grange would be the receiver;

74. While in the course and scope of providing legal services, the Lawyer Defendants failed to object to the CRO agreement in Florida which effectively put Mr. Grange in charge of Michael Brown's companies;

75. While in the course and scope of providing legal services, the Lawyer Defendants failed to anticipate that Mr. Grange might have no expertise, or ability, to manage the business of Michael Brown;

76. While in the course and scope of providing legal services, the Lawyer Defendants failed to object to the appointment of Grange, as a Receiver, in the bankruptcy proceedings in Florida; instead the attorneys for Rachel recommended that she agree to the appointment of Grange and agree to the appointment of a Receiver, when in fact the risk of appointing Grange is that he would dissipate, sell, and dispose the community assets which would wreck the business and wreck any hope of the community estate having any chance of survival;

11

77. While in the course and scope of providing legal services, the Lawyer Defendants failed to understand during the period of time that Mr. Grange was handling things that the community estate was being diminished and/or irrevocably diminished;

78. While in the course and scope of providing legal services, the unreasonable attitude of the Lawyer Defendants settlement against continued, even once Mr. Grange had been made a receiver;

79. This course of action on the part of the Lawyer Defendants continued even after the Defendants realized that Mr. Grange was pursuing a course of action that the Lawyer Defendants did not find acceptable;

80. While in the course and scope of providing legal services, the Lawyer Defendants failed to object to Mr. Grange billing for time to the file before he was appointed;

81. While in the course and scope of providing legal services, the Lawyer Defendants failed to object to Mr. Grange billing more per hour than the court order allowed;

82. While in the course and scope of providing legal services, the Lawyer Defendants failed to object to Mr. Grange's request to increase his hourly rate;

83. These same acts and omissions apply both to the bills and charges of Mr. Grange, and to the bills and charges of Ms. Claudia Canales as well;

## DSO Funds & the Bankruptcy Proceedings

84. The attorney's fees allowed to be paid pursuant to the Domestic Support Order ("DSO"), or the Temporary Orders in the Family Court, were to allow Rachel to recover attorney's fees. The Defendants, including Marshall Davis Brown, Jedediah Moffett and Robert Hoffman appropriated that opportunity for themselves and are trying to take the money that was ordered to be paid to Rachel (so that she could pay reasonable and necessary attorneys' fees) and appropriate that opportunity for themselves;

85. While in the course and scope of providing legal services, the Lawyer Defendants breached their duty when they filed a claim in the bankruptcy court in their own names, and allowed a claim to be filed in the name of Marshall Davis Brown, when in reality, such claim belonged to Rachel. Such action was a breach of fiduciary duty, or attempted theft, in order to put their interests ahead of their client's interest;

86. When the Texas bankruptcy was filed, the Lawyer Defendants failed to file a DSO claim on behalf of Rachel for the attorneys' fees, which Rachel had been awarded pursuant to the DSO;

87. While in the course and scope of providing legal services, the Lawyer Defendants instead, intentionally, or negligently, or by breach of their fiduciary duties, filed for themselves, a DSO claim, instead of filing a claim for those attorneys' fees for Rachel;

88. Marshall Davis Brown filed the DSO claim, in bankruptcy court, not in the name of Rachel, who was his client, and to whom he owed a fiduciary duty, but rather filed the DSO claim in bankruptcy court in his own name    this was for the express purpose of obtaining the money himself, as opposed to having the money  flow to Rachel, who is the party entitled to same;

89. The Lawyer Defendants have refused requests to hold any monies recovered through the bankruptcy proceeding and DSO claims in escrow, or the hands of an impartial third party. Such conduct is wrongful under the rules and standards which govern attorney behavior, such conduct

is also inappropriate under Rule 1.14(c) of the Texas Disciplinary Rules, which are evidentiary of the standards to which attorneys must hold themselves;

**Billing by Third Parties & Overburdening the Community Estate**

90. While in the course and scope of providing legal services, the Lawyer Defendants failed to advise Rachel regarding the billings against the community estate by third parties and opposing counsel and the resulting overburdening of the community estate;

91. While in the course and scope of providing legal services, the Lawyer Defendants never disclosed that given the waste that was occurring on behalf of Respondent Michael Brown, such monies would be lost forever to the community estate, and that any victory, in any court, of a judgment after such assets were widely dissipated, spent and squandered, would be of no value to Rachel, and therefore settlement was not only necessary, but absolutely essential in the present circumstances in which they found themselves;

92. While in the course and scope of providing legal services, the Lawyer Defendants failed to protect the community estate, in particular to protect Rachel, from unwarranted billings by third parties;

93. While in the course and scope of providing legal services, the Lawyer Defendants failed to object to the attorney's fees that were being incurred by Claudia Canales, who was appointed *ad litem*;

94. While in the course and scope of providing legal services, the Lawyer Defendants failed to object to Ms. Canales' participation in the discovery depositions, hearings, and proceedings, when such were not necessary;

95. While in the course and scope of providing legal services, the Lawyer Defendants failed to object to the rates Ms. Canales was charging, or the fact that she increased her rates almost immediately after starting on the case;

96. While in the course and scope of providing legal services, the Lawyer Defendants failed to object to Ms. Canales participation, given that Michael Brown was a known drug user, was living an incredibly crazy lifestyle, was not exercising his visitation rights with the children, gave no emotional, or life support to the children in connection with raising them, and had virtually no chance of ever obtaining custody;

97. While in the course and scope of providing legal services, the Lawyer Defendants failed to appreciate the reality that Rachel was going to be the primary custodial parent, and that Michael Brown had no significant chance of ever obtaining custody of the children given that, incurring hundreds of thousands of dollars for *ad litem* fees was totally unnecessary, duplicative of the efforts of others, and not appropriate, the Defendants failed to, even once, object to Ms. Canales' general participation, Ms. Canales' fees, or Ms. Canales' increased fees, or Ms. Canales' participation in multiple events;

98. While in the course and scope of providing legal services, the Lawyer Defendants failed to object to the appointment of a Master in Chancery;

99. While in the course and scope of providing legal services, the Lawyer Defendants failed to object to the expenses that were incurred by the Master in Chancery;

100.     While in the course and scope of providing legal services, the Lawyer Defendants failed to object to the fees of the Master in Chancery;

101.     While in the course and scope of providing legal services, the Lawyer Defendants failed to object to the participation of the Master in Chancery in numerous events in which he had minimal reason to appear;

102.     While in the course and scope of providing legal services, the Lawyer Defendants failed to explain, in detail, to Rachel how much money was being paid to the Master in Chancery, the *ad litem,* and others, and did not send her copies of the bills incurred by third parties, or explain why they were being paid or inform her of the risk of unnecessary depletion of the estate caused by these third party billings;

103.     While in the course and scope of providing legal services, the Lawyer Defendants failed to assert, even once, that the fees being charged by the Master in Chancery, and other third parties, were inappropriate or excessive;

104.     While in the course and scope of providing legal services, the Lawyer Defendants, never once objected to the fees of *ad litem,* or the Master in Chancery, or other third parties, and therefore Defendants failed to preserve any error on those points such that an error could have been brought to the attention of the trial court, or the error could have been brought to the court of appeals;

105.     While in the course and scope of providing legal services, the Lawyer Defendants failed to negotiate with counsel for Michael Brown, regarding limitations and the role of participation of the Master in Chancery and/or limitations on the participation of the *ad litem*;

106.     While in the course and scope of providing legal services, the Lawyer Defendants never explained to Rachel any of the circumstances regarding the *ad litem* fees, or the Master's fees, or why they were so high, or why they were failing to object;

107.     While in the course and scope of providing legal services, the Lawyer Defendants never obtained Rachel's consent to overtly, and tacitly, agree to the exorbitant fees charged by the Master, and to agree to the exorbitant fees being charged by the *ad litem* or the Master;

108.     While in the course and scope of providing legal services, the Lawyer Defendants failed to give Rachel copies of detailed, itemized billings that were incurred by all of these third parties, such as expert witnesses, the Master in Chancery, and the *ad litem*;

109.     While in the course and scope of providing legal services, the Lawyer Defendants failed to explain to Rachel the detrimental effect that exorbitant fees for millions of dollars being incurred by third parties would have upon the community estate, and upon the proceedings in general;

110.     While in the course and scope of providing legal services, the Lawyer Defendants failed to explain to Rachel that third party expenditures, including the expenditure of attorneys' fees on both sides, could seriously impair the ability of the community estate to continue business successfully;

111.     While in the course and scope of providing legal services, the Lawyer Defendants failed to explain to Rachel the fact that serious third party expenditures, including the expenditure of attorneys' fees on both sides, in the millions of dollars, could impact Michael Brown's decision to take bankruptcy;

14

112.     While in the course and scope of providing legal services, the Lawyer Defendants failed to anticipate the effect that these billings could cause Michael Brown to undertake desperate measures (either personally or otherwise), to avoid continuing monthly liabilities or charges;

113.     While in the course and scope of providing legal services, the Lawyer Defendants failed to object, to preserve error, or to try to limit third party fees and expenses;

114.     While in the course and scope of providing legal services, the Lawyer Defendants failed to adequately explain, or explain at all, to Rachel the consequences of their decisions to overtly, and tacitly, agree to all such fees;

115.     While in the course and scope of providing legal services, the Lawyer Defendants failed to try to minimize the time being spent by their adversaries and third parties in connection with the case, given that any money being spent on attorneys' fees by Michael Brown would also diminish the community estate;

116.     Assuming opposing counsel was spending as much, or more than, the Defendants on attorneys' fees, the Defendants should have realized this would be an unnecessary burden on the community estate;

117.     While in the course and scope of providing legal services, the Lawyer Defendants should have taken steps to try to minimize the actions taken by their adversaries, with the view towards trying to save, and be efficient with, community assets;

118.     If the Defendants were going to bill $11 million, and realize their adversaries would bill more than them, (which would mean the total attorneys' fees would be in excess of $22 million, not counting *ad litem,* Master in Chancery, exert witnesses, etc.), then it becomes immediately obvious that this becomes an unbelievable burden upon the community estate;

119.     While in the course and scope of providing legal services, the Lawyer Defendants should have realized the burden upon the estate and took actions to try to minimize this problem;

**Expert Witnesses**

120.     While in the course and scope of providing legal services, the Lawyer Defendants failed to reign in or curtail the exorbitant fees being charged by third parties, specifically including expert witnesses;

121.     While in the course and scope of providing legal services, the Lawyer Defendants failed to take reasonable measures to curb the approximately one million dollars that was being charged by one of the expert witnesses hired by Defendants;

122.     While in the course and scope of providing legal services, the Lawyer Defendants failed to summarize and curtail the information given to the expert witness, so as to minimize his fees;

123.     While in the course and scope of providing legal services, the Lawyer Defendants failed to take any actions to minimize the fees of the expert witnesses that they retained;

124.     The expert witness fees are outrageously high, and would have seriously impaired the expert witness's ability to credibly testify before any impartial trier of fact;

125.     There are several examples where the Lawyer Defendants, while in the course and scope of providing legal services, failed to curtail the expert witness's participation – for example,

15

the expert witness attended several depositions (which was not necessary), the expert witness undertook issues involving the review of the Defendants' own fees and billings (which would have been the responsibility of the Defendants, not Rachel);

126. While in the course and scope of providing legal services, the Lawyer Defendants also failed to explain any of these issues, concerning the use and applicable fees of expert witnesses, to Rachel;

127. While in the course and scope of providing legal services, the Lawyer Defendants, in addition to letting the expert witness run amok in billing excessive charges, allowed the expert witness to develop a damage model that had serious deficiencies in terms of being fair, had serious deficiencies in terms of being able to be used in court, and had serious deficiencies in terms of being able to persuade opposing counsel to use it as a basis for settlement;

128. While in the course and scope of providing legal services, the Lawyer Defendants failed to develop a reasonable expert witness damage model regarding the value of the community estate;

129. While in the course and scope of providing legal services, the Lawyer Defendants tried to unduly inflate the value of the community estate beyond the bounds of reality;

130. While in the course and scope of providing legal services, the Lawyer Defendants came up with a damage model involving multiples of earnings, that would only be applicable in a setting of a more conventional type of business, run by conventional management;

131. While in the course and scope of providing legal services, the Lawyer Defendants hired expert witnesses that falsely inflated the value of the community estate under the theory that the community estate was worth a "multiple" of the yearly earnings when in fact such multiple analysis would only be applicable if:

a. the owner of the company was capable, able, ready and willing to run the company in an efficient and well organized manner;

b. the company would stay in business for a number of years (for example, for the company to have a value of a multiple of 6, the company would have to stay in business for several years in order for a prospective "buyer of the business" to be able to justify paying a multiple of 6 times the EBITDA of the company; and

c. the Lawyer Defendants failed to explain the risks that such an inflated analysis would harm the chance of expedited resolution, and harm the chance of any peaceful resolution;

132. While in the course and scope of providing legal services, the Lawyer Defendants failed to explain the expert witness's damage model to Rachel, during the pendency of the divorce, and how it would affect the divorce;

133. While in the course and scope of providing legal services, the Lawyer Defendants failed to develop a reasonable damage model, with a reasonable expert, with reasonable credibility in order to reasonably value the community estate;

134. While in the course and scope of providing legal services, the Lawyer Defendants failed to explain to Rachel, that, as was later shown by the actual values developed by the

16

bankruptcy estate, and by the actual values developed by the receivers, that the damage model they were using was unrealistic in terms of value;

135. While in the course and scope of providing legal services, the Lawyer Defendants failed to explain to Rachel that the damage model was based on a fictitious assumption, namely, that there were would be a potential buyer for a multiple of earnings of the business, and that this "legal fiction" had a substantial possibility that it would not be successful;

136. While in the course and scope of providing legal services, the Lawyer Defendants failed to explain to Rachel that this "legal fiction" of a damage model could actually be detrimental in terms of trying to get the case settled and/or resolved;

137. While in the course and scope of providing legal services, the Lawyer Defendants failed to account, in their damage model, for the debts, liabilities, lawsuits, and contingent liabilities, of the businesses being handled by Michael Brown, and later by Mr. Grange;

**Unnecessary Security Costs**

138. While in the course and scope of providing legal services, the Lawyer Defendants incurred exorbitant, unreasonable, security costs in connection with the Divorce, and incurred exorbitant, extraneous unrelated security costs, all of which was billed at Rachel's expense;

139. Likewise, the Lawyer Defendants obtained security for themselves at Rachel's expense, without ever obtaining any agreement in writing from her to do so;

140. While in the course and scope of providing legal services, the Lawyer Defendants did not disclose a conflict of interest with security forces that had been retained, since it is believed that Marshall Davis Brown had some sort of business relationship with one, or more, of the security agencies that were actually allowed to bill exorbitant amounts of money;

141. Further, the amount of security costs incurred were ridiculously exorbitant;

142. Further, while in the course and scope of providing legal services, the Lawyer Defendants obtained "security" for Rachel that was beyond reasonable;

143. When one of the security companies sued Rachel, the Lawyer Defendants did not resolve that matter in a timely and efficient matter;

144. Further, one of the security companies, arranged for by the Lawyer Defendants, sued Rachel, and the Lawyer Defendants did not third party in Michael Brown to that lawsuit;

145. When one of the security companies sued Rachel, the Lawyer Defendants did not remove that case to the bankruptcy court (upon the filing of the bankruptcy);

146. When one of the security companies sued Rachel, the Lawyer Defendants did not take the position that the obligation was part of the domestic support order, and therefore should be paid by the bankruptcy court;

147. When one of the security companies sued Rachel, the Lawyer Defendants withdrew from her representation and refused to assist her through resolution of the case, even though the entire reason the security company had been hired, and the alleged exorbitant costs incurred, had been at the sole request of the Lawyer Defendants themselves;

**IRS Issues**

148. While in the course and scope of providing legal services, the Lawyer Defendants gave improper, unreasonable, and unrealistic tax advice and failed to provide proper disclosures and recommendations regarding tax consequences to Rachel;

149. While in the course and scope of providing legal services, the Lawyer Defendants gave Rachel the recommendation to sign the 2010 tax return, when in fact, such was improper advice;

150. While in the course and scope of providing legal services, the Lawyer Defendants failed to tell Rachel that for 2010 she should have filed her taxes separately;

151. While in the course and scope of providing legal services, the Lawyer Defendants failed to inform Rachel of the "Innocent Spouse Doctrine," and the difficulties in applying that Doctrine, and failed to tell Rachel that even if she was successful in urging that doctrine, there would be costs involved in terms of IRS entanglement, attorney's fees, etc.;

152. While in the course and scope of providing legal services, the Lawyer Defendants failed to inform Rachel that the IRS (or for that matter, any bankruptcy trustee), might take the position that she had made unwarranted distributions from the estate, or had obtained benefits from the estate, by drawing out millions of dollars for alleged "attorney's fees," alleged "experts," alleged "divorce settlement services," alleged "security services," etc.;

153. While in the course and scope of providing legal services, the Lawyer Defendants failed, even though Defendants charged millions of dollars to Rachel, to obtain competent tax advice for Rachel concerning the years 2010, 2011, 2012, and 2013;

154. While in the course and scope of providing legal services, the Lawyer Defendants never disclosed the risk of signing the 2010 tax return, even though the risk included being responsible for millions of dollars in unpaid IRS debt, and the risk that she would not be adjudged to be a "Innocent Spouse" under Internal Revenue Service Guidelines;

155. While in the course and scope of providing legal services, the Lawyer Defendants never disclosed that the amounts that were being paid to the attorneys for "Rachel Brown" might be adjudged to be taxable income to her, as a "distribution" from the community estate, and therefore could create a potentially taxable event for Rachel;

**External Litigation**

156. While in the course and scope of providing legal services, the Lawyer Defendants were sued by Michael Brown in connection with intellectual property rights, and, without any written agreement from Rachel, or other agreement from Rachel, regarding such attorneys' fees, charged all of their attorneys' fees in connection with the defense of the suit to Rachel;

157. While in the course and scope of providing legal services, the Lawyer Defendants did not have an agreement with Rachel to charge her for attorneys' fees that were incurred in defense of the suit, but charged Rachel anyway;

158. While in the course and scope of providing legal services, the Lawyer Defendants never sought to obtain to Rachel's permission to bill her for the defense costs for the case in which they were defendants;

18

159.     While in the course and scope of providing legal services, the Lawyer Defendants never tried to seek an agreement with Rachel that such fees were properly attributable to Rachel;

160.     While in the course and scope of providing legal services, the Lawyer Defendants did not even send copies of the bills detailing defense costs that were incurred by them when they were defendants;

161.     While in the course and scope of providing legal services, the Lawyer Defendants never even discussed with Rachel that they were charging her with the defense costs incurred in connection with this litigation, much less discuss it in writing or obtain her agreement or assent to same;

162.     There is nothing in Defendants' contracts with Rachel, wherein the Defendants agreed to provide legal services in the divorce (even assuming the Defendants had complied with such contract), that would allow Defendants to charge Rachel for the attorneys' fees that they incurred while they were defendants in another action, nor was there any effort to minimize costs or expenses of their attorneys in that action;

163.     While in the course and scope of providing legal services, the Lawyer Defendants failed to discuss with Rachel the possible conflict of interest that would arise with them being named joint defendants in external litigation;

**Conflict of Interest with Darlina Barone ("Darlina")**

164.     While in the course and scope of providing legal services, the Lawyer Defendants undertook representation of Darlina Barone on matters involving her ex-husband, Michael Brown, that directly impacted the community estate of Michael Brown and Rachel, while simultaneously representing Rachel in her Divorce from Michael Brown;

165.     While in the course and scope of providing legal services, the Lawyer Defendants failed to adequately disclosure to Rachel the conflict resulting from the simultaneous representation of Darlina and Rachel;

166.     While in the course and scope of providing legal services, the Lawyer Defendants failed to disclose the fact that the representation of Darlina would result in the recovery of unbelievably large amounts of attorneys' fees, and the expenditure of unbelievably large amounts of the community assets, that were rendered in connection with the representation of Darlina;

167.     According, the representation of Darlina by the Lawyer Defendants acted to diminish the community estate in a significant manner;

168.     Further, the interests of Darlina, in for example, whether Michael Brown should be incarcerated, and what should happen to the future disposition of his business, and whether Rachel should obtain a business interest, as part of her settlement of the community estate, are examples of where the interests of Darlina were not aligned with the interests of Rachel – accordingly, the Defendants should have not accepted dual representation of these matters, but should have withdrawn either from the representation of Rachel, or from the representation of Darlina, so that their loyalty in connection with these matters would be unquestioned;

169.     Instead, while in the course and scope of providing legal services, the Lawyer Defendants decided to represent both Darlina (at a cost of what is apparently a tremendous number of dollars), and simultaneously attempt to represent Rachel, and never had a meaningful discussion with Rachel about the conflict in the situation, or how it could impact Rachel, or how it could

19

impact the proceedings in connection with the entire Michael Brown divorce/controversy/settlement;

**Examples of Placing the Lawyer Defendants' Interest Before their Client's Interest**

170. While in the course and scope of providing legal services, the Lawyer Defendants consistently placed their own interests ahead of the interest of Rachel;

171. While in the course and scope of providing legal services, the Lawyer Defendants failed to propose or develop interim solutions, as well as final solutions;

172. In general, while in the course and scope of providing legal services, the Lawyer Defendants did not take vigorous action to set the case for trial and obtain disposition through trial;

173. While in the course and scope of providing legal services, the Lawyer Defendants did not take adequate actions to have a receiver appointed;

174. While in the course and scope of providing legal services, the Lawyer Defendants did not develop interim solutions even on occasions when they had an opportunity to do so (for example, when Michael Brown was incarcerated or threatened to be incarcerated)  on these occasions, the only benefit that was obtained was the "payment of attorneys' fees;"

175. While in the course and scope of providing legal services, the Lawyer Defendants failed to ever develop any interim solutions for Rachel, including for example, obtaining for her clear title to a vehicle (at a later point in time, Rachel was literally without a single vehicle with which to drive her children to school, because all of the vehicles belonged to the bankruptcy estate);

176. While in the course and scope of providing legal services, the Lawyer Defendants failed to obtain for Rachel a single financial asset;

177. While in the course and scope of providing legal services, the Lawyer Defendants failed to obtain for Rachel a single declaration of property (for example, furniture, children's items, etc.);

178. While in the course and scope of providing legal services, the Lawyer Defendants failed to obtain for Rachel a single asset that would work to her financial benefit instead of going to the Lawyer Defendants' own self benefit (for example, settlement of the security case charges)   on other words, on every occasion, the Lawyer Defendants undertook to place their interests ahead of their clients;

179. While in the course and scope of providing legal services, the Lawyer Defendants failed to sever the property issues, and thereby obtain final resolution to same, while the issues regarding custody/visitation were still pending;

180. While in the course and scope of providing legal services, the Lawyer Defendants failed to recognize that their opponent, Michael Brown, was a sophisticated, intelligent, sociopathic and probably mentally ill business man, while their client Rachel was a 9th or 10th grade high school dropout. Alternatively, if the Lawyer Defendants did realize this, they failed to act on it;

181. While in the course and scope of providing legal services, the Lawyer Defendants failed to recognize that the client, being a high school dropout, was unsophisticated and was incapable of making sophisticated financial decisions without proper professional assistance;

20

182.     While in the course and scope of providing legal services, the Lawyer Defendants failed to appropriately account for the fact that Michael Brown was no longer a medical doctor, and no longer had the right to practice medicine;

**Unnecessary Billing, Overbilling, Incorrect Billing & Disgorgement**

183.     While in the course and scope of providing legal services, the Lawyer Defendants engaged in multiple and repeated acts of unnecessary billing and overbilling;

184.     While in the course and scope of providing legal services, the Lawyer Defendants failed to inform Rachel that having three law firms would unnecessarily dissipate the community estate, unnecessarily prolong the proceedings, unnecessarily duplicate legal work, and create a burden both to the administration of the divorce proceeding, as well as unnecessarily increasing the cost of the divorce proceeding;

185.     While in the course and scope of providing legal services, the Lawyer Defendants never disclosed that multiple personnel working on the same issue on the same file would be an unnecessary waste of time and resources, and that one lawyer/one paralegal/one secretary could adequately cover the issues involved, and that any extra would be wasteful;

186.     All the while, while in the course and scope of providing legal services, the Lawyer Defendants were promising Rachel that she would be "the richest women in Texas," that she would "own the business outright," that she would be "wealthy beyond her wildest dreams," while at the same time billing for themselves exorbitant rates, and realizing that Michael Brown was taking actions that were detrimental to the community estate;

187.     While in the course and scope of providing legal services, the Lawyer Defendants, for example, had multiple people/lawyers/staff attend discovery conferences, hearings, court meetings, conferences, depositions, etc.   not only is this an example of overbilling, this is so egregious that it is an example of a breach of fiduciary duty, namely putting the financial interest of the Defendants, and the financial interests of others, ahead of the interest of the client;

188.     While in the course and scope of providing legal services, the Lawyer Defendants would provide copies of their invoices to opposing counsel for review and payment by Michael Brown, and these bills were routinely challenged for glaring errors;

189.     While in the course and scope of providing legal services, the Lawyer Defendants failed to send billing statements to Rachel as they were incurred monthly, as required by their contracts, and failed to explain to her that they would be taking the position, by secretly forwarding those billing statements to the Master, and to the Court, Rachel was precluded from ever contesting the propriety of such charges;

190.     While in the course and scope of providing legal services, the Lawyer Defendants retained expert witnesses, and billed for their time, and charged that time to Rachel, when the expert witness was assigned the job to review the billings of the Lawyer Defendants, comment on the billings of the Lawyer Defendants, defend the billings of the Lawyer Defendants, and repair/fix the billings of the Lawyer Defendants;

191.     While in the course and scope of providing legal services, the Lawyer Defendants failed to disclose to Rachel that by having multiple attorneys appear on the statement, multiple paralegals appear at the hearings, multiple assistants appear at the hearings, multiple security

appear at the hearings, all of this could be used by the court against her in determining a "just and right" determination of her interest in the community estate;

192. While in the course and scope of providing legal services, the Lawyer Defendants engaged in multiple acts of unnecessary billing;

193. Examples include:

a. billing 51-hours for a single person, for a single day;

b. taking multiple attorneys to attend a "Certificate of Non-Appearance" of a witness, or, even bothering to take a CNA;

c. spending time on alleged "depositions" when the witness had made it clear that they would not be appearing;

d. sending multiple people to depositions where the witness took the 5th Amendment;

e. sending multiple people to depositions where the purpose of the deposition was relatively straight-forward, so that a single attorney could have covered it (for example, whether Michael Brown had engaged in adulterous conduct on his airplane) – in those circumstances multiple attorneys are not necessary in order to adequately cover the subject matter that was being addressed by the deposition;

f. as a corollary, preparing for, conferencing, or dealing with those depositions (other than minimal) would have been unnecessarily duplicative;

194. Further, the excessive, unnecessary, ridiculous over billing by the Defendants resulted in a massive amount of work in response by their adversaries;

195. Further examples of this overburdening of the community estate by unnecessary and overbilling would include:

a. Sending several lawyers to attend a Certificate of Non-Appearance where the witness does not show up and has told the parties in advance that they were not going to show up; and

b. Sending several lawyers to attend hearings;

196. While in the course and scope of providing legal services, the Lawyer Defendants created billing statements that were unintelligible, rambling, and crossing over time period to time period (for example, certain time periods are covered in more than one billing statement);

197. While in the course and scope of providing legal services, the Lawyer Defendants' billing was duplicative, in that several attorneys and for that matter staff members, were billing for jobs that could have easily been done by one person;

198. While in the course and scope of providing legal services, the Lawyer Defendants' billing was done in order to defend their own billing practices (in other words, the attorneys, and expert witnesses, and staff, spent time, and billed for it, to defend their previous bills that they had incurred);

199. While in the course and scope of providing legal services, the Lawyer Defendants' billing was inappropriate on several levels, such as for example, billing for the time spent while they were defendants in an alternate lawsuit brought by Michael Brown;

22

200.     While in the course and scope of providing legal services, the Lawyer Defendants' billing was inappropriate of several levels, including, for example, billing Rachel for motions dealing with the fact that Marshall Davis Brown had referred to opposing counsel by gender derogatory terms;

201.     In general, the amount of time spent by the Lawyer Defendants, their agents, staff, employees, and hired contractors, to accomplish any given task was excessive;

202.     In general, the Lawyer Defendants' billing was inappropriate given the nature of the dispute (for example, the custody/visitation dispute did not justify the amount of billings or time exercised in connection with that matter);

203.     While in the course and scope of providing legal services, the Lawyer Defendants' billing statements were never sent to Rachel for her approval;

204.     While in the course and scope of providing legal services, the Lawyer Defendants made no comment to Rachel that they intended to argue, that since they never sent her the bills, and since they obtained unilateral approval of the bills by the Master in Chancery, that they would take the position that Rachel was barred from ever contesting the bills;

205.     While in the course and scope of providing legal services, the Lawyer Defendants charged an unreasonable bill under all applicable rules governing lawyer conduct, including Texas Supreme Court precedent, and the Texas Disciplinary Rules;

206.     Under *Burrow v. Arce,* 997 S.W.2d 229 (Tex. 1999), all fees should be disgorged;

207.     While in the course and scope of providing legal services, the Lawyer Defendants engaged in unnecessary discovery and depositions that were not productive (for example, deposing witnesses within Michael Brown's organization that were merely cumulative and repetitive of testimony that was already proven, and/or available);

208.     The Lawyer Defendants pattern of unnecessary, ill-advised practice, continued in this action when Defendant Moffett appeared on behalf of Defendant Marshall Davis Brown, and Defendant Marshall Davis Brown appeared on behalf of Defendant Moffett, in a clear violation of their duty to Rachel, and resulting in further unnecessary motion practice before the court;

**Breach of Contract**

209.     Alternatively, while in the course and scope of providing legal services, Defendants had valid contracts with Rachel; Rachel tendered performance according to the terms of the contracts; Defendants breached those contracts; and Rachel sustained damages as a result of the breach;

**Joint Action**

210.     There are times herein, where an action was taken by one of the Defendants, but was not expressly undertaken by the remaining Defendants. With respect to those occurrences:

   a. Even on occasions where one Defendant did something inappropriate (an example would be, an inappropriate characterization of opposing counsel in profane, gender derogatory terms), the remaining Defendants did not object;

   b. The remaining Defendants did not seek to distance themselves from the conduct;

   c. The remaining Defendants did not repudiate the conduct;

23

d. The remaining Defendants did not approach Rachel, as her attorney, and tell her that the conduct was inappropriate;

e. The remaining Defendants did not voice to Rachel any concerns that the conduct would be detrimental to the resolution of the case;

f. The remaining Defendants did not express any concern that the conduct would be detrimental to Rachel's division of the estate;

g. The remaining Defendants did not object to their co-counsel's conduct on these occasions; and

h. The remaining Defendants did not apologize openly to the court or to the public for the inappropriate behavior;

211. In other words, the three Lawyer Defendants, acted in concert, acted in unison, acted unanimously, and if one of them undertook actions that were insanely inappropriate (failing to object to any cost incurred, being ridiculously sexist in a public and profane way, attempting to harm the value of the community estate by publicly deriding Michael Brown, etc.), none of the Defendants made even the vaguest, the faintest, or even a feeble attempt to distance themselves from the conduct; and

212. The failure to correct the conduct, distance themselves from the conduct, explain to Rachel the consequences of the conduct, were all failures of the Defendants to act appropriately.

24

4. The amount and method of calculating economic damages.

**RESPONSE:**

Plaintiff is seeking a sum of money that, if paid now in cash, would fairly and reasonably compensate her for her injuries that resulted from the occurrences in question. This is a question for the jury to decide. Plaintiff is also specifically seeking:

1) Forfeiture of all attorneys' fees charges by Defendants;

2) Damages for loss of value in the community estate of Plaintiff as a result of the actions of the Defendants; and

3) Attorney's fees incurred in prosecuting the underlying matters, including without limitation, the divorce matter, the Global Security case, liabilities incurred as a result of any claim made against Plaintiff, the bankruptcy matter, and this suit;

4) All other relief, whether general or special, whether in law or in equity, to which Plaintiff is justly entitled;

5) Punitive damages for breach of fiduciary duty; and

6) Please see Plaintiff's current pleadings.

Plaintiff reserves the right to supplement pursuant to the Texas Rules of Civil Procedure. Plaintiff is willing to have a jury decide appropriate amounts of damages.

25

5.    The name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with this case.

**RESPONSE:**

Brown, R.
c/o Jimmy Williamson
4310 Yoakum Blvd.
Houston, Harris County, Texas 77006
(713) 223-3330
Plaintiff.

Brown, Jr., M.D.
Pavlas, Brown & York, L.L.P.
Pavlas & Brown, L.L.P.
3040 Post Oak Boulevard, Suite 1020
Houston, Harris County, Texas 77056
Defendant.

Pavlas, John C.
Pavlas, Brown & York, L.L.P.
Pavlas & Brown, L.L.P.
3040 Post Oak Boulevard, Suite 1020
Houston, Harris County, Texas 77056
Managing partner of Defendants Pavlas, Brown & York, L.L.P. and Pavlas & Brown, L.L.P.

Moffett, Jedediah D.
Law Office of Jedediah D. Moffett, P.C.
801 Congress Street, Suite 400
Houston, Harris County, Texas 77002
Defendant.

Hoffman, Robert S.
Law Office of Robert S. Hoffman, P.L.L.C.
c/o Tom Cunningham,
919 Milam, Suite 575
Houston, Texas, 77002
Defendant.

Aaronson, Geoffrey S.
Aaronson Schantz, PA
Miami Tower, 27th Floor
100 SE 2nd St
Miami, FL 33131
(786) 594-300
Former bankruptcy attorney for Michael Glyn Brown

Ambriz-Najera, Amelia
Current contact information unknown
Former in-house counsel for Brown Medical Center, Inc. and/or other entities owned and/or controlled by Michael Brown.

Arizpe, Roxana
Current contact information unknown
Nanny for children of R. Brown and Michael Brown.

Atlschuler, M.D., Milton
4550 Post Oak Place, Suite 320
Houston, Texas 77027
(713) 622-5480
Performed psychological evaluation on Michael Brown. Designated as an expert witness by Michael Brown in divorce matter.

Custodian of Records for Milton Atlschuler, M.D.,
4550 Post Oak Place, Suite 320,
Houston, Texas 77027
(713) 622-5480

Barnett, Gerald
Reynolds Protection, LLC
8035 E. RL Thorton Frwy, Suite 235
Dallas, Texas 75228
(214) 614-8181
Listed as person with relevant knowledge by Michael Brown in divorce matter.

Barone, Darlina
27365 Troublesome Gulch
Evergreen, Colorado 80439
Former spouse of Michael Brown, mother of Michael Brown's other children, former client of M.D. Brown.

Barone, Gino
27365 Troublesome Gulch
Evergreen, Colorado 80439
Current spouse of Darlina Barone.

Barrett, Dr. Stephen
c/o Linda Glover
Winstead P.C.
1100 J. P. Morgan Chase Tower
600 Travis Street
Houston, Texas 77002
(713) 650-8400
Business partner – co-owner of business entity or entities in which Michael Brown claimed an interest.

Barrett, Janet
Current contact information unknown
Wife of Dr. Stephen Barrett.

Barron, Beth
Harris County, Assistant District Attorney
1201 Franklin, Ste. 600
Houston, Texas 77002
(713) 755-5888
Signed supporting affidavit to Original Petition for Divorce in No. 2011-01272.

Bazan, Renee
3040 Post Oak Boulevard, Suite 1020
Houston, Harris County, Texas 77056
Legal assistant to Defendant M.D. Brown.

Bell, Jr., ASA, CAE, Jack L.
Certified Appraisers, Inc.
5500 Katy Freeway
Houston, Texas 77007
(713) 680 3290
Expert witness (real estate) engaged by Michael Brown in divorce matter.

Bent, Jr., Roy Theophilus
Houston Auto Appraisers
18 Quailwood Drive
Baytown, Texas 77521
(877) 845-2368
Designated expert (auto appraiser) by M.D. Brown for R. Brown in the divorce action.

Betts, Suzette
3826 Olympia Drive
Houston, Texas 77019
(713) 598-0578
Listed as person with relevant knowledge by Michael Brown in divorce matter.

Birdwell, Rebekah J.
Law Offices of Jeanne Caldwell McDowell
Current contact information unknown
Attorney involved in No. 2011-01272, Brown divorce matter.

Bone, James
12818 Highway 105 West, Suite 2-G
Conroe, Texas 77304
(888) 281-1618
Employee of Global Security Agency, Inc.

Brams, PhD, Jolie S.
985 Bethel Road
Columbus, Ohio 43214
(614) 457-0077
Expert witness (psychologist) designated by Michael Brown in divorce matter.

Brown, Layla
27365 Troublesome Gulch
Evergreen, Colorado 80439
Daughter of Darlina Barone and Michael Brown.

Brown, Maxwell
9110 Memorial Drive
Houston, Texas 77024
Son of R. Brown and Michael Brown.

Brown, Paul
Greenberg Traurig
1000 Louisiana, Ste 1700
Houston, Texas
(713) 374-3554
Attorney for Michael Brown (BHCF, LLC) who had to file motion to strike in Case No. 2011-01272, after Defendants filed a motion to compel including incorrect facts regarding attorney conferencing.  Attorney for Brown Medical Center, Inc.

Brown, Raquel
9110 Memorial Drive
Houston, Texas 77024
Daughter of R. Brown and Michael Brown.

Brown, Sophia Jolie
27365 Troublesome Gulch
Evergreen, Colorado 80439
Daughter of Darlina Barone and Michael Brown.

Brioullette, Ashley aka "Stacy Shey"
3400 Shoreline Drive, Apt. 237
Austin, Texas 78728-7446
Dancer that was employed by and/or had a relationship with Michael Brown.

Brubaker, SRA, Mike
Brubaker & Associates
7626 Hammerly Blvd.
Houston, Texas 77055
(713) 464-4666
Designated expert (real estate appraiser) by M.D. Brown for R. Brown in the divorce action.

Bullard, John Seth
Orgain Bell & Tucker
470 Orleans, 4th Floor
Beaumont, Texas 77701
(409) 838-6412
Attorney for CommunityBank of Texas, N.A. (Vista Bank of Texas).

Burstein, Bernardo
Burstein & Associates, P.A.
744 Northeast 125th St
Miami, FL 33161
Attorney for Michael Brown.

Bushong, M.D., P.A., Craig
3355 West Alabama, Suite 125
Houston, Texas 77098
(713) 622-5432
Performed court-ordered psychiatric evaluation on Respondent in 2009.

Custodian of Records for Craig Bushong, M.D., P.A.
3355 West Alabama, Suite 125
Houston, Texas 77098
(713) 622-5432

Calamia, Robert
Current contact information unknown

Canales, Claudia
Law Offices of Claudia Canales, P.C.
2112 Grand Blvd.
Pearland, Texas 77581
Amicus attorney involved in No. 2011-01272 divorce.

Cave, Charles "Chuck"
Current contact information unknown
Chief Financial Officer for Brown Medical Center and other entities owned and/or controlled by Respondent. Designated as an expert witness by Michael Brown in the divorce matter.

Champagne, M.D., Laura L.
9055 Katy Freeway, No. 418
Houston, Texas 77057
(713) 706-6131
Psychiatrist who evaluated and/or treated Michael Brown.

Chance, Steve
Steve Chance Attorney at Law, PC
119 N. Commerical St, Ste 275
Bellingham, WA 98225
(360) 676-9700
Former attorney for Michael Glyn Brown

Chavez, Elba
Current contact information unknown
Housekeeper and nanny for Michael Brown.

Citizen, Quincy
Reynolds Protection, LLC
8035 E RL Thorton Frwy, Ste 235
Dallas, Texas 75228
(214) 614-8181
Listed as person with relevant knowledge by Michael Brown in divorce matter.

Cohen, Jan
Current contact information unknown
Current or former employee of Marshall Davis Brown, Jr. who worked on R. Brown file

Corning, Dr. Sheri
1331 Gemini St. Ste #104
Houston, Texas 77058
(281) 956-1035
Child counselor arranged by amicus attorney (Canales).

Correra, Hiram
1001 Brickell Bay Dr, Ste. 2600
Miami, Florida
Employee of Promed and/or other entities owned and/or controlled by Michael Brown.

31

Coole, SRA, CRP, Cary W.
The Coole Company
1630 South Gessner Road
Houston, Texas 77063
(832) 358-2800
Designated expert (real estate appraiser) by M.D. Brown for R. Brown in the divorce action.

Coole, Debra H.
The Coole Company
1630 South Gessner Road
Houston, Texas 77063
(832) 358-2800
Designated expert (real estate appraiser) by M.D. Brown for R. Brown in the divorce action.

Dang, M.D., Joseph
903 Bethlehem
Houston, Texas 77018
(281) 580-0554
Business partner co-owner of business entity or entities in which Michael Brown claimed an interest.

Daniels, Terre
Current contact information unknown
Current or former employee of Robert Hoffman who worked on R. Brown file

DeBruin, Michael R.
KoonsFuller, PC
1717 McKinney Ave, Suite 1500
Dallas, Texas 75202
(214) 871-2727
Former attorney for Michael Brown in No. 2011-01272.

DeGuerin, Dick
DeGuerin & Dickson
1018 Preston Ave, 7th Floor
Houston, Texas 77002
(713) 223-5959
Former attorney for Michael Brown.

Duffy, Timothy A.
Burleson, LLP
900 Jackson St, Ste 330
Dallas, TX 75202
(214) 871-4900
Attorney for R. Brown, M.D. Brown, and Pavlas, Brown & York, LP in *ProMed, Inc. v. Pavlas, Brown & York, LP*.

Eastland, Gardner
Current contact information unknown
Current or former employee of Marshall Davis Brown, Jr. who worked on R. Brown file

Ehni (Moffett), Courtney Hassell
Current contact information unknown
Current or former employee of Jedediah D. Moffett who worked on R. Brown file

Eisen, Mynde
Law Office of Mynde Eisen, P.C.
9800 Pagewood, Suite 3202
Houston, Texas 77263
(713) 266-2955
Rachel Brown's bankruptcy attorney.

Elkins, Jason
3230 Silver Falls Drive
Kingwood, Texas 77339
(281) 610-4052
Former pilot for aircraft owned and/or controlled by Michael Brown or by an entity owned and/or controlled by Michael Brown.

Ewing, Stephanie
Current contact information unknown
Associate to Claudia Canales.

Eykel, Ike Vanden
KoonsFuller, PC
1717 McKinney Ave, Suite 1500
Dallas, Texas 75202
(214) 871-2727
Former attorney for Michael Brown.

Ferrell, M.D., Jack
14310 Northbrook Drive, Suite 120
San Antonio, Texas 78232
(210) 499-5025
Performed forensic psychological evaluations on Michael Brown, Darlina, Sophia and Layla in 2001.

Fertitta, III, Julian J.
Grimes & Fertitta P.C.
400 Louisiana, Ste 1450
Houston, Texas 77002
(713) 224-7644
Attorney for Michael Brown in No. 2006-66579 divorce matter.

Festari, Debbi
1800 Post Oak Blvd
Houston, Texas
Wife of Rudy Festari. Listed as person with relevant knowledge by Michael Brown in divorce matter.

Festari, Rudy
1800 Post Oak Blvd
Houston, Texas
Owner of Festari for Men.

Fink, M.D., Aaron H.
4550 Post Oak Place, Suite 320
Houston, Texas 77027
(713) 622-5480
Psychiatrist

Flores, Marlene
Current contact information unknown
Prior nanny to the children of R. Brown and Michael Brown.

Fowler, Dodie
Current contact information unknown
Former business manager and office manager of Brown Medical Center.

Franklin, Sarah
Current contact information unknown
Current or former employee of Marshall Davis Brown, Jr. who worked on R. Brown file

34

Geiger, Jeff
1001 Brickell Bay Dr, Ste. 2600
Miami, Florida
Employee of Promed and/or other entities owned and/or controlled by Michael Brown

Glass, M.D., P.A., George
4600 Post Oak Place Drive, Suite 307
Houston, Texas 77027
(713) 666-9811
Psychiatrist who evaluated and/or treated Michael Brown.

Grimmer, Nicholas G.
Greenberg Traurig LLP
1000 Louisiana St., Ste 1700
Houston, Texas 77002
(713) 374-3505
Attorney for Brown Medical Center, Inc.

Custodian of Records for George Glass, M.D., P.A.
4600 Post Oak Place Drive, Suite 307
Houston, Texas 77027
(713) 666-9811

Grange, David L.
Osprey Global Soultions, LLC
Current contact information unknown
Former Chief Restructuring Officer, Brown Entities.

Griggs, Chris
4098 County Road 145
Alvin, Texas 77511
(281) 468-6248
Former pilot for aircraft owned and/or controlled by Michael Brown or entity owned and/or controlled by Michael Brown.

Gonzales, Ruth
1001 Brickell Bay Dr, Ste. 2600
Miami, Florida
Employee of Promed and/or other entities owned and/or controlled by Michael Brown.

Grimes, Richard M.
Grimes & Fertitta P.C.
400 Louisiana, Ste 1450
Houston, Texas 77002
(713) 224-7644
Attorney for Michael Brown in No. 2006-66579 divorce matter.

35

Guffy, Elizabeth M.
Current contact information unknown.
Bankruptcy Trustee for Brown Medical Center, Inc.

Guyot, Manuel ("Manny")
35 Islewood Blvd
The Woodlands, Texas 77380
Prior president of Brown Medical Center, Inc. and other businesses which Michael Brown claimed an ownership interest in.

Hadjab, Amel
Current contact information unknown
Nanny for children of R. Brown and Michael Brown.

Hantman, Robert J.
Hantman & Associates
1515 Broadway, 11th Floor
New York, NY 10036
(212) 684-3033
Former attorney of Michael Glyn Brown in divorce and bankruptcy matters

Harkey, Rhonda Butler
Orgain Bell & Tucker
470 Orleans, 4th Floor
Beaumont, Texas 77701
(409) 838-6412
Attorney for CommunityBank of Texas, N.A. (Vista Bank of Texas).

Hassell, Jonathan A.
Jedediah D. Moffett, PC
801 Congress, Ste 400
Houston, Texas 77002
(713) 333-5800
Employee of Jedediah D. Moffett

Hearne, PhD, Cindy
1720 Sunset Blvd
Houston, Texas 77005
(713) 520-1243
Therapist for Michael and Rachel Brown

36

Hilder, Philip
Hilder & Associates
819 Lovett Blvd.
Houston, TX 77006
(713) 655-9111
Attorney for Michael Brown who brought motion for sanctions against M.D. Brown for his behavior in Brown divorce. Attorney for Brown Medical Center, Inc., Superior Vehicle Leasing Co., Inc., Texas Hand Therapy Center, Inc.

Hill, FASA, James M. "Mike"
HSSK
5847 San Felipe, Ste 3100
Houston, Texas 77057
(713) 771-5011
Expert witness (business valuation) hired by Michael Brown in divorce matter.

Hill, Jr., ASA, CPA/ABV, J. Michael
HSSK
5847 San Felipe, Ste 3100
Houston, Texas 77057
(713) 771-5011
Expert witness (business valuation) hired by Michael Brown in divorce matter.

Hilshey, Julie
Current contact information unknown
Current or former employee of Marshall Davis Brown, Jr. who worked on R. Brown file

Holzmann, Malcom
Aircheck News Taping
2201 West Davis
Conroe, Texas 77304
(210) 342-5900
Prepared footage tape from KPRC-TV2 broadcast on 1/12/12.

Hopkins, Craig
Current contact information unknown
Employed at the direction of David L. Grange, CRO for the Brown Entities.

Houston Auto Appraises
18 Quailwood Drive
Baytown, Texas 77521
Expert witness (motor vehicle appraisal) appointed by Court in R. Brown and Michael Brown divorce matter.

Custodian of 911 Records, Houston Police Department,
5320 North Shepherd, Room 1022
Houston, Texas 77091
Possession of routine records maintained by the Houston Police Department.

Custodian of Records, Houston Police Department,
1200 Travis Street
Houston, Texas 77002
Possession of routine records maintained by the Houston Police Department.

Howard, Roger
Roger Howard Appraisers
4800 West 34th Street #B9
Houston, Texas 77092
(713) 869-5561
Expert witness (personal property appraiser) appointed by Court in R. Brown and Michael Brown divorce matter.

Howland, David
10419 Mossy Brook Lane
Cypress, Texas 77433
Listed as person with relevant knowledge by Michael Brown in divorce matter.

Hurst, MBA, ASA, Elizabeth "Beth" H.
William B. Stewart Jr., CPA
7887 San Felipe St., Ste 122
Houston, TX 77063
(713) 974-2928
Characterization and valuation expert engaged by M.D. Brown on behalf of R. Brown.

Hutchings, Lisa M.
Current contact information unknown
Current or former employee of William B. Stewart, Jr. CPA who worked on R. Brown file

Indelicato, Joseph
Current contact information unknown
Master in Chancery in No. 2011-01272, in the 309th District Court of Harris County, Texas.

Isbell, Kelley
Current address unknown.
CC'd on emails regarding No. 2011-01272 divorce.

Ingel, Denise
Current contact information unknown
Financial staff member of Brown Medical Center, Inc. and/or other entities owned and/or controlled by Michael Brown.

Ingram, Harry W.
Aeromax, USA
1406 E. Main Street
Fredericksburg, Texas 78624
(830) 466-1064
Designated expert (aircraft appraiser) by M.D. Brown for R. Brown in divorce action.

Jackson, Stephen
Current contact information unknown.
CC'd on letter from DeBruin re No. 2011-01272 divorce.

Jaeger, Chris
1001 Brickell Bay Dr, Ste. 2600
Miami, Florida
Employee of Promed and/or other entities owned and/or controlled by Michael Brown.

Johansen, Lawrence
1001 Brickell Bay Dr, Ste. 2600
Miami, Florida
Employee of Promed and/or other entities owned and/or controlled by Michael Brown.

Jones, ASA, CBI, Jeffery D.
Certified Appraisers, Inc.
5500 Katy Freeway
Houston, Texas 77007
(713) 680-3290
Expert witness (real estate) engaged by Michael Brown in divorce matter.

Knapp, Russell
Certified Appraisers, Inc.
5500 Katy Freeway
Houston, Texas 77007
(713) 680-3290
Expert witness (real estate) engaged by Michael Brown in divorce matter.

Kuehm, Robert C.
Kuehm, Robert I.
8441 Gulf Freeway, Ste 600
Houston, Texas 77017
(713) 861-6166
Attorneys for Michael Brown who brought motion for sanctions against M.D. Brown for his behavior in Brown divorce.

Leahy, James R.
Locke Lord, LLP
600 Travis, Ste 2800
Houston, Texas 77002
(713) 226-1200
Attorney for Greenberg Traurig in No. 14-0306.

Learned, NAMS   CMS, ASA, Richard F.
Learned Associates, Inc.
702 NW Sunset Drive
Stuart, Florida 34994
(772) 692-7740
Designated expert (yacht appraiser) by M.D. Brown for R. Brown in the divorce action.

Lemkuil, Daniel J.
Current contact information unknown.
Received notices from court in No. 2011-01272 divorce.

Levantino, Patrick M.
Levantino & Company
2201 West Davis
Conroe, Texas 77304-2065
(936) 441-6212
Prepared tax returns for R. Brown, Michael Brown, and entities owned and/or controlled by Michael Brown.  Designated as an expert witness by Michael Brown in divorce matter.

Levy, Steven
Levantino & Company
2201 West Davis
Conroe, Texas 77304-2065
(936) 441-6212
Prepared tax returns for R. Brown, Michael Brown, and entities owned and/or controlled by Michael Brown.

Lopez, M.D., Randolph A.
Current contact information unknown
Business partner   co-owner of business entity or entities in which Michael Brown claimed an interest.

Lopez, Tabbetha
12818 Everhart Point Dr
Tomball, Texas 77377
Wife of Randolph Lopez, M.D.

Loredo, III, M.D., Pedro
1605 Airport Freeway
Bedford, Texas 76021
(800) 214-4263
Business partner – co-owner of business entity or entities in which Michael Brown claimed an interest.

Lovett, Mary Olga
Greenberg Traurig
1000 Louisiana St, Ste 1700
Houston, TX 77002
(713) 374-3500
Attorney allegedly subject to sexist and demeaning remarks from M.D. Brown. Attorney for Brown Medical Center, Inc.

Luke, Daniel
Current contact information unknown
Former chef at 9110 Memorial Drive residence.

Luna, Maria
Current contact information unknown
Nanny for children of R. Brown and Michael Brown.

Lunger, Larry
12818 Highway 105 West, Suite 2-G
Conroe, Texas 77304
(888) 281-1618
Owner-President of Global Security Agency, Inc.

MacTavish, Bridget
c/o David Jaroslawicz
Jaroslawicz & Jaros, LLC
225 Broadway, 24th Floor
New York, New York 10007
(212) 227-2780
Former girlfriend of Michael Brown.

Malisow, Craig
Houston Press
Current contact information unknown
Written a series of articles regarding Michael Brown, R. Brown, and the various attorneys representing them.

Malone, Darryl W.
5020 Montrose Blvd., Ste 400
Houston, Texas 77006
Attorney for third party respondents, Superior Vehicle Leasing Co., Inc., Brown Medical Center, Inc., Texas Hand Therapy Center, Inc., Castlemane, Inc., Lionheart Company, Inc., MG Brown International, LLC, MG Brown Investment Group, LLC, Prorentals, Inc., BHCF, LLC, involved in No. 2011-01272 divorce.

Martinez, Mary Alice
3355 W Alabama, Ste 950
Houston, Texas 77098
(713) 952-1115
Legal assistant to Joseph Indelicato, Jr.

McCullar, Charlene
23011 Canyon Lake
Spring, Texas 77373
(832) 326-4742
Financial staff member of Brown Medical Center, Inc. and/or other entities owned and/or controlled by Michael Brown.

McDowell, Jeanne C.
Law Offices of Jeanne Caldwell McDowell
Current contact information unknown
Attorney involved No. 2011-01272, Brown divorce matter

McGuire, Stephanie
819 Lovett Blvd
Houston, Texas 77006
(713) 655-9111
Attorney for Brown Medical Center, Inc., Superior Vehicle Leasing Co., Inc., Texas Hand Therapy Center, Inc.

McKay, Lisa
Current contact information unknown
Financial staff member of Brown Medical Center, Inc. and/or other entities owned and/or controlled by Michael Brown.

McKinney, Christopher A.
Orgain Bell & Tucker
470 Orleans, 4th Floor
Beaumont, Texas 77701
(409) 838-6412
Attorney for CommunityBank of Texas, N.A. (Vista Bank of Texas).

42

Mendoza, Anna
Current contact information unknown.
Paralegal to Claudia Canales.

Mercer, Sandy S.
Mercer Law
3319 Marian Lane
Rosenberg, Texas 77471
(713) 866-4804
Former attorney for Michael Glen Brown in Case No. 2011-01272 in 309th Judicial District Court, Harris County, Texas; and, in Barone modification suit, Case No. 2006-25428 in 247th Judicial District Court of Harris County, Texas

Mitchell, Miryam
Current contact information unknown
Current or former employee of Robert Hoffman who worked on R. Brown file

Moffett, Brittney
Current contact information unknown
Current or former employee of Jedediah D. Moffett who worked on R. Brown file

Moritz, John
710 N. Post Oak Blvd. #200
Houston, Texas 77024
President and Director of Moritz & Associates.

Morris, Michele
Brittex Appraisal Services, Inc.
8603 S. Dixie Hwy., #305
Miami, Florida 33143
(305) 663-7334
Designated expert (real estate appraiser) by M.D. Brown for R. Brown in the divorce action.

Mozeleski, Robert
12818 Highway 105 West, Suite 2-G
Conroe, Texas 77304
(888) 281-1618
Employee of Global Security Agency, Inc.

Mrowec, Magdalena
1001 Brickell Bay Dr, Ste. 2600
Miami, Florida
Employee of Promed and/or other entities owned and/or controlled by Michael Brown.

Munroe, Dallas
Thunderbird Airway, Inc.
Enterprise Jet Center
8620 West Moroe
Houston, Texas 77062
(713) 649-1919
Owner of Thunderbird Airways.

Murphy, Kelly
The Coole Company
1630 South Gessner Road
Houston, Texas 77063
(832) 358-2800
Designated expert (real estate appraiser) by M.D. Brown for R. Brown in the divorce action.

Nahmias, M.D., Larry
Krist Samaritan Center
17555 El Camino Real
Houston, Texas 77058
(281) 480-7554
Psychiatrist who evaluated and/or treated Michael Brown.

Custodian of Records for Larry Nahmias, M.D.
Krist Samaritan Center
17555 El Camino Real
Houston, Texas 77058
(281) 480-7554

Nichols, Sr., John F.
Nichols Law, PLLC
5020 Montrose Blvd, Suite 400
Houston, Texas 77006
Attorney involved in No. 2011-01272 divorce.

Nix, Donna
Current contact information unknown
Employee of Brown Medical Center, Inc. and/or other entities owned and/or controlled by Michael Brown.

Ortiz, George
Current contact information unknown
Groundskeeper   ranch hand.

Pardue, LPC, BCPCC, Kathy
Karis Counseling, LLC
9525 Katy Freeway, Suite 126
Houston, Texas 77024
(713) 501-0663
Marriage counselor.

Paterson, Johnie
Walker & Patterson, P.C.
4815 Dacoma Street
Houston, Texas 77092
(713) 956-5577
Former attorney of Rachel Brown.

Payne, Brian
Reynolds Protect, LLC
8035 E RL Thorton Fwy, Ste 235
Dallas, Texas 75228
(214) 614-8181
Listed as person with relevant knowledge by Michael Brown in divorce matter.

Payne, Stephen
c/o Gary M. Polland
Polland & Associates
2211 Norfolk St, Ste 920
Houston, Texas 77098
(713) 621-6335
Business partner – co-owner of business entity or entities in which Michael Brown claimed an interest.

Perez, Annelore
Current contact information unknown
Employee of Promed and/or other entities owned and/or controlled by Michael Brown.

Peterson, Stacy
Current contact information unknown
Current or former employee of Robert Hoffman who worked on R. Brown file

Pham, Alice
Current contact information unknown
Financial staff member of Brown Medical Center, Inc. and/or other entities owned and/or controlled by Michael Brown.

45

Powers, Aaron
Current contact information unknown.
(713) 226-6000
Attorney for Elizabeth M. Guffy, Bankruptcy Trustee for Brown Medical Center, Inc.

Quijano, PhD, Walter
901 N. Thompson Street
Conroe, Texas 77301
(936) 539-2226
Psychiatrist who evaluated and/or treated Michael Brown.

Ready, Lauren
9110 Memorial Drive
Houston, Texas 77024
Daughter of R. Brown.

Ready, Shannon
5710 Hoover Street
Houston, Texas 77092
Listed as person with relevant knowledge by Michael Brown in divorce matter.

Reger, Gary Neale
Orgain Bell & Tucker
470 Orleans, 4th Floor
Beaumont, Texas 77701
(409) 838-6412
Attorney for Vista Bank of Texas in No. 14-0306.

Reynolds, Chad
Reynolds Protection, LLC
8035 E RL Thorton Frwy, Ste 235
Dallas, Texas 75228
(214) 614-8181
Listed as person with relevant knowledge by Michael Brown in divorce matter.

Rivera, Abel
Reynolds Protection, LLC
8035 E RL Thorton Frwy, Ste 235
Dallas, Texas 75228
(214) 614-8181
Listed as person with relevant knowledge by Michael Brown in divorce matter.

Robins, Sharon Henderson
1717 McKinney Ave, Ste. 1500
Dallas, Texas 75202 (214) 871-2727
Legal assistant to Michael R. DeBruin.

Rosen, Britt J.
Brittex Appraisal Services, Inc.
8603 S. Dixie Hwy., #305
Miami, Florida 33143
(305) 663-7334
Designated expert (real estate appraiser) by M.D. Brown for R. Brown in the divorce action.

Rutherford, Rock
12818 Highway 105 West, Suite 2-G
Conroe, Texas 77304
(888) 281-1618
Employee of Global Security Agency, Inc.

Ryan, Paul
Current contact information unknown
Former employee of Michael Brown.

Salas, Rose
1001 Brickell Bay Dr, Ste. 2600
Miami, Florida
Employee of Promed and/or other entities owned and/or controlled by Michael Brown; became executive assistant to D. Grange as part of restructuring team.

Sanders, Kyle
Looper Reed & McGraw
1300 Post Oak Blvd, Ste 2000
Houston, Texas 77056
(713) 986-7000

Santos, M.D., George
5151 San Felipe Street, Suite 1470
Houston, Texas 77056
(713) 622-4499
Psychiatrist who evaluated and/or treated Michael Brown.

Saucedo, Rolando
4706 Nina Lee
Houston, Texas 77092
Former employee – agent of Michael Brown.

Scardino, Katherine
3730 Kirby Drive, Suite 1120
Houston, Texas 77098
Former attorney of Michael Brown.

Schmermahorn, Clinton
2637 East Atlantic Blvd, No 17684
Pompano Beach, Florida 33062
(303) 335-3611
Designated expert (auto appraiser) by M.D. Brown for R. Brown in the divorce action.

Schouten, Walter
Current contact information unknown
Law clerk to M.D. Brown, who worked on various issues for R. Brown.

Simione, Dr. Peter
5850 San Felipe, Suite 500
Houston, Texas 77057
(713) 706-6131
Psychiatrist who evaluated and/or treated Michael Brown.

Sims, Michael
Current contact information unknown
Former employee of Global Security Agency, Inc.

Smoot, Steven M.
1301 McKinney, Ste 2900
Houston, Texas 77010
(713) 654-0708
Attorney for Michael Brown in No. 2006-66579 divorce matter.

Sperber, Pamela Ferguson
Greenberg Traurig
1000 Louisiana, Ste 1700
Houston, Texas
(713) 374-3554
Attorney in No. 2011-01272 for BHCF, LLC.

Spillker, CPA, ABV, Jeffrey W.
HSSK
5847 San Felipe, Ste 3100
Houston, Texas 77057
(713) 771-5011
Expert witness (business valuation) hired by Michael Brown in divorce matter.

Stewart, Jr., William B.
Stewart McLean Consultants, LLC
7887 San Felipe St., Ste 122
Houston, TX 77063
(713) 974-2928
Accountant designated as expert witness in many of the Brown matters.

Summers, Ronald
c/o Richard A. Kincheloe,
Nathan Sommers Jacobs, PC
2800 Post Oak Blvd, 61st Floor
Houston, TX 77056
(713) 892-4809
Chapter 7 Bankruptcy Trustee in *In re Brown.*

Storey, JoAnn
1005 Heights Blvd.,
Houston, TX 77008.
(713) 529-0048.
Hired by M.D. Brown to be of counsel in GSA v. R. Brown matter.

Tate, Mark
Tate Law Group, L.L.C.
2 E. Bryan Street, Suite 600
Savannah, Georgia 31401
(912) 234-3030
Former attorney for Michael Brown.

Tetrauld, Richard
Brubaker & Associates
7626 Hammerly Blvd.
Houston, Texas 77055
(713) 464-4666
Designated expert (real estate appraiser) by M.D. Brown for R. Brown in the divorce action.

Custodian of Records for Texian Management Assoc., Inc.
4550 Post Oak Place, Suite 320
Houston, Texas 77027
(713) 622-5480
Possession of routine records maintained by Texian Management Assoc., Inc., Aaron H. Fink M.D., and Milton Atlschuler, M.D.

Thornton, III, Donald
Current contact information unknown
Former house manager at 9110 Memorial Drive residence.

Tilbrook, Geraldina-Marie
Current contact information unknown
Potential replacement to Guardians of Hope

Todd, Matt
Current contact information unknown

Toledo, Elkin
Current contact information unknown
Former driver - porter at 9110 Memorial Drive residence

Towber, Preston T.
Towber Law Firm, PLLC
6750 West Loop South, Suite 920
Bellaire, Texas 77401
(832) 485-3555
Attorney for Defendants in bankruptcy action

Trejo, Paul
12818 Highway 105 West, Suite 2-G
Conroe, Texas 77304
(888) 281-1618
Employee of Global Security Agency, Inc.

Varga, Glenda
Current contact information unknown.
Nanny for children of R. Brown and Michael Brown.

Van Chamier, Celine
Current contact information unknown.
Former housekeeper at 9110 Memorial Drive residence.
Van Ness, Kristin
Current contact information unknown.
CC'd on emails regarding No. 2011-01272 divorce.

Velez, Claudia
8802 Clearbourne Lane
Houston, Texas
Nanny for children of R. Brown and Michael Brown.

Verducci, Christopher Andrew
Locke Lord, LLP
600 Travis, Ste 2800
Houston, Texas 77002
(713) 226-1200
Attorney for Greenberg Traurig in No. 14-0306.

Verducci, Diana
Current contact information unknown
Financial staff member of Brown Medical Center, Inc. and/or other entities owned and/or controlled by Michael Brown.

Viktorin, Larry B.
1020 County Rd. 129
Wharton, Texas 77488
Business partner   co-owner of business entity or entities in which Michael Brown claimed an interest.

Von Proctor, Ray
Current contact information unknown
Former personal assistant to Michael Brown.

Warshawsky, Kimberly A.
Greenberg Traurig, LLP
2375 E Camelback Road, Ste 700
Phoenix, Arizona 85016
(602) 445-8000
Attorney for Brown Medical Center, Inc.

Waters, Jane
Assistant Harris County District Attorney
1201 Franklin Street, Suite 600
Houston, Texas 77002
Harris County District Attorney involved in criminal prosecution of Michael Brown.

Weslar, Daniel
Current contact information unknown
Former personal assistant to Michael Brown.

Wilcockson, Norma
Guardians of Hope
2211 Rayford Rd., Suite 111 #22
Spring, Texas 77386
(713) 542-1110
Founder and director of Guardians of Hope

Wimberly, Hether
8414 Windell Lane
Houston, Texas 77040
Listed as person with relevant knowledge by Michael Brown in divorce matter.

Wright, MD, Robbie
4550 Post Oak Place, Suite 320
Houston, Texas 77027
(713) 622-5480
Designated witness by Michael Brown in divorce matter for his treatment of R. Brown.

Ybanez, Timothy "Tim"
Current contact information unknown
Former chauffeur at 9110 Memorial Drive residence.

York, Douglas Ray
Pavlas, Brown & York, L.L.P.
3040 Post Oak Blvd., Ste 1020
Houston, Texas 77056
Attorney for R. Brown in No. 2006-66579 divorce matter. Business partner of M.D. Brown.

We hereby adopt and incorporate all names of any witnesses, their addresses and telephone numbers and/or any other person with knowledge designated by any other party to this lawsuit as if set forth specifically herein. Plaintiff will supplement pursuant to the Texas Rules of Civil Procedure.

6.   For any expert testifying on your behalf in this case:

  (a)   The expert's name, address, and telephone number;

  (b)   The subject matter on which the expert will testify;

  (c)   The general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to your control, documents reflecting such information.

  (d)   If the expert is retained by, employed by, or otherwise subject to your control;

    1)   all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and
    2)   the expert's current resume and bibliography.

**RESPONSE:**

No experts have currently been designated. Plaintiff will supplement pursuant to the Texas Rules of Civil Procedure.

52

Plaintiff may, or may not, introduce opinions given by Defendants in their correspondence, depositions, or discovery, in this case. Such persons are not subject to Plaintiff's control. Plaintiff would refer to all correspondence, emails, letters, billings, statements made in court, and discovery responses, and depositions in this case, or previous cases, with respect to these "opinions."

7.    Any discoverable indemnity and insuring agreements.

**RESPONSE:**

None

8.    Any discoverable settlement agreements.

**RESPONSE:**

None

9.    Any discoverable witness statements.

**RESPONSE:**

None

10.    If you are alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills.

**RESPONSE:**

The underlying event of divorce, care of Rachel's children, and the stress of the economic losses, has been tremendously stressful to Rachel. It has created a perpetual state of stress, tension, worry and fear. The actions of the Defendants only aggravated, exacerbated, and heightened this process. The Defendants engaged in conduct whereby they intentionally obtained press coverage upon such matter, and delayed such matter, and made misrepresentations to the Plaintiff about the process and advised the Plaintiff not to engage in settlement negotiations, and told the Plaintiff

53

that bankruptcy would be excellent for her legal rights. All of such actions merely caused her to suffer severe emotional and mental distress.

The Defendants, even though they were fiduciaries to Plaintiff, were completely indifferent to Plaintiff's plight and, other than running up their own legal fees, did little, if nothing, to try to lessen or relieve such matters.

To the extent that there are medical bills regarding this, we will supplement regarding same.

11.    If you are alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills obtained by you by virtue of an authorization furnished by the plaintiff

**RESPONSE:**

Please see answer to #10 above.

**Tab 4**

Brown's Request for Production No. 52

| | | |
|---|---|---|
| R. BROWN | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | HARRIS COUNTY, T E X A S |
| | § | |
| M. D. BROWN, JR., | § | |
| INDIVIDUALLY, ET AL | § | 61st  JUDICIAL   DISTRICT |

## PLAINTIFF'S SECOND REQUEST FOR PRODUCTION TO DEFENDANTS

TO:    Defendants, M.D. Brown, Jr., Individually, Pavlas & Brown, L.L.P., and Pavlas, Brown & York, L.L.P., by and through their attorney of record, Jedediah D. Moffett, Jedediah D. Moffett, P.C., 801 Congress, Suite 400, Houston, Texas  77002'

Jedediah D. Moffett, Individually, and Jedediah D. Moffett, P.C., by and through their attorney of record, Marshall Davis Brown, Pavlas & Brown, L.L.P., 3040 Post Oak Boulevard, Suite 120, Houston, Texas  77056

Robert S. Hoffman, Individually, and Law Office of Robert S. Hoffman, P. L.L.C., by and through their attorney of record, Tom Alan Cunningham, Debbie C. Darlow, 919 Milam, Suite 575, Houston, Texas  77002.

Pursuant to Rule 196 of the Texas Rules of Civil Procedure, Defendants are requested to produce to Plaintiff for inspection and copying the documents in their possession, custody, or control which are listed in Exhibit "A" attached hereto and incorporated herein by reference. Defendants are requested to produce such documents at the offices of Williamson & Rusnak, 4310 Yoakum Boulevard, Houston, Texas, 77006 not later than thirty (30) days after service of this Request. Defendants are also reminded of their obligation to supplement their responses to these requests pursuant to the Texas Rules of Civil Procedure.

Respectfully submitted,

**WILLIAMSON & RUSNAK**

*/S/ Jimmy Williamson*
JIMMY WILLIAMSON
jimmy@jimmywilliamson.com
State Bar No. 21624100
CYNDI M. RUSNAK
cyndi@jimmywilliamson.com
State Bar No. 24007964
4310 Yoakum Boulevard
Houston, Texas 77006
Telephone: (713) 223-3330
Facsimile: (713) 223-0001

**ROSS A. SEARS, II, P.C.**

By:    */s/ Ross A. Sears, II*
      Ross A. Sears, II
      State Bar No. 17960011
      4310 Yoakum Blvd.
      Houston, Texas 77006
      Telephone (713) 223-3333
      Facsimile (713) 223-3331
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2014, I forwarded a copy of this instrument to all counsel of record by either email, facsimile, certified mail, return receipt requested and/or hand delivery to:

**Defendant, M.D. Brown, Jr., Individually**
by and through his attorney of record,
Jedediah D. Moffett
Jedediah D. Moffett, P.C.
801 Congress, Suite 400
Houston, Texas 77002

**Defendant, Pavlas, Brown & York, L.L.P**
by and through its attorney of record,
Jedediah D. Moffett
Jedediah D. Moffett, P.C.
801 Congress, Suite 400
Houston, Texas 77002

**Defendant, Jedediah D. Moffett**
by and through his attorney of record,
Marshall Davis Brown, Jr.
Pavlas & Brown, L.L.P.
3040 Post Oak Boulevard, Suite 120
Houston, Texas 77056

**Defendant, Pavlas & Brown, L.L.P.**
by and through its attorney of record,
Jedediah D. Moffett
Jedediah D. Moffett, P.C.
801 Congress, Suite 400
Houston, Texas 77002

**Defendant, Jedediah D. Moffett, P.C.**
by and through its attorney of record,
Marshall Davis Brown, Jr.
Pavlas & Brown, L.L.P.
3040 Post Oak Boulevard, Suite 120
Houston, Texas 77056

**Defendants, Robert S. Hoffman,
Individually
and Law Office of Robert S. Hoffman, P.
L.L.C.**
by and through their attorney of record,
Tom Alan Cunningham
Debbie C. Darlow
919 Milam, Suite 575
Houston, Texas 77002

*/s/ Ross A. Sears, II*
Ross A. Sears, II

DEFINITIONS AND INSTRUCTION

1.      None of the definitions, instructions or document requests set forth herein are intended to impose, nor should they be interpreted as imposing, any duty not required by the Texas Rules of Civil Procedure.  Any objections should therefore state specifically how the objecting party contends such definition, instruction or document request does not comply with the Rules.

2.      Any non-defined term or phrase should be read as having its ordinary, common-sense, English language meaning.

3.      To the extent doing so would not contradict the Texas Rules of Civil Procedure, the document requests that follows hereto shall be read liberally, so as to be inclusive rather than exclusive.

4.      "*Document*" or "*documents*" is used in its broadest sense and includes all written, reported, recorded, pictorial, or graphic matter, however produced or reproduced, now or at any time in your possession, custody or control, including, but not limited to, all letters, telegrams, telecopies, facsimiles, telexes, cables, telephone records and notations, invoices, ledgers, journals, e-mail, computer disks (hard or soft), magnetic media, electronic memory and other formal and informal books of record and accountings, minutes, bulletins, instructions, financial statements, photographs, reports, memoranda, notes, notebooks, drafts, worksheets, contracts, agreements, contract briefs, contract summaries, computer data, tape recordings, transcriptions, intra-company drafts of the foregoing items, and copies or reproductions of the foregoing upon which notations in writing have been made which do not appear on the originals.

5.      "*Communication*" or "*Communications*" means any document(s) that comprise, reflect, record, memorialize, embody, discuss, evaluate, consider, review, report on the subject matter of the request, or were reviewed in conjunction with, or were created, generated, or maintained as a result of the subject matter of the request.

6.      "*You*" or "*your*" means the defendant or defendants responding to these requests.

7.      If any document responsive to these requests is withheld under a claim of privilege or upon any other ground, as to each such document, identify the privilege being asserted and provide the following information in sufficient detail to permit the court to rule on your claim:

      a.      the date, author, primary addressee and secondary addressee or persons copied, and the relationship of those persons to the client and/or author of the document;

      b.      a brief description sufficient to identify the type, subject matter, and purpose of the document;

c.      all persons to whom its contents have been disclosed; and

d.      the party who is asserting the privilege.

**8.**      You are obligated to produce any and all documents which may be in your care, custody or control, or which are in the possession of your agents, subsidiaries, affiliates, employees, accountants, investigators, attorneys, or any other representatives who are subject to your control or direction, wherever located.

**9.**      Each request for production of documents herein shall be deemed continuing so as to require prompt supplemental responses, in accordance with Tex. R. Civ. P. 193.5, if you obtain or discover further documents called for herein between the time of responding to this request and the time of trial.

**10.**      No Document or File requested should be altered, changed, or modified in any respect.  No Document or File requested should be disposed of or destroyed.

**11.**      *"Refer," "relate," "referring,"* or *"relating"* intends to encompass all documents that comprise, reflect, record, memorialize, embody, discuss, evaluate, consider, review, report on the subject matter of the request, or were reviewed in conjunction with, or were created, generated, or maintained as a result of the subject matter of the request.

**12.**      The *"Plaintiff"* means **RACHEL BROWN.**

**13.**      The *"Defendant and/or Defendants"* means **M. D. BROWN, JR., INDIVIDUALLY,** also referred to as **"D. BROWN", PAVLAS BROWN & YORK, L.L.P., PAVLAS & BROWN, L.L.P., JEDEDIAH D. MOFFET, INDIVIDUALLY, JEDEDIAH D. MOFFET, P.C., ROBERT S. HOFFMAN, INDIVIDUALLY,** and/or **LAW OFFICE OF ROBERT S. HOFFMAN, P.L.L.C.**

## PLAINTIFF'S SECOND REQUEST FOR PRODUCTION TO DEFENDANTS

**REQUEST NO. 52:**

Please produce a copy of all documents showing the net worth of Defendants, individually and Defendants' law firms.

RESPONSE:

**Tab 5**

Hoffman's Response to Request for Production No. 52

No. 2014-17523

| | | |
|---|---|---|
| R. BROWN | § | IN THE DISTRICT COURY OF |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| M.D. BROWN, JR., | § | |
| INDIVIDUALLY, ET AL | § | 61st JUDICIAL DISTRICT |

## HOFFMAN'S RESPONSE TO
## PLAINTIFF'S SECOND REQUEST FOR PRODUCTION TO DEFENDANTS

TO:    Plaintiff, Rachel Brown, by and through her attorneys of record, Jimmy Williamson, and Ross A. Sears, II, 4310 Yoakum Blvd., Houston, Texas 77006

Pursuant to the Texas Rules of Civil Procedure, Defendants Robert S. Hoffman, Individually, and the Law Office of Robert S. Hoffman, P.L.L.C., serve upon Plaintiff, the attached Response to Plaintiff's Second Request for Production to Defendants.

Respectfully submitted,

CUNNINGHAM DARLOW LLP


By:    /s/Tom Cunningham
        Tom Cunningham
        State Bar No. 05244700
        Debbie C. Darlow
        State Bar No. 05186900
        919 Milam, Suite 575
        Houston, Texas 77002
        Telephone:  713-255-5500
        Telecopier: 713-255-5555

ATTORNEYS FOR DEFENDANTS,
ROBERT S. HOFFMAN AND
LAW OFFICE OF ROBERT S. HOFFMAN,
P.L.L.C.


Plaintiff's Exhibit B

## CERTIFICATE OF SERVICE

The foregoing instrument was served upon the counsel of record listed below by electronic document transfer pursuant to Rule 21a of the TEXAS RULES OF CIVIL PROCEDURE on October 8, 2014.

/s/ Tom Cunningham
Tom Cunningham

Jimmy Williamson
Cyndi M. Rusnak
4310 Yoakum Boulevard
Houston, Texas 77006
Telecopier: 713-223-0001

Ross A. Sears, II
Ross A. Sears, II, P.C.
4310 Yoakum Boulevard
Houston, Texas 77006
Telecopier 713-223-3331

ATTORNEYS FOR PLAINTIFF

Marshall Davis Brown, Jr.
Pavlas & Brown L.L.P.
3040 Post Oak Blvd., Suite 1020
Houston, Texas 77056
Telecopier: 713-961-1209

Jedediah D. Moffett
Jedediah D. Moffett, P.C.
801 Congress, Suite 400
Houston, Texas 77002
Telecopier: 713-333-5801

## HOFFMAN'S RESPONSE TO
## PLAINTIFF'S SECOND REQUEST FOR PRODUCTION TO DEFENDANTS

### I.     General Objections

Hoffman generally objects to Plaintiff's Second Request for Production to Defendants in that the requests seek to require each Defendant to respond and produce documents and information relating to the other Defendants in this matter, including specifically financial information, operational information, and information related to the other Defendants' employees, clients, and other sensitive data. All requests that seek such information and data are improper.

Hoffman generally objects to the production of any documents which may be protected by the Confidentiality Order signed by the 309th Judicial District Court of Harris County, Texas on May 9, 2012, in Cause No. 2011-01272.

Hoffman generally objects to any request which seeks the production of documents which are in Plaintiff's possession or subject to Plaintiff's control.

Hoffman generally objects to any request which seeks the production of documents which are more easily obtained by Plaintiff or which are a matter of public record.

### II.     Response to Second Request for Production

**REQUEST NO. 52:**

Please produce a copy of all documents showing the net worth of Defendants, individually and Defendants' law firms.

**OBJECTION:**

Hoffman objects to this request and to the definition of the word Documents expressed therein as overly broad, overly burdensome, harassing, vague, not reasonably limited in time or scope, and lacking the specificity required to put Defendants on notice of what documents they are being asked to produce in response to this Request for Production.

Hoffman specifically objects to this request as overly broad and not in compliance with Rule 196.1(b), which requires the request to specify the items to be produced or inspected, either by individual item or category, and describe with reasonable particularity each item and category.

Hoffman objects to this request to the extent the request seeks to require Hoffman to produce documents relating to the Net Worth of the other Defendants and the other Defendants' law firms in this matter. Of course, Hoffman has no such documents.

Hoffman objects to this request on the grounds that the information sought is not relevant and not likely to lead to the discovery of relevant or admissible evidence at trial of this matter. Hoffman further objects because the request is premature. Exemplary damages are only recoverable in this case if the Plaintiff pleads facts supporting the right to recover exemplary damages and proves by clear and convincing evidence that any harm suffered by Plaintiff resulted from fraud, malice, or gross negligence of Defendants. Tex. Civ. Prac. & Rem. Code § 41.003. Exemplary damages may be awarded only if the jury is unanimous in finding liability for and the amount of exemplary damages. Tex. Civ. Prac. & Rem. Code § 41.003. On timely motion by any Defendant, the Court shall provide for a bifurcated trial into two phases. In the first phase the trier of fact shall determine liability for compensatory and exemplary damages and the amount of compensatory damages. In the second phase, if liability for exemplary damages is established during the first phase of a bifurcated trial, the trier of fact shall determine the amount of exemplary damages to be awarded, if any. Tex. Civ. Prac. & Rem. Code § 41.009. The Net Worth of a Defendant is admissible only in the exemplary damages phase of trial. Tex. Civ. Prac. & Rem. Code § 41.011. See also *Transportation Ins. v. Moriel*, 879 S.W.2d 10, 30 (Tex.1994). Accordingly, any discovery of such information is not relevant nor likely to lead to the discovery of relevant or admissible evidence at this time and will not be unless or until the trier of fact has made a unanimous determination that Plaintiff is entitled to recover exemplary damages.

The Defendants in this case are each individual attorneys who, like all other individuals, have a legitimate interest in safeguarding confidential financial information and protecting it from disclosure, particularly to litigation adversaries with a motive to use the information as leverage in the litigation. The defendants respectfully ask the Court to use its discretion to balance the interests of the parties to achieve legitimate discovery objectives while protecting against premature disclosure of confidential and sensitive financial information, such as records revealing a party's net worth. Until such time as the defendants' net worth is admissible during the punitive damage phase, Plaintiff has no legitimate need for this information and requiring its disclosure is unduly premature and prejudicial. Moreover, the Plaintiff has failed to plead specific facts upon which an award of exemplary damages can be based. Hoffman respectfully requests the Court to sustain this objection and issue an order protecting the Defendants from such disclosures.

Subjecting to and without waiving the forgoing, Hoffman responds as follows:

RESPONSE:

Hoffman will timely supplement as required by the Court.

**Tab 6**

Brown's motion to compel

## CAUSE NO. 2014-17523

| | | |
|---|---|---|
| R. BROWN | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | HARRIS COUNTY, T E X A S |
| | § | |
| M. D. BROWN, JR., | § | |
| INDIVIDUALLY, ET AL | § | 61st JUDICIAL DISTRICT |

## PLAINTIFF'S SECOND MOTION TO COMPEL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, R. Brown ("Plaintiff") and files this Second Motion to Compel and would respectfully show unto this Court as follows:

## I.
## FACTS

This case involves a dispute regarding attorney fees related to an underlying divorce case. Defendants had an attorney-client relationship with Plaintiff beginning in approximately August 2010 through approximately December 31, 2013, that dealt with, among other things, handling her divorce from her husband (now deceased). Such divorce was filed on or around January 7, 2011 (Cause No. 2011-01272 in the 246th Judicial District Court of Harris County, Texas). This legal malpractice lawsuit was filed on or about March 31, 2014.

## II.
## ARGUMENTS AND AUTHORITIES

On September 8, 2014, Plaintiff served Defendants, Marshall Davis Brown, Jr., Pavlas & Brown, L.L.P., Pavlas, Brown & York, L.L.P., Jedediah D. Moffett, Jedediah D. Moffett, P.C., Robert S. Hoffman, and Law Office of Robert S. Hoffman, P.L.L.C. ("Defendants") with Plaintiff's Second Set of Requests for Production. On October 9, 2014, Defendants served their Objections and Responses to Plaintiff's Second Set of Requests for Production (See Exhibits "A",

1

"B", and "C"). Defendants failed to produce any documents responsive to the Request for Production No. 52.

Plaintiff's discovery request is within the scope of the discovery rules, is reasonably calculated to lead to the discovery of admissible evidence, and the requested information is necessary to properly prepare this case for trial. Plaintiff seeks to compel production as is consistent with the rules of discovery pursuant to the Texas Rules of Civil Procedure. Plaintiff has pled for punitive damages in this matter; therefore, net worth information is relevant and discoverable in this case. The Texas Supreme Court has held that information relevant to net worth is discoverable. Financial statements reflecting the defendants net worth are discoverable when a plaintiff sues for exemplary damages. *See Lunsford v. Morris*, 746, S.W.2d 471 *Tex. 1988); *See also* Tex.R.Civ.P. 192.3. On October 8, 2014, Defendants filed a Motion for Bifurcated Trial on Exemplary Damages. In a case seeking punitive damages, the trial court should bifurcate the trial when presented with a timely motion. *See* C.P.R.C. §41.009; *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 29-30 (Tex. 1994). This does not mean, however, that discovery of net worth should be postponed until after the first part of the trial. The First Court of Appeals has rejected a trial court's attempt to delay the discovery of net worth data until after a finding of liability in a bifurcated trial. *Miller v. O'Neill*, 775 S.W.2d 56 (Tex. App.—Houston [1st Dist.] 1989, orig. proceeding). For the purposes of determining net worth for payment of exemplary damages, it is reasonable to allow discovery of the documents in question.

WHEREFORE PREMISES CONSIDERED, Plaintiff respectfully requests that this Court grant Plaintiff's Second Motion to Compel in its entirety and Order Defendants to produce documents in response to Plaintiff's Request for Production No. 52, and for such other and further relief to which Plaintiff may be justly entitled.

2

Respectfully submitted,

**WILLIAMSON & RUSNAK**


*/s/ Jimmy Williamson*
JIMMY WILLIAMSON
jimmy@jimmywilliamson.com
State Bar No. 21624100
CYNDI M. RUSNAK
cyndi@jimmywilliamson.com
State Bar No. 24007964
4310 Yoakum Boulevard
Houston, Texas 77006
Telephone: (713) 223-3330
Facsimile: (713) 223-0001

ROSS A. SEARS, II. P.C.

*Ross A. Sears, II*
Ross A. Sears, II
State Bar No. 17960011
4310 Yoakum Blvd.
Houston, Texas 77006
Telephone: (713) 223-3333
Facsimile: (713) 223-3331

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2014, I forwarded a copy of this instrument to all counsel of record by either email, facsimile, certified mail, return receipt requested and/or hand delivery to:

**Defendant, M.D. Brown, Jr., Individually**
by and through his attorney of record,
Jedediah D. Moffett
Jedediah D. Moffett, P.C.
801 Congress, Suite 400
Houston, Texas 77002

**Defendant, Pavlas & Brown, L.L.P.**
by and through its attorney of record,
Jedediah D. Moffett
Jedediah D. Moffett, P.C.
801 Congress, Suite 400
Houston, Texas 77002

**Defendant, Pavlas, Brown & York, L.L.P**
by and through its attorney of record,
Jedediah D. Moffett
Jedediah D. Moffett, P.C.
801 Congress, Suite 400
Houston, Texas 77002

**Defendant, Jedediah D. Moffett**
by and through his attorney of record,
Marshall Davis Brown, Jr.
Pavlas & Brown, L.L.P.
3040 Post Oak Boulevard, Suite 120
Houston, Texas 77056

**Defendant, Jedediah D. Moffett, P.C.**
by and through its attorney of record,
Marshall Davis Brown, Jr.
Pavlas & Brown, L.L.P.
3040 Post Oak Boulevard, Suite 120
Houston, Texas 77056

**Defendants, Robert S. Hoffman,**
**Individually**
**and Law Office of Robert S. Hoffman, P.**
**L.L.C.**
by and through their attorney of record,
Tom Alan Cunningham
Debbie C. Darlow
919 Milam, Suite 575
Houston, Texas 77002

*/s/ Ross A. Sears, II*
ROSS A. SEARS, II

4

**Tab 7**

Hoffman's response to Brown's motion to compel

11/13/2014 5:19:45 PM
Chris Daniel - District Clerk Harris County
Envelope No. 3174190
By: TERESA
KIRBY Filed: 11/13/2014
5:19:45 PM

## NO. 2014-17523

| | | |
|---|---|---|
| **R. BROWN,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **M. D. BROWN, JR., ET AL.** | § | |
| | § | |
| **Defendants.** | § | **61st JUDICIAL DISTRICT** |

## HOFFMAN'S RESPONSE TO PLAINTIFF'S SECOND MOTION TO COMPEL

Robert Hoffman and Law Office of Robert S. Hoffman, P.L.L.C., ("Hoffman") respectfully respond to Plaintiff's Second Motion to Compel as follows:

1.      This is a legal malpractice case brought by Rachel Brown ("Plaintiff") against the lawyers who represented her in her divorce proceedings against Dr. Michael Glyn Brown. The divorce proceedings lasted three years, were extraordinarily protracted and contentious.

2.      Plaintiff's Second Motion to Compel requests production of documents showing the net worth of the defendants. Plaintiff claims to have pled for exemplary damages and therefore claims that the net worth of the Defendants is relevant.

3.      Hoffman reiterates the points and objections contained in his Response to Plaintiff's Second Request for Production.

4.      Plaintiff's Second Motion to Compel relies upon *Lundsford v. Morris*, 746 S.W.2d 471 (Tex. 1988) and *Miller v. O'Neill*, 775 S.W.2d 56 (Tex. App. – Houston [1st Dist.]

1989, orig. proceeding). Since those cases, however, the Texas Supreme Court decided *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 29-30 (Tex. 1994) which provides for bifurcation of a trial into two phases. In the first phase, the jury determines liability for compensatory damages, the amount of compensatory damages, and liability for exemplary damages. The amount of exemplary damages, the element with respect to which the Plaintiff claims the Defendants' net worth is relevant, is not determined until a second phase of the trial in which the jury hears evidence as to the amount of the exemplary damages, if any, to be awarded. *See* TEX. CIV. PRAC, & REM. CODE §41.009. Exemplary damages may only be awarded if the jury finds unanimously by clear and convincing evidence that any harm suffered by the Plaintiff resulted from the fraud, malice, or gross negligence of the Defendants. TEX. CIV. PRAC. & REM. CODE.§41.003. The net worth of the Defendants is admissible only in the exemplary damages phase of the trial. TEX. CIV. PRAC. & REM. CODE.§41.011.

5.     In *In re Jacobs*, 300 S.W.3d 35 (Tex. App. – Houston [14th Dist.] 2009, orig. proceeding), the 14th Court of Appeals addressed discovery of net worth under the circumstances that exist post *Moriel*. While the court recognized the rule announced in *Lunsford*, it nevertheless required the trial court to carefully scrutinize such discovery to insure that the legitimate rights of the defendants are not infringed upon concerning the scope and timing of net worth discovery. Indeed, in an elaborate concurring opinion, Justice Sullivan traced the evolution of the law of exemplary damages since *Lunsford*, including substantial legislative reforms severely limiting the availability of exemplary damages, and concluded that the *Lunsford* rule is out of date and should be reexamined.

6.     Hoffman respectfully asks this court, in the exercise of its discretion, to protect against the premature disclosure of confidential and sensitive financial information of which the Plaintiff has no legitimate need at this time. While the parties have exchanged document requests and produced documents, no oral discovery has taken place and this case remains in its early stages.

There is no legitimate purpose to require disclosure of the Defendants net worth at this time except for purposes of harassment. Indeed, it is clear that to the extent net worth evidence is relevant at all, it is only the current net worth at the time of trial, which, of course, is not available at this time. Hoffman respectfully asks the Court to deny the Plaintiff's motion to compel disclosure of Hoffman' net worth at least until after the jury makes the required predicate finding of liability for exemplary damages.

7.     In the alternative, Hoffman asks the court to require that financial and other sensitive information be protected by a confidentiality order to be agreed upon by the parties, or otherwise ordered by the court, and that the Court carefully limit the scope of the information to be disclosed in the interests of justice.

For the foregoing reasons, Hoffman respectfully requests that the Plaintiff's Second Motion to Compel be denied and that Hoffman have such other and further relief to which he may show himself justly entitled.

Respectfully submitted,

CUNNINGHAM DARLOW LLP

*Tom Alan Cunningham*

By:_____

Tom Alan Cunningham
tcunningham@cunninghamdarlow.com
State Bar No. 05244700 Debbie
C. Darlow
ddarlow@cunninghamdarlow.com
State Bar No. 05186900
919 Milam Street, Suite 575
Houston, Texas 77002
Telephone: (713) 255-5500
Telecopier: (713) 255-5555

**ATTORNEYS FOR DEFENDANTS, ROBERT S. HOFFMAN and THE LAW OFFICE OF ROBERT S. HOFFMAN, P.L.L.C.**

## CERTIFICATE OF SERVICE

Pursuant to Rule 21a(a)(2) of the Texas Rules of Civil Procedure, a true and correct copy of the foregoing has been served upon the parties and counsel listed below by electronic document transfer, on this 13th day of November, 2014.

Jimmy Williamson
jimmy@jimmywilliamson.com
Ross A. Sears, II
Ross@searscrawford.com
Williamson, Sears & Rusnak
4310 Yoakum Boulevard
Houston, Texas 77006

Marshall Davis Brown, Jr.
mdbrown@pavlasbrown.com
Pavlas & Brown, L.L.P.
3040 Post Oak Boulevard, Suite 1020
Houston, Texas 77056

Jedediah D. Moffett jdm@moffettpc.com
Jedediah D. Moffett, P.C.
801 Congress, Suite 400
Houston, Texas 77002

_____
Tom Alan Cunningham

**Tab 8**

Hearing transcript

*REPORTER'S RECORD*
*VOLUME 1 OF 1 VOLUME*
*TRIAL COURT CAUSE NO. 2014-17523*

R. BROWN                         ) IN THE DISTRICT COURT
                                 )
vs.                              ) HARRIS COUNTY, TEXAS
                                 )
M.D. BROWN, JR., ET AL.          ) 61ST JUDICIAL DISTRICT

---

HEARING ON MOTION TO COMPEL

---

On the 14th day of November, 2014, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Al Bennett, Judge Presiding, held in Houston, Harris County, Texas.

Proceedings reported by computerized stenotype machine.

A-P-P-E-A-R-A-N-C-E-S


**MR. ROSS A. SEARS**
SBOT NO. 17960011
ROSS A. SEARS, II., P.C.
4310 Yoakum Boulevard
Houston, Texas 77006
Telephone: (713) 223-3333
*Counsel for Plaintiff(s)*


**MR. TOM ALAN CUNNINGHAM**
SBOT NO. 05244700
CUNNINGHAN DARLOW, LLP
919 Milam Street
Suite 575
Houston, Texas 77002
Telephone: (713) 255-5500
Fax: (713) 255-5555
E-mail: tcunningham@cunninghamdarlow.com
*Counsel for Defendant(s)*

**MR. WALTER J. SCHOUTEN**
SBOT NO. 24077168
PALVAS & BROWN, LLP
3040 Post Oak Boulevard
Suite 1020
Houston, Texas 77056
Telephone: (713) 222-2500
*Counsel for Defendant(s)*

P-R-O-C-E-E-D-I-N-G-S

THE COURT: Cause No. 2014-17523, Brown vs. Brown.

Counsel, please announce your appearances for the record.

MR. SEARS: Ross Sears on behalf of the Plaintiffs, Judge.

MR. CUNNINGHAM: Your Honor, I'm Tom Cunningham for Robert Hoffman and the Law Office of Robert Hoffman.

MR. SCHOUTEN: And Walter Schouten, representative for Defendant Brown.

MR. CUNNINGHAM: Jed Moffett, who is appearing pro se on his own behalf and on behalf of his firm, is not here, obviously.

THE COURT: All right.

MR. CUNNINGHAM: I've tried to call him five minutes ago because I knew we'd get here, and -- and I haven't been able to reach him. I called his cell phone and his office number.

THE COURT: All right.

This is Plaintiffs' Second Motion to Compel; and in addition to that motion being on file, there is a response by Defendant Hoffman to Plaintiffs' Second Motion to Compel.

Is that correct?

MR. CUNNINGHAM:  That's correct, Your Honor.

THE COURT:  Your motion, Mr. Sears?

MR. SEARS:  Yes, sir.

THE COURT:  Very well.

MR. SEARS:  Thank you, Judge.

This is just the -- only one issue being compelled today, and that's the net worth information of the Defendants.  We -- obviously, this is the Brown hand surgeon divorce matter that you've already heard a little bit about.  And we are moving to compel discovery of net worth information on the Defendants individually and on their firm.  They've been sued in both capacities.

We believe that under Civil Practice and Remedies Code 41.001, we are entitled to the net worth information.  And their Motion to Bifurcate the trial does not change that.  I agree with their statement of the law that when you file a Motion to Bifurcate, this Court should grant that motion and bifurcate the trial. I don't have a problem with that.

What I do have a problem with is it doesn't negate our ability to discover the information prior to trial because when you go to phase two, which I

agree this evidence is not admissible in phase one -- it's only admissible in phase two -- we're not going to go back and do discovery in that phase of the trial. We will be in the midst of trial; and so, I don't believe that changes it.

In fact, Rule 41.001 contemplates that very issue under subpart B and says: "Evidence that is relevant only to the amount of exemplary damages that may be awarded is not admissible during the first phase of the bifurcated trial." So, it's already anticipating that in the -- in the rule where it talks about net worth of the Defendant being at least admissible and discoverable.

And so, our position is that we're entitled to that. We've pled a breach of fiduciary duty. And just to give you a background, Judge, we've -- we've only recently discovered that -- from text messages on phones, that there was a 30-million-dollar settlement offer made that we haven't seen where that was ever conveyed to the client. And so, we may have a 30-million-dollar damage model; and only one of the three Defendants has E&O coverage.

And so, I -- for that reason, in addition, we believe that the net worth information is important if any -- if it's going to help the parties

decide how and when to settle the case, if we can do that. If we can't, then it's certainly admissible for the second phase on a punitive damage deal pursuant to the rules. And I believe the case law is clear on that issue, as well.

THE COURT: Mr. Cunningham.

MR. CUNNINGHAM: Thank you, Your Honor. We're -- may it please the Court? We're, of course, aware of *Lunsford vs. Morris*, the line of cases which say that net worth information is discoverable where the pleadings contain a plea for exemplary damages and they -- and they do so in the correct way.

We're not addressing their pleadings. They've alleged that they're entitled to exemplary damages. *Lunsford vs. Morris* and its progeny were decided before *Moriel*, which bifurcates the exemplary damages from the remainder of the trial, as you know.

Since that time there have been some opinions which are calling *Lunsford vs. Morris* into question in terms of the timing and the type of information that is discoverable by way of exemplary damages, you know, the net worth information. One such case was a recent case out of the Fourteenth Court called *In Re Jacobs*. And in that case -- I have a copy for Your Honor if you care for it, and I have a copy for

opposing counsel.

In that case, whereas the Court did permit the discovery of net worth information of the doctors that were involved in that medical malpractice case -- that case came out Judge Woods probate court -- they substantially and severely limited the scope of discovery.

They permitted one of the doctors -- or they required one of the doctors to give a deposition, I guess on page 47 on the opinion, where they said: "But the only thing you can ask him is the amount of his net worth, the total amount of his assets, the total amount of his liabilities, and the method by which the net worth was calculated."

And so, one of our points is, Your Honor, that -- that if the Court decides to grant the Plaintiffs' motion in whole or in part, we ask that the Court exercise its discretion to limit the amount of information -- or the scope of information that's provided in accordance with the *Jacobs* opinion.

Secondly, this Court does have juris -- does have discretion as to the timing of the disclosure. We are in the document exchange phase. Both -- all sides have exchanged document requests. We're in the process of exchanging documents. Most of that has been

completed. We're looking for some additional text messages and e-mails and stuff from the Plaintiff, which I understand from Mr. Sears and our conversations is on its way.

We have not taken a deposition in this case yet, and -- and our view is that certainly even though net worth is relevant to exemplary damages, we're not anywhere in the case; and -- and we have an April trial setting. And the issue that we're talking about is: What is the current net worth? And the net worth that will be admissible, if it's admissible at all -- and it will only be admissible in the second phase of the trial -- would be the net worth as of the date of trial, which right now is April of 2015.

So, our request, Judge, is that we not -- that you deny this motion at this time and allow the Plaintiff to come back and urge it again -- we don't have any dispute that it's relevant -- at the appropriate time where we can address current net worth as of the time of trial. We -- we do have some discovery that informs us about the nature of the case and whether there really is an entitlement to net worth -- to exemplary damages.

And -- and, thirdly, the concurring opinion by Justice Sullivan in the *Jacobs* case analyzes

the evolution of the law from *Lunsford* through *Moriel* and into today. And there's -- it makes a strong recommendation that *Lunsford vs. Morris* be revisited.

THE COURT: In regards -- Mr. Sears, in regards to only current net worth being admissible at the time of trial, if I grant your Motion to Compel now, I assume that you're going to seek a supplementation of the current net worth at the time of trial -- let's just assume you go in April. And so, if you go in April, the information that you get 30 days from today, December, is going to be four months old.

MR. SEARS: I believe it would be like any other discovery in the case, Judge, that if it changed substantially, we would expect them to supplement it; but I don't believe there's any case law that says you have to wait till the time of trial to get it. There's certainly no case law that says it's as of the date of trial, or you'd never be able to get it before trial.

THE COURT: It's just current.

MR. SEARS: It's just current, yes, sir. And so, my -- my position would be that we want their current net worth; and if that substantially changes between now and trial, they can supplement it. I would encourage them to under the rules. But if they don't,

then obviously we go to -- we go in the second phase of what they've produced as of this time.

THE COURT: How about an order compelling them to produce the required information some time closer to trial, after the first of the year?

MR. SEARS: Judge, I'll -- I'll do whatever you believe is reasonable. I -- I just want the information because I think it's going to affect the advice we give our client with regard to settlement options and things of that nature because two of the -- like I said, two of the Defendants are uninsured. All of this is -- I mean, you know, this is just the facts we're dealing with. And so, I think we're entitled to it. I don't think there's any case law --

THE COURT: No. I don't -- I don't -- you are correct. You are entitled to the information. The question is the format and the timing; and so, I'm trying to --

MR. SEARS: I'd be okay with that, Judge. If you wanted -- if you want to order -- if you want to enter an order that says they have to produce it by a certain date, I'm okay with that. And I'm -- I mean, the Court knows me well enough, so does counsel, I'm not using this for any purpose other than this case. If we need to sign some kind of confidentiality agreement that

it's not going to be used for any purpose outside this case, I'm happy to do that. It won't be disclosed to anyone outside of the -- you know, the lawyers and -- and maybe an expert in this case. I'm happy to do that because the purpose of my discovery is not to embarrass or cause a problem for anybody.

MR. CUNNINGHAM: Let me -- if I may interrupt just one moment, there's one other fact that the Court might consider relevant in your analysis; that is, it would be our intent, if we are ordered to produce net worth, to follow Judge Sullivan's concurring opinion and test it and see if we can get the Supreme Court to revisit *Lunsford vs. Morris* in terms of the -- you know, the -- the issues we've talked about, the scope of it. Nobody questions its relevance, really, but the scope of it and the -- and the timing of it.

THE COURT: Well --

MR. CUNNINGHAM: So, so --

THE COURT: Well, tell me, from your position, what do you believe to be the correct form of the production, if ordered.

MR. CUNNINGHAM: A -- a statement of or evidence of the amount of the net worth, the total amount of the Defendant's assets, the total amount of the Defendant's liabilities, and the statement of the

method of -- by which those numbers were calculated.

THE COURT: I don't believe Mr. Sears would have a problem with that.

MR. SEARS: I don't believe I would, Judge.

THE COURT: So, why would that be -- need to be tested?

MR. CUNNINGHAM: It wouldn't if he would agree to it, but the time of it would. And our position clearly would be that net worth is not admissible -- not discoverable until after there is a basis and a verdict to make it relevant.

THE COURT: Well, if we are going to go -- are we -- well, it depends on when the second trial is going to happen.

MR. CUNNINGHAM: Right.

THE COURT: Because if we go immediately into it, he's not going to have the opportunity to test, if he deems it's necessary, with discovery. So, giving it to him the day before we start it in a punitive damage trial is not very helpful. So, it has to be produced at such a time that he, under the Rules of Evidence of Civil Procedure, can test to make sure that this is actual and factual. So --

MR. CUNNINGHAM: I understand.

MR. SEARS: And I don't want to be so close to trial, Judge --

THE COURT: No. You're -- I'm with you on that. And at the same -- we have this produced too far in advance of the trial and then produced too close to trial to where you just have to accept whatever they say without having the ability to go out through discovery and challenge it, which you would be entitled to do or to conduct other discovery.

MR. SEARS: Well, and if we're going to engage in meaningful settlement discussion, I need to have it in advance of that so I can advise my client.

MR. CUNNINGHAM: I, at least, Your Honor, would want enough time to do my Writ of Mandamus; and so, if -- if you do order production, which we oppose -- if you do order production, I would simply ask that you state in an order for the reasonable time to allow us to --

THE COURT: No. If I -- if I order production, it's not going to be within 30 days. It's going to be -- it would probably be after the first of the year because that makes the information more relevant to an April trial setting.

How about a -- a statement of net worth as of February the 1st; or is that too late, in your

opinion?

MR. SEARS: We have a trial date in April --

THE COURT: That's 60 days out.

MR. SEARS: Do we still have you in April, or are we losing you before April?

My other concern, Judge, is I don't want to -- I don't want somebody else to come in and change that, but -- but I get it. I mean, the --

MR. CUNNINGHAM: I'm going to say that his chances of getting confirmed have been significantly enhanced in the last couple of weeks.

MR. SEARS: Yeah. I get it. I get it. I get it. I just don't want somebody to come in and undo what we -- what we're doing.

THE COURT: Well, I'm going to put -- I'm going to put a written order in place.

MR. SEARS: Yes, sir.

THE COURT: And, you know, it's going to be the -- the law of the case.

MR. SEARS: I'd prefer a time in January in answer to your question, Judge; but I -- I will certainly defer to you on any of that issue. I -- I mean, my preference would be January. I think that gives them, you know, all of December. Even if we make

it late January, it gives them --

MR. CUNNINGHAM:  I don't have a problem with that on timing.  We oppose any motion and any order; but in terms of late January, we don't care about that.

THE COURT:  January 15th.

MR. SEARS:  January 15th.  Okay.

THE COURT:  Okay.  If you will put together an order.  And I believe that it should track what Mr. Cunningham said, which would be a statement of the net worth, statement of the total assets, statement of total liabilities, and how it was calculated.  That should suffice.

MR. SEARS:  We'll do, Judge.  And due -- due on or before January 15th of 2015.

THE COURT:  Correct.

MR. SEARS:  Okay.  We'll do, Judge.

THE COURT:  All right.

MR. SEARS:  And circulate it to the parties.

THE COURT:  And then if it tracks the -- the language, the -- the outline that we've just talked about, I think we're okay.  And then to the extent that the folks across the street or down in Austin want to create new law, we'll -- we'll do that.

MR. CUNNINGHAM: And I don't want to waste your time, but we actually did it that way in a case in San Antonio. It was a huge case, and -- and we got a -- a predicate verdict. And the judge took the day off, let us disclose net worth. We put that evidence on the next day, and it worked great.

THE COURT: And I don't have a problem with that, but the only problem is that if -- if it's done that way, Mr. Sears cannot challenge the information through discovery and --

MR. CUNNINGHAM: I understand.

THE COURT: -- and, you know, take a deposition or something like that.

MR. SEARS: And you take up more time with the jury, but --

THE COURT: Yeah. So --

MR. CUNNINGHAM: But we still think you're wrong, Judge.

THE COURT: You're not the first person to tell me that.

MR. CUNNINGHAM: Thank you very much.

THE COURT: All right. Y'all have a good day.

(Proceedings concluded.)

*Jessica Chang, CSR*
*Official Court Reporter*
*61st Civil District Court*

*STATE OF TEXAS*

*COUNTY OF HARRIS*

I, Jessica Chang, Official Court Reporter in and for the 61st District Court of Harris, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

*/s/Jessica Chang*
*Jessica Chang, CSR*
*Texas CSR 8971*
*Official Court Reporter*
*61st District Court*
*Harris County, Texas*
*201 Caroline, 9th Floor*
*Houston, Texas 77002*
*Telephone: (713) 368-6077*
*Expiration: 12/31/2015*

*Jessica Chang, CSR*
*Official Court Reporter*
*61st Civil District Court*

**Tab 9**

Proposed order compelling production

## CAUSE NO. 2014-17523

| | | |
|---|---|---|
| R. BROWN | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | HARRIS COUNTY, T E X A S |
| | § | |
| M. D. BROWN, JR., | § | |
| INDIVIDUALLY, ET AL | § | 61st JUDICIAL DISTRICT |

## ORDER

BE IT REMEMBERED, on this day came to be considered, Plaintiff's Second Motion to Compel, and after considering same, the Court is of the opinion that the Plaintiff's Second Motion to Compel is meritorious and should be GRANTED as set forth below;

IT IS THEREFORE, ORDERED, ADJUDGED and DECREED that all Defendants, Individually and on behalf of their respective law firms, shall provide statements of their net worth, including the current total amount of their assets, the current total amount of their liabilities, their total net worth, and how such information was calculated. This information is to be provided to counsel for Plaintiff on or before January 15, 2015 and shall be treated as Confidential Information and subject to the Agreed Confidentiality Order entered in this case.

SIGNED this the _____ day of _____, 2014.

_____
JUDGE PRESIDING

**APPROVED AS TO FORM AND SUBSTANCE:**

*/s/ Jimmy Williamson*
JIMMY WILLIAMSON
jimmy@jimmywilliamson.com
State Bar No. 21624100
ROSS A. SEARS, II
State Bar No. 17960011
CYNDI M. RUSNAK
cyndi@jimmywilliamson.com
State Bar No. 24007964
4310 Yoakum Boulevard
Houston, Texas 77006
Telephone: (713) 223-3330
Facsimile: (713) 223-0001
ATTORNEYS FOR PLAINTIFF

**APPROVED AS TO FORM ONLY:**

**Defendant, M.D. Brown, Jr., Individually,**
**Pavlas & Brown, L.L.P., Pavlas, Brown**
**& York, L.L.P.**
Marshall Davis Brown, Jr.
Pavlas & Brown, L.L.P.
3040 Post Oak Boulevard, Suite 120
Houston, Texas 77056

**Defendant, Jedediah D. Moffett, and**
**Defendant, Jedediah D. Moffett, P.C.**
Jedediah D. Moffett
Jedediah D. Moffett, P.C.
801 Congress, Suite 400
Houston, Texas 77002

*/s/Tom Alan Cunningham*
**Defendants, Robert S. Hoffman, Individually**
**and Law Office of Robert S. Hoffman, P. L.L.C.**
by and through their attorney of record,
Tom Alan Cunningham
Debbie C. Darlow
919 Milam, Suite 575
Houston, Texas 77002

**Tab 10**

Hoffman's motion to bifurcate

No. 2014-17523

| R. BROWN | § | IN THE DISTRICT COURT OF |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| M.D. BROWN, JR., | § | |
| INDIVIDUALLY, ET AL | § | 61st JUDICIAL DISTRICT |

## DEFENDANTS' JOINT MOTION FOR BIFURCATED TRIAL ON EXEMPLARY DAMAGES

Defendants Robert S. Hoffman, the Law Offices of Robert S. Hoffman, P.L.L.C., Jedediah D. Moffett, Jedediah D. Moffett, P.C., Marshall Davis Brown, Jr., and Pavlas & Brown, L.L.P., (herein "Defendants") respectfully submit this Joint Motion for Bifurcated Trial on Exemplary Damages as provided by Texas Civil Practice & Remedies Code Section 41.009(a).

1.     This is a legal malpractice case in which the Plaintiff, Rachel Brown, accuses the Defendants of negligence and breach of fiduciary duty in connection with their representation of Rachel Brown in her divorce. The Plaintiff alleges that she is entitled to recover exemplary damages and demands an award of exemplary damages from the Defendants.

2.     Upon timely request, the Court must provide a bifurcated trial separating the issue of the amount of exemplary damages from all other issues in the case.  See Tex. Civ. Prac. & Rem. Code § 41.009(a) & (b); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 30 (Tex. 1994).

3.     A bifurcated trial is necessary to separate the proof relevant to the liability and actual damages phase of the case from that which Plaintiff will seek to offer in support of her exemplary damage claim.

4.     This motion is timely because it is filed before the voir dire examination of the jury.

For the foregoing reasons, Defendants respectfully request that the Court order a bifurcated trial on the amount, if any, of exemplary damages.

Respectfully submitted,

CUNNINGHAM DARLOW LLP

By:   /s/ Tom Cunningham
      Tom Cunningham
      State Bar No. 05244700
      Debbie C. Darlow
      State Bar No. 05186900
      919 Milam, Suite 575
      Houston, Texas 77002
      Telephone: 713-255-5500
      Telecopier: 713-255-5555

ATTORNEYS FOR DEFENDANTS,
ROBERT S. HOFFMAN AND
LAW OFFICE OF ROBERT S. HOFFMAN,
P.L.L.C.


JEDEDIAH D. MOFFETT P.C.

By:   /s/ Jedediah D. Moffett
      Jedediah D. Moffett
      State Bar No. 24051069
      801 Congress Street, Suite 400
      Houston, Texas 77002
      Telephone: 713-333-5800
      Telecopier: 713-333-5801

PRO SE AND ATTORNEY FOR DEFENDANT,
JEDEDIAH D. MOFFETT, P.C.

PAVLAS & BROWN, L.L.P.

By:   /s/ Marshall Davis Brown, Jr.
      Marshall Davis Brown, Jr.
      State Bar No. 03153550
      3040 Post Oak Blvd., Suite 1020
      Houston, Texas 77056
      Telephone: 713-222-2500
      Telecopier: 713-961-1209

PRO SE AND ATTORNEY FOR DEFENDANT,
PAVLAS & BROWN, L.L.P.

## CERTIFICATE OF SERVICE

The foregoing instrument was served upon the counsel of record listed below by electronic document transfer pursuant to Rule 21a of the TEXAS RULES OF CIVIL PROCEDURE on October 8, 2014.

/s/ Tom Cunningham
Tom Cunningham

Jimmy Williamson
Cyndi M. Rusnak
4310 Yoakum Boulevard
Houston, Texas 77006
Telecopier: 713-223-0001

Ross A. Sears, II
Ross A. Sears, II, P.C.
4310 Yoakum Boulevard
Houston, Texas 77006
Telecopier 713-223-3331

ATTORNEYS FOR PLAINTIFF

No. 2014-17523

| R. BROWN | § | IN THE DISTRICT COURT OF |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| M.D. BROWN, JR., | § | |
| INDIVIDUALLY, ET AL | § | 61st JUDICIAL DISTRICT |

## ORDER ON JOINT MOTION FOR BIFURCATED TRIAL
## ON EXEMPLARY DAMAGES

On the date set forth below, the Defendants' Joint Motion for Bifurcated Trial on Exemplary Damages came before the Court. The Court noted that the Joint Motion was timely filed prior to the voir dire examination of the jury, and determined that the Joint Motion should be sustained. Accordingly, it is

ORDERED that the trial of this case shall be bifurcated pursuant to Texas Civil Practice & Remedies Code Section 41.009 into two phases. In the first phase, the jury shall determine (1) liability for compensatory and exemplary damages and (2) the amount of compensatory damages, if any. If liability for exemplary damages is established during the first phase of the trial, the jury shall, in the second phase of the trial, determine the amount of exemplary damages to be awarded, if any.

SIGNED on this _____ day of _____, 2014.

_____
Hon. Al Bennett
Judge, 61st District Court

APPROVED AS TO FORM ONLY:

CUNNINGHAM DARLOW LLP

By: /s/ Tom Cunningham
Tom Cunningham
State Bar No. 05244700
Debbie C. Darlow
State Bar No. 05186900
919 Milam, Suite 575
Houston, Texas 77002
Telephone: 713-255-5500
Telecopier: 713-255-5555

ATTORNEYS FOR DEFENDANTS,
ROBERT S. HOFFMAN AND
LAW OFFICE OF ROBERT S. HOFFMAN, P.L.L.C.

JEDEDIAH D. MOFFETT P.C.

By: /s/ Jedediah D. Moffett
Jedediah D. Moffett
State Bar No. 24051069
801 Congress Street, Suite 400
Houston, Texas 77002
Telephone: 713-333-5800
Telecopier: 713-333-5801

PRO SE AND ATTORNEY FOR DEFENDANT,
JEDEDIAH D. MOFFETT, P.C.

PAVLAS & BROWN, L.L.P.

By: /s/ Marshall Davis Brown, Jr.
Marshall Davis Brown, Jr.
State Bar No. 03153550
3040 Post Oak Blvd., Suite 1020
Houston, Texas 77056
Telephone: 713-222-2500
Telecopier: 713-961-1209

PRO SE AND ATTORNEY FOR DEFENDANT,
PAVLAS & BROWN, L.L.P.

WILLIAMSON & RUSNAK

By:_____
Jimmy Williamson
Cyndi M. Rusnak
4310 Yoakum Boulevard
Houston, Texas 77006
Telecopier: 713-223-0001

Ross A. Sears, II
Ross A. Sears, II, P.C.
4310 Yoakum Boulevard
Houston, Texas 77006
Telecopier 713-223-3331

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The foregoing instrument was served upon the counsel of record listed below by electronic document transfer pursuant to Rule 21a of the TEXAS RULES OF CIVIL PROCEDURE on October 8, 2014.

/s/ Tom Cunningham
Tom Cunningham

Jimmy Williamson
Cyndi M. Rusnak
4310 Yoakum Boulevard
Houston, Texas 77006
Telecopier: 713-223-0001

Ross A. Sears, II
Ross A. Sears, II, P.C.
4310 Yoakum Boulevard
Houston, Texas 77006
Telecopier 713-223-3331

ATTORNEYS FOR PLAINTIFF

**Tab 11**

Docket-control order

Case No. 201417523

BROWN, R                                                   *                    IN THE DISTRICT COURT OF

vs.                                                        *                    HARRIS COUNTY, TEXAS

BROWN, M D JR                                              *

                                                          *                    61st      JUDICIAL DISTRICT

## DOCKET CONTROL ORDER

The following docket control order shall apply to this case unless modified by the court. If no date is given below, the item is governed by the Texas Rules of Civil Procedure.

1. **09/12/14**   **JOINDER.** All parties must be added and served, whether by amendment or third party practice, by this date. THE PARTY CAUSING THE JOINDER SHALL PROVIDE A COPY OF THIS DOCKET CONTROL ORDER AT THE TIME OF SERVICE.

2.                 **EXPERT WITNESS DESIGNATION.** Expert witness designations are required and must be served by the following dates.  The designation must include the information listed in Rule 194.2(f).  Failure to timely respond will be governed by Rule 193.6.
   (a) **01/09/15**   Experts for parties seeking affirmative relief.
   (b) **02/20/15**   All other experts.

3.                 **STATUS CONFERENCE.** Parties shall be prepared to discuss all aspects of the case, including ADR, with the court on this date.  TIME:
                   Failure to appear will be grounds for dismissal for want of prosecution.

4.                 **DISCOVERY LIMITATIONS.** The discovery limitations of Rule 190.2, if applicable, or otherwise of Rule 190.3 apply unless changed below:
   (a)             Total hours per side for oral depositions.
   (b)             Number of interrogatories that may be served by each party on any other party.

5.                 **ALTERNATIVE DISPUTE RESOLUTION.**
   (a) **10/13/14**   By this date the parties must either (1) file an agreement for ADR stating the form of ADR requested and the name of an agreed mediator, if applicable; or (2) set an objection to ADR.  If no agreement or objection is filed, the court may sign an ADR order.
   (b) **03/01/15**   ADR conducted pursuant to the agreement of the parties must be completed by this date.

6. **03/31/15**   **DISCOVERY PERIOD ENDS.**   All discovery must be conducted before the end of the discovery period. Parties seeking discovery must serve requests sufficiently far in advance of the end of the discovery period that the deadline for responding will be within the discovery period. Counsel may conduct discovery beyond this deadline by agreement. Incomplete discovery will not delay the trial.

7.                 **DISPOSITIVE MOTIONS AND PLEAS.** Must be heard by oral hearing or submission.
   (a) **04/10/15**   If subject to an interlocutory appeal, dispositive motions or pleas must be heard by this date.
   (b)             Summary judgment motions not subject to an interlocutory appeal must be heard by this date.
   (c)             Rule 166a(i) motions may not be heard before this date.

8.                 **CHALLENGES TO EXPERT TESTIMONY.** All motions to exclude expert testimony and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

9. **04/10/15**   **PLEADINGS.**   All amendments and supplements must be filed by this date.   This order does not preclude prompt filing of pleadings directly responsive to any timely filed pleadings.

10.                Parties shall be prepared to discuss all aspects of trial with the court on this date.
                   TIME:              Failure to appear will be grounds for dismissal for want of prosecution.

11. **04/27/15**   **TRIAL.** If not assigned by the second Friday following this date, the case will be reset.

SIGNED

Tom Alan Cunningham
919 Milam St Ste 575
Houston TX 77002-5430

                                                  5244700

ALFRED H. BENNETT
Judge, 61ST DISTRICT COURT
Date Generated   10/13/2014

JCVO02
rev.11202006

**Tab 12**

Chart of net-worth discovery standards
in other jurisdictions

# Net Worth Discovery Requirements
## in Certain Other States

| **State** | **Case or Statute** | **Requirement** |
|---|---|---|
| Alaska | Alaska Stat. §09.17.020(e) | No net worth discovery until after the jury determines the defendant is liable for punitive damages. |
| Alabama | *Wilson v. Gillis Advertising Co.*, 145 F.R.D. 578 (N.D. Ala. 1993); Ala Code § 6-11-23 | Defendant's financials only disclosed after a finding of liability for punitive damages. |
| Arizona | *Larriva v. Montiel*, 691 P.2d 735 (Ariz. App. 1984); *Arpalo v. Figueroa*, 276 P.3d 513 (Ariz. App. 2012). | "There must be prima facie proof of a defendant's liability for punitive damages before his wealth or financial condition may be discovered." |
| California | Cal. Civ. Code. 3295(a)(1),(2); *Cobb v. Superior Court*, 99 Cal.App.3d 543 (1980) | A prima facie showing of liability for punitive damages required before disclosure of a defendant's wealth can be compelled. |
| Colorado | *Leidholt v. District Court of Denver*, 619 P.2d 768, 771 (Colo. 1980); Colo. Rev. Stat § 13-21-102 | Prima facie proof of right to punitive damages is necessary to discover financial information. |
| Delaware | *Bryan v. Thos. Best & Sons, Inc.,* 453 A.2d 107 (Del. 1982). | "Naked allegation" of entitlement to punitive damages not enough to obtain financial discovery – must "lay a factual foundation" proving to the Court "it is reasonably likely that a triable issue" on liability for punitive damages exists. |
| District of Columbia | *John Does I-IV v. Yogi*, 110 F.R.D. 629 (D.D.C. 1986); *Skinner v. Aetna Life Ins. Co.,* 38 FedR.Serv. 2d 1194, 1195 (D.D.C. 1984) | Discovery of financial status should not to be turned over until necessary to prove up punitive damages; discovery not permitted absent a prima facie showing of punitive damages. |
| Florida | Fla. Stat. Ann. §768.72(1); *Estate of Despain v. Avante Group, Inc.*, 900 So.2d 637 (Fla. App. 2005). | Must show a reasonable basis for recovery of punitive damages to add to complaint.  If permitted, financial worth can be discovered. |
| Georgia | *Smith v. Morris, Manning & Martin, L.L.P.,* 666 S.E.2d 683, 697 (2008) | Requires an evidentiary showing of a factual basis for punitive damages before personal financial information is disclosed. |

| | (quoting *Holman v. Burgess,* 404 S.E.2d 144, 147 (1991) | |
|---|---|---|
| Iowa | Iowa Code Ann. § 668A.1(3) | Net worth discovery not permitted "until such time as the claimant has established that sufficient admissible evidence exists to support a prima facie case" for punitive damages. |
| Nevada | *Hetter v. Eighth Jud. Dist. Court*, 874 P.2d 762 (Nev. 1994). | "Before tax returns or financial records are discoverable on the issue of punitive damages, the plaintiff must demonstrate some factual basis for its punitive damage claim." |
| New Jersey | *Gierman v. Toman*, 185 A.2d 241 (Law Div. 1962); *Hudak v. Fox*, 521 A.2d 889 (N.J. 1987) | Prima facie proof of the right to recover punitive damages is a prerequisite to financial discovery. |
| New York | *McNamee v. Clemens*, No. 09 CV 1647(SJ), 2013 WL 6572899, at *8 (E.D.N.Y. Sept. 18, 2013) (citing *Pasternak v. Dow Kim*, 275 F.R.D. 461, 463 (S.D.N.Y 2011)). | Discovery of net worth information is premature where summary judgment may negate need for disclosure. |
| North Carolina | *Patrick v. Williams, PA*, 402 S.E.2d 452 (N.C. 1991) | Allowing discovery of net worth after court reversed summary judgment on punitive damages. |
| Ohio | *Rupe v. Fourman*, 532 F. Supp. 344, 350-51 (S.D. Ohio 1981) | In a bifurcated trial, discovery of personal financial status for punitive damages claim is not permitted until the defendant's liability is established. |
| Oklahoma | *State of Oklahoma v. Tyson Foods*, Case No 05-CV-329-GKF-PJC (N.D. Okla. 2009) (citing *Toussaint-Hill v. Montereau in Warren Woods*, 2007 WL 3231720 at *1 (N.D.Okla. Oct. 29, 2007). | Production of financial information appropriate after dispositive ruling on punitive damage claim. |
| Oregon | Or. Rev. State. 31.725 | Requires court approval to plead punitive damages based on admissible evidence of specific facts to avoid a directed verdict. If pleading allowed, net worth discovery permitted. |

| Pennsylvania | *Chenoweth v. Schaaf*, 98 F.R.D. 587, 589-90 (W.D. Pa. 1983) | Discovery barred absent factual allegations demonstrating a "real possibility" that punitive damages will be an issue. |
|---|---|---|
| Rhode Island | *Palmisano v. Toth*, 624 A.2d 314, 321 (R.I. 1993) | After Plaintiff makes a prima facie showing, in an evidentiary hearing, that a case for punitive damages exists, net worth discovery permitted. |
| South Dakota | S.D. Codified Laws §21-1-4-1 | If court finds by clear and convincing evidence that there is a reasonable basis to believe willful, wanton, or malicious conduct exists, financial discovery permitted. |
| Tennessee | *Breault v. Friedli*, 610 S.W.2d 134, 139-40 (Tenn. App. 1980); *Wells v. Epes Transport System, Inc.*, 2006 WL 1050670 (E.D. Tenn. 2006) | Must show that a factual basis for punitive damages exists after merits discovery. |
| Wyoming | *Campen v. Stone*, 635 P.2d 1121 (Wyo. 1981) | Requires a prima facie showing that a viable cause of action exists for punitive damages. |